RECEIPT # 126680
AMOUNT $ 250.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. CMG
DATE 3-11-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2005 MAR 11 P 12: 19
U.S. DISTRICT COURT
DISTRICT OF MASS.

DAVID M. O'NEIL, )
)
Plaintiff, )
v. )  Civil Action No. 05-10469 WGY
)
PUTNAM RETAIL MANAGEMENT )
LIMITED PARTNERHSIP )
D/B/A PUTNAM INVESTMENTS, )
)
Defendant. )

MAGISTRATE JUDGE *New Mag Judge*

## COMPLAINT FOR TRIAL BY JURY

1. Plaintiff David O'Neil ("Mr. O'Neil" or "Plaintiff"), an Aviation Electrician's Mate and Plane Captain in the United States Navy, who was formerly employed by Putnam Retail Management Limited Partnership (d/b/a Putnam Investments)("Putnam" or "Defendant") as a Retirement Plans Specialist, invokes the jurisdiction of this court for a jury trial on his claims of discrimination in violation of a federal statute. The Plaintiff asserts that Putman wrongfully terminated him and denied him benefits of employment based on his membership in the United States Navy in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(a), and breached the implied contract by failing to properly transfer his securities licenses. The Plaintiff seeks compensatory damages in the form of lost wages and benefits resulting from his termination from Putnam, and liquidated damages and attorneys fees.

## PARTIES

2. Plaintiff David M. O'Neil resides at 36 Cumberland Avenue, Attleboro, Massachusetts.

3.  Defendant Putnam Investments is a global money management and investment firm incorporated under the laws of state of Delaware and with its principal place of business at One Post Office Square, Boston, Massachusetts. Putnam is a member of the National Association of Securities Dealers.

## JURISDICTION

4.  This action based on a federal statute, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(a). Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4).

5.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law breach of contract claim because it arises out of his USERRA claim.

## PROCEDURAL HISTORY

6.  Plaintiff brings this claim in the first instance. There are no administrative prerequisites to filing a claim under USERRA.

7.  There is no statute of limitations for the filing of a USERRA claim.

## FACTUAL ALLEGATIONS

8.  In October 1997, Putnam hired Mr. O'Neil as a Retirement Plans Specialist in the Retirement Plans Department.

9.  Mr. O'Neil came to Putnam with ten years of experience in the investment community and Series 7, Series 24, and Series 63 licenses.

6.  Because the Series 24 license – a manager's license – is particularly marketable in the investment community, Mr. O'Neil was hired at a higher rate of pay than a Retirement Plans Specialist would normally earn, and was told that he would be "on the fast track for promotion."

7.  During his initial interview in September 1997, Mr. O'Neil informed Putnam that he was a United States Navy reservist, and that he was also enrolled in night school to

obtain his bachelor's degree. His interviewers, William McCain and Michael McIntyre, told him that both of those factors were positive, and stated that his status as a service member showed his responsibility, dedication, and ability to work as part of a team.

8. When Mr. O'Neil began working at Putnam in October 1997, he immediately submitted a Uniform Application for Securities Industry Registration or Transfer ("U4") in order for Putnam to seek transfer of his licenses. After he submitted the U4, he reasonably assumed that Putnam completed this process of transferring the licenses, which were required by the Securities and Exchange Commission ("SEC") for the work he performed as a Retirement Plans Specialist. Mr. O'Neil did not learn until he was terminated in July 1999 that Putnam never had transferred his licenses, so not only had he been working in that position without them, the licenses had also expired and were no longer available to him to find employment elsewhere.

9. There were approximately twenty-five personnel in the Retirement Plans Department, including Mr. O'Neil, his immediate supervisor (first Jeff Ryan, then Chad Laviree in 1999), and the department head, Ian McGregor. Because of his experience and exemplary performance, Mr. O'Neil was quickly designated a "team leader," responsible for teaching and mentoring new hires in the department. During his three-month review, his supervisor Jeff Ryan praised his work, and he was given a 5% raise (which Mr. Ryan stated was the largest raise that he could request on Mr. O'Neil's behalf).

10. On his own initiative, Mr. O'Neil authored a procedures manual on withdrawal of client funds from retirement accounts without penalty. This manual was praised by his supervisor and distributed throughout the office as a guide for Specialists. Mr. O'Neil drafted the manual during his spare time for the sole use and benefit of Putnam's Retirement Plans Department.

11. Mr. O'Neil is a member of the U.S. Navy. As part of his duties as a Navy reservist, Mr. O'Neil was attached to VR 62 in Brunswick, Maine and completed his drills with that unit.

12. In approximately March 1998, Mr. O'Neil notified his superiors that he would need to go to an annual two-week training for reservists in June 1998. His supervisor approved of the time away for his military duties.

13. Two days before he was scheduled to leave, however, Mr. Ryan informed Mr. O'Neil that the department head, Mr. McGregor, wanted him to cancel his reserve duty and attend a training session at Putnam. When Mr. O'Neil replied that it was too late because he had already received his orders, Mr. McGregor was upset with him. Mr. Ryan, however, reassured him that he had used the correct procedures for requesting the time.

14. When Mr. O'Neil returned from his reserve duty, he found that his name had been placed on the bottom of the training schedule below employees over which he had significant seniority. Mr. Ryan told him that Mr. McGregor "wanted it that way" because Mr. O'Neil had not rescheduled his reserve training.

15. In October 1998 and December 1998, Mr. O'Neil received written warnings regarding two incidents determined by Putnam to be "isolated."

16. In October, Mr. O'Neil inadvertently let a client he was assisting by telephone hear him reprimand some of his co-workers for being too loud while he was trying to speak to the client. Mr. McGregor assured Mr. O'Neil orally and in writing that he treated customers very well, and that Putnam viewed the episode as an isolated incident only.

17. In December, Mr. Ryan informed Mr. O'Neil that the personnel department was giving him a warning because he had been out sick four times in a six-month period. Again, in the subsequent written warning Mr. McGregor and Mr. Ryan noted that the issue was an isolated one and did not reflect his overall performance at Putnam.

18. Throughout this period, Mr. O'Neil's name remained at the bottom of the list for training at Putnam, below employees who were new to the company. Upon information and belief, Putnam denied Mr. O'Neil this training (which was required for advancement and promotion at Putnam) because of his reserve status.

19. In December 1998, while beginning another two-week drill period, Mr. O'Neil was ordered to active duty in support of Operation Desert Fox. Due to the nature of the Operation, he was not allowed to contact anyone or notify anyone about his change in orders until another two weeks had passed. At that time, Mr. O'Neil telephoned Mr. Ryan to inform him of his whereabouts, and Mr. Ryan assured him that it would not affect his job and that he just needed to bring in a copy of his orders when he returned.

20. Although Mr. O'Neil provided Mr. Ryan with a copy of his orders when he returned, Putnam was reluctant to pay him for the time, which exceeded the normal two weeks of annual training time. This reluctance and delay caused Mr. Ryan to be paid approximately two weeks late, and only after much advocacy on his part.

21. In February 1999, Mr. Ryan informed Mr. O'Neil that he would not receive the normal pay increase for that year because (1) he had received two warnings, and (2) his reserve duty in support of Operation Desert Fox had caused him to be absent for five weeks instead of two weeks without prior notice.

22. Mr. Ryan then told Mr. O'Neil that he had been "instructed" to tell him that he needed to decide between staying at Putnam or remaining a member of the United States Navy, and that he had until his semi-annual counseling session to make the decision. Mr. O'Neil expressed his desire to remain at Putnam, but reminded Mr. Ryan that it is illegal for Putnam to require such a choice.

23. In May 1999, Mr. O'Neil was ordered to active duty in support of operations in Kosovo. He was away from work for one month.

24. In June 1999, Mr. Chad Larivee replaced Mr. Ryan as Mr. O'Neil's supervisor.

25. In July 1999, Mr. O'Neil participated in a drill weekend with the Navy and was detained for one additional night due to a flight delay. When the Putnam office opened the next morning at 8:00 a.m., he called in to report his delay.

26. The next day, Mr. Larivee terminated Mr. O'Neil without providing him a termination letter. Mr. Ryan orally advised Mr. O'Neil that he was being terminated because (1) he was "unprofessional," (2) he had received two warnings, (3) he had "prolonged absences" and "schedule changes."

27. Immediately thereafter, Mr. O'Neil was escorted out of the building by a security guard, after packing up his personal effects in front of all of the other employees.

28. Mr. O'Neil suffered significant financial harm by both his termination from Putnam and Putnam's failure to transfer his three licenses during the two years he worked there.

29. When terminated, Mr. O'Neil earned a salary of approximately $27,000 per year. Since his termination, Mr. O'Neil has not been able to earn more than approximately $5,500 per year (except last year in which he earned approximately $19,000).

30. Although Mr. O'Neil diligently looked for employment within the investment industry after his termination, he did not receive any offers when the hiring companies discovered that his licenses had not been transferred. One interviewer verbally noted that he did not believe Putnam would hire him and not bring over his licenses.

31. After several months of searching for work and performing odd jobs, Mr. O'Neil was called back to active duty on September 10, 1999. He remained on active duty until January 28, 2001.

32. When Mr. O'Neil returned from his active duty, he diligently sought employment, accepting painting and other odd jobs in the meantime. On December 15, 2001, he was again called into active duty and remained active until May 20, 2002.

33. Upon his return, he continued seeking employment and accepting whatever odd jobs he could to sustain himself. He was called back to active duty on January 22, 2003.

34. In January 2004, Mr. O'Neil was placed on medical leave from the U.S. Navy. He remains on medical leave today.

35. Mr. O'Neil lost wages (in excess of $125,000 to date) and advancement opportunities, and incurred debt (in excess of $55,000) as a result of his termination and denial of benefits by Putnam.

## COUNT I
## WRONGFUL TERMINATION IN VIOLATION OF USERRA

36. Mr. O'Neil realleges and incorporates by reference the allegations in Paragraphs 1-35 above.

37. Mr. O'Neil's military service was a motivating factor in Putman's decision to terminate his employment.

38. By terminating Mr. O'Neil based on his membership in and obligations to the United States Navy, Putnam unlawfully terminated him in violation USERRA, 38 U.S.C. § 4311(a).

39. As a result of his unlawful termination, Mr. O'Neil suffered damages, including lost wages and benefits.

## COUNT II
## DENIAL OF BENEFITS OF EMPLOYMENT IN VIOLATION OF USERRA

40. Mr. O'Neil realleges and incorporates by reference the allegations in Paragraphs 1-39 above.

41. Mr. O'Neil's military service was a motivating factor in Putman's decision to deny him the opportunity for training and advancement following his two-week reservist training in 1998.

42. By denying Mr. O'Neil the opportunity to participate in subsequent training required for promotion at Putnam, Putnam denied Mr. O'Neil a benefit of employment based on his membership in and obligations to the United States Navy in violation of USERRA, 38 U.S.C. § 4311(a).

43. As a result of Putnam's conduct, Mr. O'Neil suffered damages, including lost wages and lost opportunities for advancement.

## COUNT III
## DENIAL OF BENEFITS OF EMPLOYMENT IN VIOLATION OF USERRA

44. Mr. O'Neil realleges and incorporates by reference the allegations in Paragraphs 1-43 above.

45. Mr. O'Neil's military service was a motivating factor in Putman's decision to deny him a raise after he was ordered to active duty for Operation Desert Fox.

46. By withholding his pay increase, Putnam denied Mr. O'Neil benefits of employment based on his military status in violation of USERRA, 38 U.S.C. § 4311(a).

47. As a result of Putnam's conduct, Mr. O'Neil suffered damages, including lost wages and benefits.

## COUNT IV
## BREACH OF IMPLIED CONTRACT

48. Mr. O'Neil realleges and incorporates by reference the allegations in Paragraphs 1-47 above.

49. When Putnam accepted Mr. O'Neil's completed U4, Mr. O'Neil reasonably assumed that Putnam would complete the process of transferring Mr. O'Neil's licenses and an implied contract was formed.

50. Putnam breached that contract when it failed to transfer Mr. O'Neil's licenses.

51. Mr. O'Neil learned of the breach in July 1999, on the day he was terminated.

52. As a result of Putnam's breach of the implied contract, Mr. O'Neil suffered financial damages, due to his resultant inability to secure future employment because of the failure to transfer and expiration of his licenses.

**WHEREFORE,** Mr. O'Neil respectfully requests this Court to award him:

A. the lost wages he suffered as a result of the Defendant's conduct;

B. the cost of sponsoring his employment training in a new field of work;

C. liquidated damages in an amount equal to his lost wages and benefits pursuant to 38 U.S.C. § 4323;

D. attorneys' fees, costs and interest; and

E. such other relief deemed just and proper.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
DAVID M. O'NEIL
By his attorneys,

_____
Jody Newman (BBO # 542264)
Shannon Frison (BBO # 630876)
Jessica P. Driscoll (BBO # 655394)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 371-1000

Dated: March 11, 2005.

**VIISAGE TECHNOLOGY, INC.**
**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

I, Gerald D. Broder ("Plaintiff"), declare:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the Viisage securities that are the subject of this action during the Class Period are as follows:

| Security | Transaction | | Price | Date |
|---|---|---|---|---|
| Common Stock | 2000 | Shares Purchased | $ 8.351 | 12-15-04 |
| | 0 | Shares Sold | | |

5. Plaintiff has sought to serve or has served as a representative party for a class in the following actions filed under the federal securities laws within three years prior to the date herein:

NONE

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable

1

costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10 day of March, 2005 at New York, New York.

_____
Gerald D. Broder

2

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DAVID M. O'NEIL

05 - 10469 WGY

### DEFENDANTS

PUTNAM RETAIL MANAGEMENT, LIMITED PARTNERSHIP d/b/a PUTNAM INVESTMENTS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jody L. Newman, Shannon Frison, Jessica P. Driscoll; Dwyer & Collora, LLP
600 Atlantic Avenue, Boston, MA 02210

ATTORNEYS (IF KNOWN)

Louis A. Rodriguez,
Sullivan & Worcester
One Post Office Sq., Boston, MA 02109

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment / **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | / ☐ 550 Civil Rights | | ☐ 871 IRS — Third Party 26 USC 7609 | |
| | / ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C., sec. 4311(a)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ Compensatory Damages, Liquidated Damages & Fees

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE: 3/11/05

SIGNATURE OF ATTORNEY OF RECORD: *Jessica P. Driscoll*

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**Dwyer & Collora, LLP**

600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Telephone (617) 371-1000
Fax (617) 371-1037
www.dwyercollora.com

FILED
IN CLERKS OFFICE

2005 MAR 11  P 12:18

U.S. DISTRICT COURT
DISTRICT OF MASS.

**Jessica P. Driscoll**
(617) 371-1032
JDriscoll@dwyercollora.com

March 11, 2005

**BY HAND DELIVERY**

Clerk's Office
U.S. District Court
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 2300
Boston, MA 02210

05 - 10469 WGY

Re: *David M. O'Neil v. Putnam Retail Management Limited Partnership*

To whom it may concern:

Please accept for filing on behalf of my client, David M. O'Neil:

1. Civil Cover Sheet;
2. Complaint for Trial by Jury; and
3. Filing fee in the amount of $250.

In addition, I have enclosed a copy of the Complaint. Please date-stamp this copy, indicate the assigned case number, and return it to the messenger.

If you have any questions concerning these documents, please do not hesitate to call me at 617-371-1032. Thank you for your attention to this matter.

Very truly yours,

*Jessica P. Driscoll*

Jessica P. Driscoll

Encs.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) David M. O'Neil v. Putnam Retail Management Limited Partnership d/b/a Putnam Investments

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ✓ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   None

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES    (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES    (NO)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES    NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES    (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   (YES)    NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      (EASTERN DIVISION)    CENTRAL DIVISION    WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Jessica P. Driscoll, Dwyer & Collora, LLP
ADDRESS  600 Atlantic Avenue, Boston, MA 02210
TELEPHONE NO.  (617) 371-1032

(Cover sheet local.wpd - 11/27/00)