UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| DAVID M. O'NEIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 05-10469 PBS |
| PUTNAM RETAIL MANAGEMENT | ) | |
| LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## PLAINTIFF DAVID M. O'NEIL'S OPPOSITION TO DEFENDANT PUTNAM INVESTMENT'S MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT

Plaintiff David M. O'Neil ("Plaintiff" or "Mr. O'Neil") hereby respectfully submits this Opposition to Defendant Putnam Retail Management Limited Partnership's ("Defendant" or "Putnam") Motion to Dismiss All Counts of the Complaint. As set forth below, all of Plaintiff's claims are timely filed. With respect to his claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(a), (Counts I through III), the law is well-settled that the only timeliness defense available is the equitable defense of latches. The four-year general federal statute of limitations, set forth in 28 U.S.C. § 1658 and intended to avoid the inconsistent application of state limitations periods in federal claims, applies only in the absence of legal precedent providing otherwise, as clearly exists here. In addition, the federal limitations period does not apply under the Jones test because Mr. O'Neil's claims are not "made possible" by USERRA, but rather existed under prior versions of the statute. With respect to Mr. O'Neil's implied contract claim, it accrued within six years of filing when Mr. O'Neil first discovered that his licenses had not been transferred. Moreover, Mr. O'Neil has properly pled

the elements of a claim for breach of implied contract by alleging that by hiring Mr. O'Neil as a registered securities representative and requiring him to sign a U4 to transfer his licenses, Putnam promised Mr. O'Neil that it would transfer his licenses.

## I.     FACTUAL BACKGROUND

Plaintiff David O'Neil is a reservist in the United States Navy who joined Defendant Putnam as a Retirement Specialist in 1997 with ten years of experience in the securities industry and holding Series 7, Series 24, and Series 63 securities licenses.  (Compl. ¶¶ 8-9.)  While employed at Putnam, Mr. O'Neil attended occasional weekend and two-week "drills" as part of his military reserve obligations.  (Id. ¶¶ 11, 12, 19.)  In February 1999, Mr. O'Neil's boss said he had been "instructed" to tell him that he needed to decide between staying at Putnam and remaining a member of the United States Navy.  (Id. ¶ 22.)  In July 1999, shortly after Mr. O'Neil returned to Putnam after being away from work for one month in support of operations in Kosovo, Mr. O'Neil was terminated for pretexual reasons.[1] (Id. ¶¶ 23-26.)  On the day he was fired, Mr. O'Neil learned that Putnam had never transferred his securities licenses as required by rules promulgated by the National Association of Securities Dealers ("NASD"), despite the fact that on about his first day of work, he had competed and submitted a form U4, which authorized Putnam to transfer his securities licenses on his behalf.  (Id. ¶ 8.)  As a result of Putnam's failure to transfer his licenses, they had lapsed and Mr. O'Neil was unable to find new employment in his field.  (Id.)

---

[1] Although its Motion to Dismiss is based entirely on statute of limitations grounds, Defendant devotes the first three pages of its Motion to Dismiss to maligning Plaintiff's performance in an attempt to refute Plaintiff's allegations that the performance reasons given for his termination were pretextual excuses for the real reason:  Mr. O'Neil's military obligations.  Because the "facts" Putnam alleges about Mr. O'Neil's performance are wholly irrelevant to the Motion to Dismiss, Plaintiff will not refute them in this opposition.

Notwithstanding Defendant's lengthy and contentious recitation of the facts, the **only** facts relevant to Defendant's Motion to Dismiss Mr. O'Neil's USERRA claims are the date on which Mr. O'Neil's claims accrued and the date on which he filed his claim. Defendant concedes that the statute of limitations began to run on Mr. O'Neil's USERRA claims on his July 1999 termination date. (Def.'s Mot. at 5.)[2] Mr. O'Neil filed this civil action on March 11, 2005.

## II.    LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the district court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiff's favor. See Carparts Distr. Ctr. v. Automotive Wholesalers' Ass'n, 37 F.3d 12, 14 (1st Cir. 1994). If, under any theory, the allegations of the complaint are sufficient to state a cause of action, a motion to dismiss the claim must be denied. See Knight v. Mills, 836 F.2d 659, 664 (1st Cir. 1987). Dismissal for failure to state a claim is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also 5A Wright & Miller, FED. PRAC. & PROC. § 1357 (2d ed. 1990). The moving party has the burden of proving that no claim exists. See Rivera-Lebron v. Cellular One, 13 F. Supp. 2d 235, 238 (D.P.R. 1998); FED. PRAC. & PROC. § 1357 (1999 Supp.).

## III.    ARGUMENT

### A.  Plaintiff's USERRA Claims Are Not Subject To the General Federal Statute of Limitations

#### 1.    The Legislative History of USERRA

The background and history of statutory protections for veterans' employment rights are integral to a comprehensive understanding of the legal issues surrounding the construction and

---

[2] Defendant indicates that the date "would be earlier" for Counts II and III, but gives no further argument or

interpretation of USERRA as it relates to Defendant's Motion.  As such, a brief summary will be set forth below.[3]

Beginning in 1940 with the Selective Training and Service Act, ch. 720, 54 Stat. 885 ("1940 Act"), Congress undertook the enactment of statutory protections for the jobs of persons serving in the military.  The 1940 Act ensured that persons serving in the military had the right to re-employment upon their return to civilian life and created a private right of action for the enforcement of that right.  In 1974, Congress made substantial and far-reaching amendments to the 1940 Act, when it passed the Veterans' Readjustment Assistance Act of 1974, Pub. L. No. 93-508, 88 Stat. 1578 ("1974 Act").  Although the 1940 Act had been silent with respect to any applicable statute of limitations, the 1974 amendments expressly added a provision prohibiting federal courts from applying state statutes of limitations.  See 38 U.S.C. § 2022.

Section 404(a) of the 1974 Act prohibited discrimination against military reservists, making it unlawful for employers to deny reservists "retention in employment or any other promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component" of the United States Armed Services.  38 U.S.C § 2021(b)(3).  The anti-discriminations provisions in Section 404(a) were extended to all reservists and became known as the Veterans' Reemployment Rights Act ("VRRA"), 38 U.S.C. §§ 2021–2027 (recodified at 38 U.S.C. §§ 4301–4307 (1992))(attached hereto as Ex. A.)

In 1994, in order to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions," H.R. Rep. No. 103-65(I), reprinted at 1994 U.S.C.C.A.N. 2449, 2451 (1993), Congress amended the VRRA with the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. §§ 4301–4333 (attached

---

guidance indicating why or what the "earlier" date would be.
[3] For a complete history, see Lapine v. Town of Wellesley, 304 F.3d 90, 97-102 (1st Cir. 2002).

hereto as Ex. B).  The First Circuit has recognized that USERRA amends the VRRA, noting that there is "nothing in the legislative history to indicate that Congress . . . thought it was departing from the substance of the law as it had existed in the past.  Indeed, the legislative history accompanying USERRA was careful to note changes to the law that represented a deviation from the VRRA."  Lapine, 304 F.3d at 100 (citing H.R. Rep. No. 103-65(I), 1994 U.S.C.C.A.N. at 2458-62 (discussing changes to length of service and notice requirements)).  Finally, USERRA retained the VRRA's prohibition on state statutes of limitation.  See 38 U.S.C. § 4323(i); see also H. R. Rep. 103-65(I), 1994 U.S.C.C.A.N. at 2472 (reaffirming the VRRA's amendment to prior incarnations of the act that no state statute of limitations should apply to claims brought under the provisions).

## 2.     The General Federal Statute of Limitations Does Not Apply to USERRA Claims.

Defendant's argument that the four-year federal statute of limitations bars Mr. O'Neil's USERRA claims fails on the face of the statute.  Enacted in 1990, that statute states:  "***Except as otherwise provided by law***, a civil action ***arising under an Act of Congress enacted after the date of the enactment of this section*** may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C § 1658 (emphasis added).  With respect to USERRA, it is "otherwise provided by law" – indeed, by sixty years of legal precedent – that the only applicable timeliness challenge is the equitable doctrine of laches.

### a.     Well-Established Law Provides That There Is No Statute of Limitations for USERRA claims.

As described above and as Defendant concedes, USERRA explicitly states that "No state statute of limitations shall apply to any proceedings under this chapter."  38 U.S.C. § 4323(i).  This provision, re-enacted from the 1974 Act, has long been interpreted by federal

courts to mean that the only time-bar to claims under USERRA and its predecessor Acts is the equitable doctrine of laches. See, e.g., Miller v. City of Indianapolis, 281 F.3d 648, 653 (7th Cir. 2002); Garner v. Yellow Freight Sys., Inc., 19 Fed. Appx. 834, 2001 WL 1173258 (10th Cir. 2001); Stevens v. Tennessee Valley Auth., 712 F.2d 1047, 1054 (6th Cir. 1983); Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 805 (8th Cir. 1979); Novak v. Mackintosh, 937 F. Supp. 873, 879-80 (D.S.D. 1996); Petry v. Delmarva Power & Light Co., 631 F. Supp. 1532, 1534 (D. Del. 1986); Leston v. Liberty Mut. Ins. Co., 523 F. Supp. 1221, 1225 (N.D. Ga. 1981). By reenacting the 1974 Act's bar on the application of state statutes of limitations and expressly acknowledging that the extensive body of case law that has evolved under the predecessor statutes remains in full force and effect,[4] Congress clearly intended that the **only** time-bar that would prohibit claims under USERRA was the equitable doctrine of laches.[5]

In light of this ample precedent, the absence of an explicit statutory provision does not mean that statute of limitations for USERRA has not been "otherwise provided by law." See, e.g., Douglass v. General Motors Corp., 2005 WL 1039148 (D. Kan. Mar. 31, 2005). In Douglass, the Court addressed whether section 1658's four-year statute of limitations applied to a plaintiff's "hybrid" breach of contract/breach of duty of fair representation claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 160(b), 185. See id. at *10. The Court concluded that although the LMRA itself did not set forth a statute of limitations, existing case law supported the application of a six-month statute of limitations for such "hybrid" claims under the Act. See id. Thus, because the statute of limitations was otherwise provided by law,

---

[4] USERRA's legislative history indicates "that the extensive body of case law that has evolved . . . to the extent that it is consistent with the provisions of this Act, remains in full force and effect in interpreting these provisions." H.R. Rep. 103-65(I), 1994 U.S.C.C.A.N. at 2452. The Committee expressly reaffirmed the VRRA's amendment to prior incarnations of the act that no state statute of limitations should apply to claims brought under the provisions. Id. at 2472.

[5] Defendant has not argued that Mr. O'Neil's claims are barred by the doctrine of laches.

the Court held that section 1658's four-year statute of limitations was not applicable and applied the six-month statute supplied by case law.  See id.  Likewise, here, because the inapplicability of a statute of limitations to USERRA claims is "otherwise provided by law," section 1658 does not apply.[6]

Finally, Congress's stated purpose in enacting section 1658 was to prevent the uncertainty and inefficiency created by federal courts applying different state statutes of limitation to federal causes of action.  See, e.g., H. R. Rep. No. 101-734, reprinted in 1990 U.S.C.C.A.N. 6860, 6870 (1990)(noting "a number of practical problems" created by the practice of borrowing statutes of limitations, including: the need to determine the most analogous state law claim; imposition of uncertainty on litigants; reliance on varying state laws results; and undesirable variance among the federal courts).  This rationale for the application of a federal statute of limitations is entirely absent in the context of USERRA, which explicitly prevents the confusion by prohibiting the application of *any* state statute of limitations.  See 38 U.S.C. § 4323(i).  In addition, the need for a uniform standard is obviated by the existence of sixty years of consistent case law holding that the only time-related bar to USERRA claims is the doctrine of laches.

---

[6] Similarly, the Department of Labor has taken the position that no statute of limitations applies to USERRA, because the issue is "otherwise provided by law."  See Veterans' Employment and Training Service, U.S. Department of Labor, Regulations Under the Uniformed Services Employment and Reemployment Rights Act of 1994, 69 Fed. Reg. 56,266 (Sept. 20, 2004).  The proposed regulations state:

> The Department has long taken the position that *no Federal statute of limitations applied to actions under USERRA*. USERRA's provision that State statutes of limitations are inapplicable, together with USERRA's legislative history, show that the Congress intended that the only time-related defense that may be asserted in defending against a USERRA claim is the equitable doctrine of laches. 38 U.S.C. 4323(i); see S. Rep. No. 103-158, at 70 (1993); H.R. Rep. No. 103-65, at 39.

69 Fed. Reg. 52,266, 56,281.  The comment period has closed and the final regulations are expected this year.

      **b.**      **Section 1658 Does Not Apply to Claims Brought Under Post-1990 Amendments to Existing Statutes Unless the Claim was "Made Possible" by the Post-1990 Amendment**

In addition to the statute of limitations being "otherwise provided by law," Plaintiff does not bring his claims pursuant to "a civil action arising under an Act of Congress enacted after the date of the enactment of [section 1658]." 28 U.S.C § 1658. The Supreme Court recently addressed a split in the circuits[7] regarding when a cause of action pursuant to an amendment to a pre-existing statute "arises under an Act of Congress enacted" after December 1, 1990, and is therefore governed by the federal four-year statute of limitations. See Jones v. R.R. Donnelly & Sons Co., 531 U.S. 369, 124 S.Ct. 1836 (2004). The Court determined that section 1658 applies to federal causes of action that were "made possible by a post-1990 enactment." Id. at 1845. In doing so, the Court held that even when Congress designates an act as an amendment, "[w]hat matters is the substantive effect of an enactment – the creation of new rights of action and corresponding liabilities." Id. at 1844-45.

In Jones, the plaintiffs were African American employees who brought hostile work environment, termination, and failure to transfer claims pursuant to 42 U.S.C. § 1981. The Court determined that the plaintiff's claims were "made possible" by a 1991 amendment, which overturned prior case law holding that racial harassment relating to the conditions of employment was ***not actionable*** under section 1981. Jones, 124 S.Ct. at 1845-46 (discussing Patterson v. McLean Credit Union, 491 U.S. 164, 171 (1989))(emphasis added).

---

[7] Compare Akhdary v. City of Chattanooga, 2002 WL 32060140, *6 (E.D. Tenn. 2002)(holding that section 1658 does not apply to claims brought under USERRA, which amended the pre-existing law of the VRRA) with Rogers v. City of San Antonio, 2003 WL 1566502, * 7-8 (W.D. Tex. Mar. 4, 2003)(holding that the four-year statute of limitations created by 28 U.S.C. § 1658 should apply to USERRA which is "essentially a new act."). The Akhdary decision is in line with the First Circuit's holding that there is "nothing in the legislative history [of USERRA] to indicate that Congress . . . thought it was departing from the substance of the law as it had existed in the past." Lapine, 304 F.3d at 100 (citing H.R. Rep. 103-65(I), reprinted in 1994 U.S.C.C.A.N. at 2452).

Unlike the conduct in <u>Jones</u>, however, discriminatory employment practices based on reserve status ***was actionable*** prior to the enactment of section 1658, and Mr. O'Neil's claims were not "made possible" by a post-1990 enactment.[8]  The VRRA prohibited the very conduct that forms the basis of Mr. O'Neil's claims:  employment discrimination based on his membership in the reserves.  The VRRA provided, "Any person who holds a position… shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the armed forces."  38 U.S.C. § 2021(b)(3).  In <u>Monroe v. Standard Oil Co.</u>, the Supreme Court held that section 2021(b)(3) protected reservists against certain types of discharges or demotions that might "rob" their reemployment of its substance.  452 U.S. 549, 556–57 (1981).  The Court explicitly noted that Congress intended to create non-discrimination protections for reservists when it enacted the VRRA.  <u>Id</u>; H.R. Rep. No. 1303 (1966)("It should be noted that the only substantive changes in existing law relate to . . . prohibiting against employer discrimination against reservists who participate in the Reserve or National Guard programs.");  S. Rep. No. 90-1477 (1968)(the VRRA was enacted "to address employment practices that discriminate against employees with Reserve obligations.").  <u>See also</u> <u>Lapine</u>, 304 F.3d at 100 ("in the VRRA, Congress had extended to reservists – without more or less – the same rights as it had provided to other serving in the Armed Forces").  Finally, section 2024 of the VRRA extends to reservists "all of the reemployment rights and benefits provided for by this chapter."  38 U.S.C. § 2024(b).  Thus, well before 1990, the VRRA was enacted and interpreted to provide reservists with the

---

[8] The Department of Labor also takes the position that <u>Jones</u> "is not dispositive because USERRA "otherwise provides by law" that no statute of limitations applies, and because, with respect to some USERRA claims, ***the cause of action previously existed under the VRRA and consequently predates the effective date of 28 U.S.C. 1658.***"  69 Fed. Reg. 52,266, 56281 (emphasis added).

very rights at issue here:  protections against job discrimination – including discharge, denial of promotion, and denial of benefits – based on their military status.

USERRA was subsequently enacted "to streamline the laws protecting veterans that had become increasingly complex and cumbersome over the years."  Lapine, 304 F.3d at 100; see also H.R. Rep. No. 103-65(I), 1994 U.S.C.C.A.N. at 2451.  USERRA revised the VRRA and compiled its existing prohibitions on discrimination based on military status into one anti-discrimination clause – "Discrimination Against Persons Who Serve In the Uniformed Services and Acts of Reprisal," 38 U.S.C. § 4311 – under which Mr. O'Neil brings his claims.  Section 4311's prohibition on employment discrimination practices based on reserve status existed in the VRRA, and pre-dated the enactment of section 1658.  Therefore, Mr. O'Neil's claims were not "made possible" by a post-1990 enactment and the four-year statute of limitations does not apply.

Unable to state how Mr. O'Neil's claims are "made possible" by USERRA, Defendant points to the fact that USERRA changed the burden of proof for a plaintiff bringing a discrimination claim.  Instead of being the *sole cause*, as required under the VRRA, see Monroe, 452 U.S. at 559, a plaintiff bringing a claim under USERRA must show that his or her military status was *a motivating factor* for the discrimination.  See, e.g., Gagnon v. Sprint Corp., 284 F.3d 839, 852 (8th Cir. 2002)(emphasis added).  The argument that a change in the burden of proof somehow creates a new cause of action is simply a red herring.  Courts and legislatures routinely revise and change standards of proof, particularly with respect to employment discrimination claims, without creating new causes of action.  See, e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)(holding that the lesser causation standard in 1991 amendments to Title VII that added Section 703(m) establishing liability upon proof that bias was "a motivating

factor" in the employment decision is available in all Title VII cases without the requirement of direct evidence).[9]

Defendant cites (and attaches) two district court opinions decided since <u>Jones</u>, holding that section 1658 applied to a plaintiff's USERRA claims.  <u>See</u> <u>Quick v. Deluxe Corp.</u>, No. 4:04-CV-396 (CEJ)(E.D. Mo. Mar. 18, 2003); <u>Copeland v. Novartis Pharm. Corp., Novartis Nutrition Corp.</u>, No. CV-04-J-1159-S (N.D. Ala. Sept. 22, 2004).  Neither case applies to the issue of whether Mr. O'Neil's claims were "made possible" by USERRA; the court in <u>Quick</u> inexplicably ignored that dispositive standard and the court in <u>Copeland</u>, while applying the correct standard, reached an incorrect result.

In <u>Quick</u>, which involved a claim that the defendant employer violated USERRA by not recognizing active military service as qualifying employment for purposes of pension benefits, the plaintiff did not argue whether claims were "made possible" by USERRA, but instead argued only that section 1658 was limited to "entirely new federal causes of action," not amendments.  <u>Quick</u>, No. 4:04-CV-396 at 6.  The court rejected that argument as "irrelevant," citing language in <u>Jones</u> that stated that § 1658 was not limited to entirely new laws.  Without further explanation, however, the court also failed to analyze whether the plaintiff's claims were "made possible" by USERRA.  Instead, the case turned on the simplistic – and wrong – proposition that "[b]ecause USERRA was enacted in 1994, all claims based on that statute must be brought within four years pursuant to § 1658."  <u>Id.</u> at 7.

---

[9] Legal scholars were quick to point out that the Supreme Court's interpretation of Title VII's 1991 amendments significantly altered the burden of proof in discrimination cases, eliminating the more rigorous "because of" causation requirement and quietly killing the thirty years of jurisprudence applying the <u>McDonnell Douglas</u> model of proof.  <u>See, e.g.</u>, William R. Corbett, *McDonnell Douglas, 1973-2003: May You Rest in Peace?* 6 U. Pa. J. Lab. & Emp. L. 199 (Fall 2003), and Jeffrey A. Van Detta, *Le Roi Est Mort:  Vive Le Roi!:  An Essay on the Quiet Demise of McDonnell Douglas and the Transformation of Every Title VII Case After* Desert Palace, Inc. v. Costa *into a "Mixed-Motives" Case*, 52 Drake L. Rev. 427 (Spring 2004).

In <u>Copeland</u>, which involved a claim that the employer violated USERRA by denying the plaintiff promotions due to his military commitments, the court correctly recognized that, "in light of <u>Jones</u>, the applicability of § 1658 to plaintiff's claims against [defendant employer] depends upon whether the claims arise under a new cause of action created by USERRA." <u>Copeland</u>, No. CV-04-J-1159-S at 6. But in applying the proper standard, the <u>Copeland</u> court incorrectly determined that the VRRA had not prohibited employers from denying employees with military obligations "promotion, or any benefit or employment by an employer on the basis of" the employee's military obligations," as is prohibited under section 4311. <u>Id.</u> at 6. The <u>Copeland</u> court cited 38 U.S.C. § 2024(d)[10] to "show" that under the VRRA, employers were only required to grant leaves of absences to fulfill training obligations and to restore comparable jobs to reservists, whereas USERRA's section 4311 created new rights. <u>See id.</u> The Court's reliance on the cited section, which is not comprehensive of the rights conferred on reservists by the VRRA, is myopic and incorrect.

Indeed, as noted above, the VRRA also provided, "Any person who holds a position… shall not be ***denied retention in employment or any promotion or other incident or advantage of employment*** because of any obligation as a member of a reserve component of the armed forces." 38 U.S.C. § 2021(b)(3). The Supreme Court interpreted the provision to mean that employers were prohibited by the VRRA from discriminating against reservists. <u>See</u> <u>Monroe</u>, 452 U.S. at 556–57. Finally, the VRRA also provided that: "Any person who . . . enters upon active duty . . . shall be entitled to ***all*** of the reemployment rights and benefits provided by this ***chapter*** in the case of persons inducted." 38 U.S.C. § 2024(b)(emphasis added). The <u>Copeland</u> court's incorrect conclusion stems from its incomplete reading of the VRRA. This is precisely

---

[10] Cited by Defendant in its brief as recodified at 38 U.S.C. § 4304(d)(1992). (<u>See</u> Def.'s Mem. at 6.)

the narrow and confused interpretation of the anti-discrimination protections for reservists that USERRA was enacted to prevent.

3.   **Application of the General Federal Limitations Period Is Inconsistent With the Mandate That USERRA Is To Be Liberally Construed for the Benefit of Members of the Military.**

USERRA and the VRRA are to be "liberally construed." Fishgold v. Sullivan Drydock and Repair Corp., 328 U.S. 275, 285 (1946). See also H.R. Rep. 103-65(I), 1994 U.S.C.C.A.N. at 2452. To impose a four-year statute of limitations on claims brought under USERRA would weaken, rather than strengthen, the protections afforded to members of the military for the last sixty years. This would fly in the face of directives by both Congress and the Court that USERRA should be liberally construed and was enacted to expand protections for members of the military.

**B.   Plaintiff's Breach Of Implied Contract Claim Is Timely Under The Discovery Rule And States A Valid Claim**

Putnam seeks to avoid Mr. O'Neil's breach of implied contract claim (Count IV) for its failure to transfer his securities licenses by arguing that the claim is untimely and that Plaintiff fails to allege its essential elements. Both arguments are without merit.

Defendant's statute of limitations defense is premised on the argument that the six-year statute of limitations set forth in Mass. Gen. L. ch. 260, § 2, began to run at the time of the breach, which Defendant asserts occurred when Putnam failed to transfer Mr. O'Neil's security licenses in October 1997 at the time he was hired. However, under the discovery rule applicable to contract claims, the cause of action arose only when Mr. O'Neil knew or should have known of the breach, which was when he discovered that his securities licenses had lapsed after Putnam fired him in July 1999. See Whitcomb v. Pension Devel. Co., Inc., 808 F.2d 167, 169 (1st Cir. 1986)(under Massachusetts law, when a cause of action in contract is based on an inherently

unknowable wrong, the cause of action accrues when the injured party knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action); Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 825-26 (1986)(applying discovery rule to claims for breach of express warranty, which did not accrue until the plaintiff knew or reasonably should have known of the breach).

Mr. O'Neil had no way of knowing that Putnam did not properly transfer his securities licenses when it hired him to transact in securities as a Retirement Plans Specialist. In fact, Putnam's actions and its securities law obligations led Mr. O'Neil to reasonably believe that it did transfer his licenses. As part of his orientation and training, Putnam required Mr. O'Neil to fill out a form "U4," which is a "Uniform Application for Securities Industry Registration or Transfer." As the name implies, the U4 is completed by new employees and submitted to Putnam (or any employing securities firm) for the very purpose of transferring the employee's securities licenses from the employee's prior place of employment to Putnam. Moreover, under NASD rules, Putnam was required to transfer Mr. O'Neil's licenses for him to be lawfully employed at Putnam in the capacity for which he was hired. First, NASD Rule 1031 (attached hereto as Ex. C) requires that all persons engaged in the securities business of a member firm who are to function as representatives to be registered with the NASD. Further, NASD Rule 1000-3 (attached hereto as Ex. D) states: "The failure of any member to register an employee, who should be so registered, as a Registered Representative may be deemed to be conduct inconsistent with just and equitable principles of trade and when discovered may be sufficient cause for appropriate disciplinary action." Finally, NASD Information for Brokers indicates,

"Your firm registers you by filing a Uniform Application for Securities Industry Registration or Transfer, Form U-4, with NASD." See NASD Obligations to Your Firm.[11, 12]

Mr. O'Neil did not learn about Putnam's failure to transfer his licenses until the day he was terminated in July 1999. His breach of contract claim, filed on March 11, 2005, was filed within the six-year statutory period prescribed by Mass. Gen. L. ch. 260, § 2, and is not time-barred.

Equally unavailing is Defendant's argument that Plaintiff has failed to state a claim for breach of contract by not alleging a promise by Putnam to transfer his licenses when it hired him as a securities representative. Defendant relies on an inapplicable line of cases involving employment contracts implied from employee manuals. (See Def.'s Mem. at 10-11.) Plaintiff, however, does not claim an implied employment contract that changed the nature of his relationship with Putnam from anything other than "at-will." Rather, Plaintiff's claim is that by employing him in the capacity of a securities representative Putnam was required by law to transfer his licenses, and by requiring him to submit a U4 to effect the transfer of his securities licenses, Putnam made an implied promise to do so.

Mr. O'Neil brings his breach of contract claim based on the theory of reliance. Under Massachusetts law, "When a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory.'" Loranger Const.

---

[11] Available at: http://www.nasd.com/web/idcplg?IdcService=SS_GET_PAGE&nodeId=1057&ssSource NodeId=1056 and attached hereto at Ex. E.

[12] The Securities Exchange Act of 1934 makes it unlawful for any "broker or dealer" who uses interstate commerce to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless registered as a broker/dealer. 15 U.S.C. § 78o(a)(1); see S.E.C. v. Kenton Capital, Ltd., 69 F.Supp.2d 1, 13 (D.D.C. 1998); Herbruck, Alder & Co., SEC No-Action Letter (June 4, 2002). Section 3(a)(4)(A) of the Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(4)(A).

Corp. v. E. F. Hauserman Co., 376 Mass. 757, 761 (1978)("We do not use the expression 'promissory estoppel,' since it tends to confusion rather than clarity.")  Therefore, in order to plead his claim for breach of contract, Mr. O'Neil must allege that: (1) he and Putnam had a binding agreement; (2) Putnam breached the terms of the agreement; and (3) Mr. O'Neil suffered damages as a result of the breach.  See Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999).  Mr. O'Neil has so alleged.  (See Compl. ¶¶ 48-52.)

Mr. O'Neil relied on Putnam's promise by accepting employment and working at Putnam as a broker for nearly two years.  Mr. O'Neil suffered damages from Putnam's breach – its failure to transfer his licenses as promised – because without his licenses, which expired, he was unable to attain employment as a securities representative.  (See Compl. ¶¶ 28-35.)[13]  As such, Mr. O'Neil has stated a claim upon which relief can be granted and Putnam's motion to dismiss count IV should be denied.

---

[13] Putnam's assertion that Mr. O'Neil was not really harmed by Putnam's allowing his licenses to lapse because he still could have worked in the investment industry in a clerical or non-securities related capacity, citing NASD Reg. 1060(a)(attached to Defendant's motion at Ex C), is absurd.  Mr. O'Neil came to Putnam with ten years experience as a securities representative and holding three securities licenses, including a Series 24 managerial license; he did not come to Putnam as a secretary or clerical worker.  Putnam's actions therefore denied him the ability to find new employment in his chosen field.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion to Dismiss All Counts of the Complaint and order Defendant to file an Answer in this matter.

Respectfully submitted,

**DAVID M. O'NEIL**

By his attorneys,

/s/ Jessica P. Driscoll
_____
Jody L. Newman (BBO # 542264)
Jessica P. Driscoll  (BBO # 655394)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000
(617) 371-1037 (fax)

Dated:  May 24, 2005

**EXHIBIT A**

Westlaw.

PL 93-508, 1974 HR 12628                                                                 Page 1
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

### UNITED STATES PUBLIC LAWS
### 93rd Congress - Second Session
### Convening January 21, 1974

Copr. © West Group 1998. No Claim to Orig. U.S. Govt. Works

### DATA SUPPLIED BY THE U.S. DEPARTMENT OF JUSTICE. (SEE SCOPE)
Additions and Deletions are not identified in this document.

PL 93-508 (HR 12628)
DECEMBER 3, 1974

An Act tO AMEND TITLE 38, UNITED STATES CONDE, TO INCREASE VOCATIONAL REHABILITATION SUBSISTENCE ALLOWANCES, EDUCATIONAL AND TRAINING ASSISTANCE ALLOWANCES, AND SPECIAL ALLOWANCES PAID TO ELIGIBLE VETERANS AND PERSONS UNDER CHAPTERS 31, 34, AND 35 OF SUCH TITLE; TO IMPROVE AND EXPAND THE SPECIAL PROGRAMS FOR EDUCATIONALLY DISADVANTAGED VETERANS AND SERVICEMEN UNDER CHAPTER 34 OF SUCH TITLE; TO IMPROVE AND EXPAND THE VETERAN-STUDENT SERVICES PROGRAM; TO ESTABLISH AN EDUCATION LOAN PROGRAMS FOR VETERANS AND PERSONS ELIGIBLE FOR BENEFITS UNDER CHAPTER 34 OR 35 OF SUCH TITLE; TO MAKE OTHER IMPROVEMENTS IN THE EDUCATIONAL ASSISTANCE PROGRAM AND IN THE ADMINISTRATION OF EDUCATIONAL BENEFITS; TO PROMOTE THE EMPLOYMENT OF VETERANS AND THE WIVES AND WIDOWS OF CERTAIN VETERANS BY IMPROVING AND EXPANDING THE PROVISIONS GOVERNING THE OPERATION OF THE VETERANS EMPLOYMENT SERVICE, BY INCREASING THE EMPLOYMENT OF VETERANS BY FEDERAL CONTRACTORS AND SUBCONTRACTORS, AND BY PROVIDING FOR AN ACTION PLAN FOR THE EMPLOYMENT OF DISABLED AND VIETNAM ERA VETERANS WITHIN THE FEDERAL GOVERNMENT; TO CODIFY AND EXPAND VETERANS REEMPLOYMENT RIGHTS; AND FOR OTHER PURPOSES.

BE IT ENACTED BY THE SENATE AND HOUSE REPRESENTATIVES OF THE UNITED STATES OF AMERICA IN CONGRESS ASSEMBLED, THAT:

THIS ACT MAY BE CITED AS THE "VIETNAM ERA VETERANS' READJUSTMENT ASSISTANCE ACT OF 1974". //38 USC 1501 NOTE.//

### TITLE I--VOCATIONAL REHABILITATION AND EDUCATIONAL AND TRAINING ASSISTANCE ALLOWANCE RATE ADJUSTMENTS

SEC. 101. CHAPTER 31 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY INSERTING IN SECTION 1501(2) //38 USC 1501.// A COMMA AND "ALL APPROPRIATE INDIVIDUALIZED TUTORIAL ASSISTANCE," AFTER "COUNSELING";

(2) BY STRIKING OUT IN SECTION 1502(A) //38 USC 1502.// ALL AFTER "IF SUCH DISABILITY" AND INSERTING IN LIEU THEREOF "AROSE OUT OF SERVICE DURING WORLD WAR II OR THEREAFTER."; AND

(3) BY AMENDING THE TABLE CONTAINED IN SECTION 1504(B) //38 USC 1504.// TO READ AS FOLLOWS: (TABLE OMITTED 88 STAT 1579)

SEC. 102. CHAPTER 34 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                 Page 2
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

(1) BY STRIKING OUT IN THE LAST SENTENCE OF SECTION 1677(B) //38 USC 1677.// "$220" AND INSERTING IN LIEU THEREOF "$260";

(2) BY AMENDING THE TABLE CONTAINED IN SECTION 1682(A)(1) //38 USC 1682.// TO READ AS FOLLOWS: (TABLE OMITTED 88 STAT 1579)

(3) BY STRIKING OUT IN SECTION 1682(B) "$220" AND INSERTING IN LIEU THEREOF "$260";

(4) BY AMENDING THE TABLE CONTAINED IN SECTION 1682(C)(2) TO READ AS FOLLOWS: (TABLE OMITTED 88 STAT 1579) AND

(5) BY STRIKING OUT IN SECTION 1696(B) //38 USC 1696.// "$220" AND INSERTING IN LIEU THEREOF "$260".

SEC. 103. CHAPTER 35 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY AMENDING SECTION 1732(A)(1) //38 USC 1732.// TO READ AS FOLLOWS:

"(A)(1) THE EDUCATIONAL ASSISTANCE ALLOWANCE ON BEHALF OF AN ELIGIBLE PERSON WHO IS PURSUING A PROGRAM OF EDUCATION CONSISTING OF INSTITUTIONAL COURSES SHALL BE COMPUTED AT THE RATE PRESCRIBED IN SECTION 1682(A)(1) OF THIS TITLE FOR FULL-TIME, THREE-QUARTER-TIME, OR HALF-TIME PURSUIT, AS APPROPRIATE, OF AN INSTITUTIONAL PROGRAM BY AN ELIGIBLE VETERAN WITH NO DEPENDENTS.";

(2) BY STRIKING OUT IN SECTION 1732(A)(2) ALL AFTER AND INCLUDING "OF (A)" AND INSERTING IN LIEU THEREOF "PRESCRIBED IN SECTION 1682(B)(2) OF THIS TITLE FOR LESS-THAN-HALF-TIME PURSUIT OF AN INSTITUTIONAL PROGRAM BY AN ELIGIBLE VETERAN.";

(3) BY STRIKING OUT IN SECTION 1732(B) "$177" AND INSERTING IN LIEU THEREOF "$209"; AND

(4) BY AMENDING SECTION 1742(A) //38 USC 1742.// TO READ AS FOLLOWS:

"(A) WHILE THE ELIGIBLE PERSON IS ENROLLED IN AND PURSUING A FULL-TIME COURSE OF SPECIAL RESORTATIVE TRAINING, THE PARENT OR GUARDIAN SHALL BE ENTITLED TO RECEIVE ON BEHALF OF SUCH PERSON A SPECIAL TRAINING ALLOWANCE COMPUTED AT THE BASIC RATE OF $260 PER MONTH. IF THE CHARGES FOR TUITION AND FEES APPLICABLE TO ANY SUCH COURSE ARE MORE THAN $82 PER CALENDAR MONTH, THE BASIC MONTHLY ALLOWANCE MAY BE INCREASED BY THE AMOUNT THAT SUCH CHARGES EXCEED $82 A MONTH, UPON ELECTION BY THE PARENT OR GUARDIAN OF THE ELIGIBLE PERSON TO HAVE SUCH PERSON'S PERIOD OF ENTITLEMENT REDUCED BY ONE DAY FOR EACH $8.69 THAT THE SPECIAL TRAINING ALLOWANCE PAID EXCEEDS THE BASIC MONTHLY ALLOWANCE.".

SEC. 104. CHAPTER 36 OF TITLE 38, UNITED STATES CODE, AMENDED AS FOLLOWS:

(1) BY STRIKING OUT IN SECTION 1786(A)(2) //38 USC 1786.// "$220" AND INSERTING IN LIEU THEREOF "$260";

(2) BY AMENDING THE TABLE CONTAINED IN PARAGRAPH (1) OF SECTION 1787(B) //38 USC 1787.// TO READ AS FOLLOWS: (TABLE OMITTED 88 STAT 1580) AND

(3) BY AMENDING SECTION 1787(B)(2) TO READ AS FOLLOWS:

"(2) THE MONTHLY TRAINING ASSISTANCE ALLOWANCE OF AN ELIGIBLE PERSON PURSUING A PROGRAM DESCRIBED UNDER SUBSECTION (A) SHALL BE COMPUTED AT THE RATE PRESCRIBED

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                                                  Page 3
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

IN PARAGRAPH (1) OF THIS SUBSECTION FOR AN ELIGIBLE VETERAN WITH NO DEPENDENTS PURSUING SUCH A COURSE.".

SEC. 105. //38 USC 1780 NOTE.// (A) THE ADMINISTRATOR SHALL CARRY OUT DIRECTLY A THOROUGH STUDY AND INVESTIGATION OF THE ADMINISTRATIVE DIFFICULTIES AND OPPORTUNITIES OR ABUSE THAT WOULD BE OCCASIONED BY ENACTMENT OF SOME FORM OF VARIABLE TUITION ASSISTANCE ALLOWANCE PROGRAM, WITH REFERENCE TO SUCH DIFFICULTIES AND ABUSES EXPERIENCED BY THE VETERANS' ADMINISTRATION AFTER THE END OF WORLD WAR II IN CARRYING OUT THE PROVISIONS OF VETERANS' REGULATION NUMBERED 1(A), RELATING TO THE PAYMENT OF TUITION AND RELATED EXPENSES FOR VETERANS OF WORLD WAR II PURSUING A PROGRAM OF EDUCATION OR TRAINING UNDER THE SERVICEMEN'S READJUSTMENT ACT OF 1944, //58 STAT. 284.// AND TO ANY SUCH DIFFICULTIES AND ABUSES PRESENTLY BEING EXPERIENCED BY THE VETERANS' ADMINISTRATION IN CARRYING OUT EXISTING TUITION ASSISTANCE PROGRAMS UNDER TITLE 38, UNITED STATES CODE, INCLUDING CHAPTER 31 VOCATIONAL REHABILITATION, CORRESPONDENCE COURSES, FLIGHT TRAINING AND PREP, AND OF WAYS IN WHICH ANY SUCH DIFFICULTIES AND ABUSES COULD BE AVOIDED OR MINIMIZED THROUGH LEGISLATIVE OR ADMINISTRATIVE ACTION SO AS TO ENSURE AN EXPEDITIOUS, ORDERLY, AND EFFECTIVE IMPLEMENTATION OF ANY TUITION ASSISTANCE ALLOWANCE PROGRAM.

(B) IN CARRYING OUT THE STUDY AND INVESTIGATION REQUIRED BY SUBSECTION (A), THE ADMINISTRATOR SHALL CONSULT WITH AND SOLICIT THE VIEWS AND SUGGESTIONS OF INTERESTED VETERANS' ORGANIZATIONS, EDUCATIONAL GROUPS AND ASSOCIATIONS, PERSONS RECEIVING ASSISTANCE UNDER CHAPTERS 31, 34, 35 AND 36 OF TITLE 38, UNITED STATES CODE, //38 USC 1501, 1651, 1700, 1770.// OTHER FEDERAL DEPARTMENTS AND AGENCIES, AND OTHER INTERESTED PARTIES.

(C) THE ADMINISTRATOR SHALL REPORT TO THE CONGRESS AND THE PRESIDENT NOT LATER THAN ONE YEAR AFTER TEH DATE OF ENACTMENT OF THIS ACT ON THE RESULTS OF THE STUDY AND INVESTIGATION CARRIED OUT UNDER THIS SECTION, INCLUDING ANY RECOMMENDATIONS FOR LEGISLATIVE OR ADMINISTRATIVE ACTION.

### TITLE II--EDUCATIONAL ASSISTANCE PROGRAM ADJUSTMENTS

SEC. 201. SECTION 1652(A)(3) OF TITLE 38, UNITED STATES CODE, IS AMENDED BY STRIKING OUT THE PERIOD AT THE END OF SUCH SECTION AND INSERTING IN LIEU THEREOF "UNLESS AT SOME TIME SUBSEQUENT TO THE COMPLETION OF SUCH PERIOD OF ACTIVE DUTY FOR TRAINING SUCH INDIVIDUAL SERVED ON ACTIVE DUTY FOR A CONSECUTIVE PERIOD OF ONE YEAR OR MORE (NOT INCLUDING ANY SERVICE AS A CADET OR MIDSHIPMAN AT ONE OF THE SERVICE ACADEMIES).".

SEC. 202. SECTION 1661 OF TITLE 38, UNITED STATES CODE, IS AMENDED BY--,

(1) INSERTING IN SUBSECTION (A) BEFORE THE PERIOD AT THE END THEREOF "PLUS AN ADDITIONAL NUMBER OF MONTHS, NOT EXCEEDING NINE, AS MAY BE UTILIZED IN PURSUIT OF A PROGRAM OF EDUCATION LEADING TO A STANDARD UNDERGRADUATE COLLEGE DEGREE"; AND

(2) STRIKING OUT IN SUBSECTION (C) "SUBSECTION (B)" AND INSERTING IN LIEU THEREOF "SUBSECTIONS (A) AND (B)".

SEC. 203. SECTION 1673 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY AMENDING SUBSECTION (A)(2) TO READ AS FOLLOWS:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"(2) ANY SALES OR SALES MANAGEMENT COURSE WHICH DOES NOT PROVIDE SPECIALIZED TRAINING WITHIN A SPECIFIC VOCATIONAL FIELD, OR IN ANY OTHER COURSE WITH A VOCATIONAL OBJECTIVE, UNLESS THE ELIGIBLE VETERAN OR THE INSTITUTION OFFERING SUCH COURSE SUBMITS JUSTIFICATION SHOWING THAT AT LEAST ONE-HALF OF THE PERSONS WHO COMPLETED SUCH COURSE OVER THE THE PRECEDING TWO-YEAR PERIOD, AND WHO ARE NOT UNAVAILABLE FOR EMPLOYMENT, HAVE EMPLOYED IN THE OCCUPATIONAL CATEGORY FOR WHICH THE COURSE WAS DESIGNED TO PROVIDE TRAINING (BUT IN COMPUTING THE NUMBER OF PERSONS WHO COMPLETED SUCH COURSE OVER ANY SUCH TWO-YEAR PERIOD, THERE SHALL NOT BE INCLUDED THE NUMBER OF PERSONS WHO COMPLETED SUCH COURSE WITH ASSISTANCE UNDER THIS TITLE WHILE SERVING ON ACTIVE DUTY); OR";

(2) BY INSERTING IN SUBSECTION (A)(3) "(OR THE ADVERTISING FOR WHICH HE FINDS CONTAINS SIGNIFICANT AVOCATIONAL OR RECREATIONAL THEMES)" AFTER "CHARACTER"; AND

(3) BY AMENDING SUBSECTION (D) TO READ AS FOLLOWS:

"(D) THE ADMINISTRATOR SHALL NOT APPROVE THE ENROLLMENT OF ANY ELIGIBLE VETERAN, NOT ALREADY ENROLLED, IN ANY COURSE (OTHER THAN ONE OFFERED PURSUANT TO SUBCHAPTER V OR SUBCHAPTER VI OF THIS CHAPTER) //38 USC 1690, 1695.// WHICH DOES NOT LEAD TO A STANDARD COLLEGE DEGREE AND WHICH IS OFFERED BY A PROPRIETARY PROFIT OR PROPRIETARY NONPROFIT EDUCATIONAL INSTITUTION FOR ANY PERIOD DURING WHICH THE ADMINISTRATOR FINDS THAT MORE THAN 85 PER CENTUM OF THE STUDENTS ENROLLED IN THE COURSE ARE HAVING ALL OR PART OF THEIR TUITION, FEES, OR OTHER CHARGES PAID TO OR FOR THEM BY THE EDUCATIONAL INSTITUTION OR THE VETERANS' ADMINISTRATION UNDER THIS TITLE.".

SEC. 204. SECTION 1682 OF TITLE 38, UNITED STATES CODE, IS AMENDED BY ADDING AT THE END THEREOF THE FOLLOWING NEW SUBSECTION:

"(D)(1) NOTWITHSTANDING THE PROHIBITION IN SECTION 1671 OF THIS TITLE //38 USC 1671.// PROHIBITING ENROLLMENT OF AN ELIGIBLE VETERAN IN A PROGRAM OF EDUCATION IN WHICH SUCH VETERAN HAS 'ALREADY QUALIFIED,' A VETERAN SHALL BE ALLOWED UP TO SIX MONTHS OF EDUCATIONAL ASSISTANCE (OR THE EQUIVALENT THEREOF IN PART-TIME ASSISTANCE) FOR THE PURSUIT OF REFRESHER TRAINING TO PERMIT SUCH VETERAN TO UPDATE SUCH VETERAN'S KNOWLEDGE AND SKILLS AND TO BE INSTRUCTED IN THE TECHNOLOGICAL ADVANCES WHICH HAVE OCCURRED IN SUCH VETERAN'S FIELD OF EMPLOYMENT DURING AND SINCE THE PERIOD OF SUCH VETERAN'S ACTIVE MILITARY SERVICE.

"(2) A VETERAN PURSUING REFRESHER TRAINING UNDER THIS SUBSECTION SHALL BE PAID AN EDUCATIONAL ASSISTANCE ALLOWANCE BASED UPON THE RATE PRESCRIBED IN THE TABLE IN SUBSECTION (A)(1) OR IN SUBSECTION (C)(2) //ANTE, P. 1579.// OF THIS SECTION, WHICHEVER IS APPLICABLE.

"(3) THE EDUCATIONAL ASSISTANCE ALLOWANCE PAID UNDER THE AUTHORITY OF THIS SUBSECTION SHALL BE CHARGED AGAINST THE PERIOD OF ENTITLEMENT THE VETERAN HAS EARNED PURSUANT TO SECTION 1661(A) OF THIS TITLE.". //ANTE, P. 1581.//

SEC. 205. SECTION 1685 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY STRIKING OUT IN SUBSECTION (A) ALL OF THAT PORTION OF THE SECOND SENTENCE PRECEDING "DURING A SEMESTER" AND INSERTING IN LIEU THEREOF "SUCH WORK-STUDY ALLOWANCE SHALL BE PAID IN THE AMOUNT OF $625 IN RETURN FOR SUCH VETERAN-STUDENT'S AGREEMENT TO PERFORM SERVICES, DURING OR BETWEEN PERIODS OF ENROLLMENT, AGGREGATING TWO HUNDRED AND FIFTY HOURS";

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                 Page 5
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

(2) BY STRIKING OUT THE LAST SENTENCE OF SUBSECTION (A) AND INSERTING IN LIEU THEREOF THE FOLLOWING: "AN AGREEMENT MAY BE ENTERED INTO FOR THE PERFORMANCE OF SERVICES FOR PERIODS OF LESS THAN TWO HUNDRED AND FIFTY HOURS, IN WHICH CASE THE AMOUNT OF THE WORK-STUDY ALLOWANCE TO BE PAID SHALL BEAR THE SAME RATIO TO THE NUMBER OF HOURS OF WORK AGREED TO BE PERFORMED AS $625 BEARS TO TWO HUNDRED AND FIFTY HOURS. IN THE CASE, OF ANY AGREEMENT PROVIDING FOR THE PERFORMANCE OF SERVICES FOR ONE HUNDRED HOURS OR MORE, THE VETERAN STUDENT SHALL BE PAID $250 IN ADVANCE, AND IN THE CASE OF ANY AGREEMENT FOR THE PERFORMANCE OF SERVICES FOR LESS THAN ONE HUNDRED HOURS, THE AMOUNT OF THE ADVANCE PAYMENT SHALL BEAR THE SAME RATIO TO THE NUMBER OF HOURS OF WORK AGREED TO BE PERFORMED AS $625 BEARS TO TWO HUNDRED AND FIFTY HOURS."; AND

(3) BY STRIKING OUT IN SUBSECTION (C) "(NOT TO EXCEED EIGHT HUNDRED MAN-YEARS OF THEIR EQUIVALENT IN MAN-HOURS DURING ANY FISCAL YEAR)".

SEC. 206. SECTION 1692(B) OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY STRIKING OUT "$50" AND INSERTING IN LIEU THEREOF

"$60";

(2) BY STRIKING OUT "NINE MONTHS" AND INSERTING IN LIEU THEREOF "TWELVE MONTHS"; AND

(3) BY STRIKING OUT "$450" AND INSERTING IN LIEU THEREOF "$720".

SEC. 207. SECTION 1723 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY AMENDING SUBSECTION (A)(2) TO READ AS FOLLOWS:

"(2) ANY SALES OR SALES MANAGEMENT COURSE WHICH DOES NOT PROVIDE SPECIALIZED TRAINING WITHIN A SPECIFIC VOCATIONAL FIELD, OR IN ANY OTHER COURSE WITH A VOCATIONAL OBJECTIVE, UNLESS THE ELIGIBLE PERSON OR THE INSTITUTION OFFERING SUCH COURSE SUBMITS JUSTIFICATION SHOWING THAT AT LEAST ONE-HALF OF THE PERSONS WHO COMPLETED SUCH COURSE OVER THE PRECEDING TWO-YEAR PERIOD, AND WHO ARE NOT UNAVAILABLE FOR EMPLOYMENT, HAVE BEEN EMPLOYED IN THE OCCUPATIONAL CATEGORY FOR WHICH THE COURSE WAS DESIGNED TO PROVIDE TRAINING (BUT IN COMPUTING THE NUMBER OF PERSONS WHO COMPLETED SUCH COURSE OVER ANY SUCH TWO-YEAR PERIOD, THERE SHALL NOT BE INCLUDED THE NUMBER OF PERSONS WHO COMPLETED SUCH COURSE WITH ASSISTANCE UNDER THIS TITLE WHILE SERVING ON ACTIVE DUTY); OR";

(2) BY INSERTING IN SUBSECTION (A)(3) "(OR THE ADVERTISING FOR WHICH HE FINDS CONTAINS SIGNIFICANT AVOCATIONAL OR RECREATIONAL THEMES)" AFTER "CHARACTER";

(3) BY STRIKING OUT IN SUBSECTION (C) "ANY COURSE OF INSTITUTIONAL ON-FARM TRAINING,"; AND

(4) BY STRIKING OUT IN SUBSECTION (D) "TO BE PURSUED BELOW THE COLLEGE LEVEL" AND INSERTING IN LIEU THEREOF "NOT LEADING TO A STANDARD COLLEGE DEGREE".

SEC. 208. SECTION 1732 OF TITLE 38, UNITED STATES CODE, IS AMENDED BY REDESIGNATING SUBSECTION (C) AS SUBSECTION (D) AND BY INSERTING AFTER SUBSECTION (B) THE FOLLOWING NEW SUBSECTION:

"(C)(1) AN ELIGIBLE PERSON WHO IS ENROLLED IN AN EDUCATIONAL INSTITUTION FOR A 'FARM

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                      Page 6
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
(Publication page references are not available for this document.)

COOPERATIVE' PROGRAM CONSISTING OF INSTITUTIONAL AGRICULTURAL COURSES PRESCHEDULED TO FALL WITHIN FORTY-FOUR WEEKS OF ANY PERIOD OF TWELVE CONSECUTIVE MONTHS AND WHO PURSUES SUCH PROGRAM ON--,

"(A) A FULL-TIME BASIS (A MINIMUM OF TEN CLOCK HOURS PER WEEK OR FOUR HUNDRED AND FORTY CLOCK HOURS IN SUCH YEAR PRESCHEDULED TO PROVIDE NOT LESS THAN EIGHTY CLOCK HOURS IN ANY THREE-MONTH PERIOD)",

"(B) A THREE-QUARTER-TIME BASIS (A MINIMUM OF SEVEN CLOCK HOURS PER WEEK), OR

"(C) A HALF-TIME BASIS (A MINIMUM OF FIVE CLOCK HOURS PER WEEK),

SHALL BE ELIGIBLE TO RECEIVE AN EDUCATIONAL ASSISTANCE ALLOWANCE AT THE APPROPRIATE RATE PROVIDED IN PARAGRAPH (2) OF THIS SUBSECTION, IF SUCH ELIGIBLE PERSON IS CONCURRENTLY ENGAGED IN AGRICULTURAL EMPLOYMENT WHICH IS RELEVANT TO SUCH INSTITUTIONAL AGRICULTURAL EMPLOYMENT WHICH IS RELEVANT TO SUCH INSTITUTIONAL AGRICULTURAL COURSES AS DETERMINED UNDER STANDARDS PRESCRIBED BY THE ADMINISTRATOR. IN COMPUTING THE FOREGOING CLOCK HOUR REQUIREMENTS THERE SHALL BE INCLUDED THE TIME INVOLVED IN FIELD TRIPS AND INDIVIDUAL AND GROUP INSTRUCTION SPONSORED AND CONDUCTED BY THE EDUCATIONAL INSTITUTION THROUGH A DULY AUTTHORIZED INSTRUCTOR OF SUCH INSTITUTION IN WHICH THE PERSON IS ENROLLED.

"(2) THE MONTHLY EDUCATIONAL ASSISTANCE ALLOWANCE TO BE PAID ON BEHALF OF AN ELIGIBLE PERSON PURSUING A FARM COOPERATIVE PROGRAM UNDER THIS CHAPTER SHALL BE COMPUTED AT THE RATE PRESCRIBED IN SECTION 1682( C)(2) OF THIS TITLE // ANTE. P. 1579.// FOR FULL-TIME, THREE-QUARTER, OR HALF-TIME PURSUIT, AS APPROPRIATE, OF A FARM COOPERATIVE PROGRAM BY AN ELIGIBLE VETERAN WITH NO DEPENDENTS.".

SEC. 209. SECTION 1780(A)(2) //38 USC 1780.// IS AMENDED BY INSERTING "(OR CUSTOMARY VACATION PERIODS CONNECTED THEREWITH)" AFTER "HOLIDAYS".

SEC. 210. CHAPTER 36 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY AMENDING SECTION 1774(B) //38 USC 1780.// TO READ AS FOLLOWS:

"(B) THE ALLOWANCE FOR ADMINISTRATIVE EXPENSES INCURRED PURSUANT TO SUBSECTION (A) OF THIS SECTION SHALL BE PAID IN ACCORDANCE WITH THE FOLLOWING FORMULA:

AND

(2) BY AMENDING SECTION 1784(B) //38 USC 1784.// TO READ AS FOLLOWS:

"(B) THE ADMINISTRATOR MAY PAY TO ANY EDUCATIONAL INSTITUTION, OR TO ANY JOINT APPRENTICESHIP TRAINING COMMITTEE ACTING AS A TRAINING ESTABLISHMENT, FURNISHING EDUCATION OR TRAINING UNDER EITHER THIS CHAPTER OR CHAPTER 34 OR 35 OF THIS TITLE, //38 USC 1651, 1700.// A REPORTING FEE WHICH WILL BE IN LIEU OF ANY OTHER COMPENSATION OR REIMBURSEMENT FOR REPORTS OR CERTIFICATIONS WHICH SUCH EDUCATIONAL INSTITUTION OR JOINT APPRENTICESHIP TRAINING COMMITTEE IS REQUIRED TO SUBMIT TO HIM BY LAW OR REGULATION. SUCH REPORTING FEE SHALL BE COMPUTED FOR EACH CALENDAR YEAR BY MULTIPLYING $3 BY THE NUMBER OF ELIGIBLE VETERANS OR ELIGIBLE PERSONS ENROLLED UNDER THIS CHAPTER OR CHAPTER 34 OR 35 OF THIS TITLE, OR $4 IN THE CASE OF THOSE ELIGIBLE VETERANS AND ELIGIBLE PERSONS WHOSE EDUCATIONAL ASSISTANCE CHECKS ARE DIRECTED IN CARE OF EACH INSTITUTION FOR TEMPORARY CUSTODY AND DELIVERY AND ARE DELIVERED AT THE TIME OF REGISTRATION AS PROVIDED UNDER SECTION 1780(D)(5) OF THIS TITLE, //38 USC 1780.// ON OCTOBER 31 OF THAT YEAR; EXCEPT THAT THE ADMINISTRATOR MAY, WHERE IT IS ESTABLISHED BY SUCH EDUCATIONAL INSTITUTION OR

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                    Page 7
 **PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

JOINT APPRENTICESHIP TRAINING COMMITTEE THAT ELIGIBLE VETERAN PLUS ELIGIBLE PERSON ENROLLMENT ON SUCH DATE VARIES MORE THAN 15 PER CENTUM FROM THE PEAK ELIGIBLE VETERAN ENROLLMENT PLUS ELIGIBLE PERSON ENROLLMENT IN SUCH EDUCATIONAL INSTITUTION OR JOINT APPRENTICESHIP TRAINING COMMITTEE DURING SUCH CALENDAR YEAR, ESTABLISH SUCH OTHER DATE AS REPRESENTATIVE OF THE PEAK ENROLLMENT AS MAY BE JUSTIFIED FOR SUCH EDUCATIONAL INSTITUTION OR JOINT APPRENTICESHIP TRAINING COMMITTEE. THE REPORTING FEE SHALL BE PAID TO SUCH EDUCATIONAL INSTITUTION OR JOINT APPRENTICESHIP TRAINING COMMITTEE AS SOON AS FEASIBLE AFTER THE END OF THE CALENDAR YEAR FOR WHICH IT IS APPLICABLE.".

SEC. 211. SECTION 1788(A) OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY STRIKING OUT IN CLAUSE (1) "BELOW THE COLLEGE LEVEL" AND INSERTING IN LIEU THEREOF A COMMA AND "NOT LEADING TO A STANDARD COLLEGE DEGREE,";

(2) BY STRIKING OUT IN CLAUSE (2) "BELOW THE COLLEGE LEVEL" AND INSERTING IN LIEU THEREOF "NOT LEADING TO A STANDARD COLLEGE DEGREE"; AND

(3) BY STRIKING OUT IN CLAUSE (6) "BELOW THE COLLEGE LEVEL" INSERTING IN LIEU THEREOF "NOT LEASING TO A STANDARD COLLEGE DEGREE"; AND

(4) BY ADDING AT THE END OF SUCH SUBSECTION THE FOLLOWING:

"NOTWITHSTANDING THE PROVISIONS OF CLAUSE (1) OR (2) OF THIS SUBSECTION, AN EDUCATIONAL INSTITUTION OFFERING COURSES NOT LEADING TO A STANDARD COLLEGE DEGREE MAY MEASURE SUCH COURSES ON A QUARTER- OR SEMESTER-HOUR BASIS (WITH FULL TIME MEASURED ON THE SAME BASIS AS PROVIDED BY CLAUSE (4) OF THIS SUBSECTION); BUT (A) THE ACADEMIC PORTIONS OF SUCH COURSES MUST REQUIRE OUTSIDE PREPARATION AND BE MEASURED ON NOT LESS THAN ONE QUARTER OR ONE SEMESTER HOUR FOR EACH FIFTY MINUTES NET OF INSTRUCTION PER WEEK OR QUARTER OR SEMESTER; (B) THE LABORATORY PORTIONS OF SUCH COURSES MUST BE MEASURED ON NOT LESS THAN ONE QUARTER OR ONE SEMESTER HOUR FOR EACH TWO HOURS OF ATTENDANCE PER WEEK PER QUARTER OR SEMESTER; AND (C) THE SHOP PORTIONS OF SUCH COURSES MUST BE MEASURED ON NOT LESS THAN ONE QUARTER OR ONE SEMESTER HOUR FOR EACH THREE HOURS OF ATTENDANCE PER WEEK PER QUARTER OR SEMESTER. IN NO EVENT SHALL SUCH COURSE BE CONSIDERED A FULL-TIME COURSE WHEN LESS THAN TWENTY-TWO HOURS PER WEEK OF ATTENDANCE IS REQUIRED.".

SEC. 212. (A) CHAPTER 36 OF TITLE 38, UNITED STATES CODE, //38 USC 1770.// IS AMENDED BY INSERTING AT THE END THEREOF THE FOLLOWING NEW SECTION:

"1796. LIMITATION ON CERTAIN ADVERTISING, SALES, AND ENROLLMENT PRACTICES

"(A) THE ADMINISTRATOR SHALL NOT APPROVE THE ENROLLMENT OF AN ELIGIBLE VETERAN OR ELIGIBLE PERSON IN ANY COURSE OFFERED BY AN INSTITUTION WHICH UTILIZES ADVERTISING, SALES, OR ENROLLMENT PRACTICES OF ANY TYPE WHICH ARE ERRONEOUS, DECEPTIVE, OR MISLEADING EITHER BY ACTUAL STATEMENT, OMISSION, OR INTIMATION.

"(B) THE ADMINISTRATOR SHALL, PURSUANT TO SECTION 1794 OF THIS TITLE, //38 USC 1794.// ENTER INTO AN AGREEMENT WITH THE FEDERAL TRADE COMMISSION TO UTILIZE, WHERE APPROPRIATE, ITS SERVICES AND FACILITIES, CONSISTENT WITH ITS AVAILABLE RESOURCES, IN CARRYING OUT INVESTIGATIONS AND MAKING HIS DETERMINATIONS UNDER SUBSECTION (A) OF THIS SECTION. SUCH AGREEMENT SHALL PROVIDE THAT CASES ARISING UNDER SUBSECTION (A) OF THIS SECTION OR ANY SIMILAR MATTERS WITH RESPECT TO ANY OF THE REQUIREMENTS OF THIS CHAPTER OR CHAPTERS 34 AND 35 OF THIS TITLE //38 USC 1651, 1700.// SHALL BE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

REFERRED TO THE FEDERAL TRADE COMMISSION WHICH IN ITS DISCRETION WILL CONDUCT AN INVESTIGATION AND MAKE PRELIMINARY FINDINGS. THE FINDINGS AND RESULTS OF ANY SUCH INVESTIGATIONS SHALL BE REFERRED TO THE ADMINISTRATOR WHO SHALL TAKE APPROPRIATE ACTION IN SUCH CASES WITHIN NINETY DAYS AFTER SUCH REFERRAL.

"(C) NOT LATER THAN SIXTY DAYS AFTER THE END OF EACH FISCAL YEAR, THE ADMINSTRATOR SHALL REPORT TO CONGRESS ON THE NATURE AND DISPOSITION OF ALL CASES ARISING UNDER THIS SECTION.".

(B) THE TABLE OF SECTIONS AT THE BEGINNING OF CHAPTER 36 OF SUCH TITLE IS AMENDED BY INSERTING

"1796. LIMITATION ON CERTAIN ADVERSTISING, SALES, AND ENROLLMENT PRACTICES."
BELOW
"1795. LIMITATION ON PERIOD OF ASSISTANCE UNDER TWO OR MORE PROGRAMS.".

SEC. 213. (A) SUBCHAPTER II OF CHAPTER 3 OF TITLE 38, UNITED STATES CODE, //38 USC 210.// IS AMENDED BY ADDING AT THE END THEREOF THE FOLLOWING NEW SECTIONS:

"219. EVALUATION AND DATA COLLECTION

"(A) THE ADMINISTRATOR, PURSUANT TO GENERAL STANDARDS WHICH HE SHALL PRESCRIBE IN REGULATIONS, SHALL MEASURE AND EVALUATE ON A CONTINUING BASIS THE IMPACT OF ALL PROGRAMS AUTHORIZED UNDER THIS TITLE, IN ORDER TO DETERMINE THEIR EFFECTIVENESS IN ACHIEVING STATED GOALS IN GENERAL, AND IN ACHIEVING SUCH GOALS IN RELATION TO THEIR COST, THEIR IMPACT ON RELATED PROGRAMS, AND THEIR STRUCTURE AND MECHANISMS FOR DELIVERY OF SERVICES. SUCH INFORMATION AS THE AMINISTRATOR MAY DEEM NECESSARY FOR PURPOSES OF SUCH EVALUATIONS SHALL BE MADE AVAILABLE TO HIM, UPON REQUEST, BY ALL DEPARTMENTS, AGENCIES, AND INSTRUMENTALITIES OF THE EXECUTIVE BRANCH.

"(B) IN CARRYING OUT THIS SECTION, THE ADMINISTRATOR SHALL COLLECT, COLLATE, AND ANALYZE ON A CONTINUING BASIS FULL STATISTICAL DATA REGARDING PARTICIPATION (INCLUDING THE DURATION THEREOF), PROVISION OF SERVICES, CATEGORIES OF BENEFICIARIES, PLANNING AND CONSTRUCTION OF FACILITIES, ACQUISITION OF REAL PROPERTY, PROPOSED EXCESSING OF LAND, ACCRETION AND ATTRITION OF PERSONNEL, AND CATEGORIZED EXPENDITURES ATTRIBUTABLE THERETO, UNDER ALL PROGRAMS CARRIED OUT UNDER THIS TITLE.

"(C) THE ADMINISTRATOR SHALL MAKE AVAILABLE TO THE PUBLIC AND ON A REGULAR BASIS PROVIDE TO THE APPROPRIATE COMMITTEES OF THE CONGRESS COPIES OF ALL COMPLETED EVALUATIVE RESEARCH STUDIES AND SUMMARIES OF EVALUATIONS OF PROGRAM IMPACT AND EFFECTIVENESS CARRIED OUT, AND TABULATIONS AND ANALYSIS OF ALL DATE COLLECTED, UNDER THIS SECTION.

"220. COORIDNATION OF OTHER FEDERAL PROGRAMS AFFECTING VETERANS AND THEIR DEPENDENTS

"THE ADMINSTRATOR SHALL SEEK TO ACHIEVE THE MAXIMUM FEASIBLE EFFECTIVENESS, COORDINATION, AND INTERRELATIONSHIP OF SERVICES AMONG ALL PROGRAMS AND ACTIVITIES AFFECTING VETERANS AND THEIR DEPENDENTS CARRIED OUT BY AND UNDER ALL OTHER DEPARTMENTS, AGENCIES, AND INSTRUMENTALITIES OF THE EXECUTIVE BRANCH AND SHALL SEEK TO ACHIEVE THE MAXIMUM FEASIBLE COORDINATION OF SUCH PROGRAMS WITH PROGRAMS CARRIED OUT UNDER THIS TITLE.".
(B) THE TABLE OF SECTIONS AT THE BEGINNING OF CHAPTER 3 OF SUCH TITLE IS AMENDED BY

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

ADDING

"219. EVALUATION AND DATA COLLECTION.
"220. COORDINATION OF OTHER FEDERAL PROGRAMS AFFECTING VETERANS AND THEIR DEPENDENTS." BELOW
"218. STANDARDS OF CONDUCT AND ARRESTS FOR CRIMES AT HOSPITALS, DOMICILIARIES, CEMETERIES, AND OTHER VETERANS' ADMINISTRATION RESERVATIONS.".

SEC. 214. SUBCHAPTER IV OF CHAPTER 3 OF TITLE 38, UNITED CODE, IS AMENDED AS FOLLOWS:

(1) BY INSERTING IN SECTION 241 //38 USC 241.// "IN CARRYING OUT THE PURPOSES OF THIS SUBCHAPTER (INCLUDING THE PROVISION, TO THE MAXIMUM FEASIBLE EXTENT, OF SUCH SERVICES, IN AREAS WHERE A SIGNIFICANT NUMBER OF ELIGIBLE VETERANS AND ELIGIBLE DEPENDENTS SPEAK A LANGUAGE OTHER THAN ENGLISH AS THEIR PRINCIPAL LANGUAGE, IN THE PRINCIPAL LANGUAGE OF SUCH PERSONS)" AFTER "OUTREACH SERVICES";

(2) BY INSERTING IN CLAUSE (2) "TO ELIGIBLE VETERANS AND ELIGIBLE DEPENDENTS" AFTER "INFORMATION" THE FIRST TIME IT APPEARS;

(3) BY STRIKING OUT IN SECTION 242(B) //38 USC 242.// "MAY IMPLEMENT SUCH SPECIAL TELEPHONE SERVICE" AND INSERTING IN LIEU THEREOF "SHALL ESTABLISH AND CARRY OUT ALL POSSIBLE PROGRAMS AND SERVICES, INCLUDING SPECIAL TELEPHONE FACILITIES,";

(4) REDESIGNATING SECTIONS 243 AND 244 AND 245; //38 USC 243, 244.// RESPECTIVELY, AND ADDING THE FOLLOWING NEW SECTION AFTER SECTION 242:

"243. VETERANS' REPRESENTATIVES

"(A)(1) EXCEPT AS OTHERWISE PROVIDED IN PARAGRAPH (4) OF THIS SUBSECTION, THE ADMINISTRATOR SHALL ASSIGN, WITH APPROPRIATE CLERICAL/ SECRETARIAL SUPPORT, TO EACH EDUCATIONAL INSTITUTION (AS DEFINED IN SECTION 1652(C) EXCEPT FOR CORRESPONDENCE SCHOOLS) WHERE AT LEAST FIVE HUNDRED PERSONS ARE ENROLLED UNDER CHAPTERS 31, 34, 35, AND 36 OF THIS TITLE //38 USC 1652. 38 USC 1501, 1651, 1700, 1770.// SUCH NUMBER OF FULL-TIME VETERANS' REPRESENTATIVES AS WILL PROVIDE AT LEAST ONE SUCH VETERANS' REPRESENTATIVE PER EACH FIVE HUNDRED SUCH PERSONS SO ENROLLED AT EACH SUCH INSTITUTION; AND THE ADMINISTRATOR SHALL ALSO ASSIGN TO OTHER SUCH VETERANS' REPRESENTATIVES RESPONSIBILITY FOR CARRYING OUT THE FUNCTIONS SET FORTH IN PARAGRAPH (3) OF THIS SUBSECTION WITH RESPECT TO GROUPS OF INSTITUTIONS WITH LESS THAN FIVE HUNDRED SUCH PERSONS SO ENROLLED, ON THE BASIS OF PROPORTION OF SUCH VETERANS' REPRESENTATIVES' TIME TO SUCH PERSONS SO ENROLLED AS HE DEEMS APPROPRIATE TO BE ADEQUATE TO PERFORM SUCH FUNCTIONS AT SUCH INSTITUTIONS.

"(2) IN SELECTING AND APPOINTING VETERANS' REPRESENTATIVES UNDER THIS SUBSECTION, PREFERENCE SHALL BE GIVEN TO VETERANS OF THE VIETNAM ERA WITH EXPERIENCE IN VETERANS AFFAIRS' COUNSELING, OUTREACH, AND OTHER RELATED VETERANS' SERVICES.

"(3) THE FUNCTIONS OF SUCH VETERANS' REPRESENTATIVES SHALL BE TO--,

"(A) ANSWER ALL INQUIRIES RELATED TO VETERANS' ADMINISTRATION EDUCATIONAL ASSISTANCE AND OTHER BENEFITS, AND TAKE ALL NECESSARY ACTION TO RESOLVE SUCH INQUIRIES EXPEDITIOUSLY, ESPECIALLY THOSE RELATING TO PAYMENTS OF EDUCATIONAL ASSISTANCE BENEFITS;

"(B) ASSURE CORRECTNESS AND PROPER HANDLING OF APPLICATIONS, COMPLETION OF CERTIFICATIONS OF ATTENDANCE, AND SUBMISSION OF ALL NECESSARY INFORMATION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                          Page 10
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

(INCLUDING CHANGES IN STATUS OR PROGRAM AFFECTING PAYMENTS) IN SUPPORT OF BENEFIT CLAIMS SUBMITTED;

"(C) MAINTAIN ACTIVE LIAISON, COMMUNICATION, AND COOPERATION WITH THE OFFICIALS OF THE EDUCATIONAL INSTITUTION TO WHICH ASSIGNED, IN ORDER TO ALERT VETERANS TO CHANGES IN LAW AND VETERANS' ADMINISTRATION POLICIES OR PROCEDURES;

"(D) SUPERVISE AND EXPEDITIOUSLY RESOLVE ALL DIFFICULTIES RELATING TO THE DELIVERY OF ADVANCE EDUCATIONAL ASSISTANCE PAYMENTS AUTHORIZED UNDER THIS TITLE;

"(E) COORDINATE VETERANS' ADMINISTRATION MATTERS WITH, AND PROVIDE APPROPRIATE BRIEFINGS TO, ALL ON-CAMPUS VETERANS' GROUPS, WORKING PARTICULARLY CLOSELY WITH VETERANS' COORDINATORS AT EDUCATIONAL INSTITUTIONS RECEIVING VETERANS' COST-OF-INSTRUCTION PAYMENTS UNDER SECTION 420 OF THE HIGHER EDUCATION ACT OF 1965, AS AMENDED //20 USC 1070E-1.// (HEREINAFTER REFERRED TO AS 'V.C. I. INSTITUTIONS');

"(F) PROVIDE NECESSARY GUIDANCE AND SUPPORT TO VETERAN-STUDENT SERVICES PERSONNEL ASSIGNED TO THE CAMPUS UNDER SECTION 1685 OF THIS TITLE;

"(G) WHERE SUCH FUNCTIONS ARE NOT BEING ADEQUATELY CARRIED OUT BY EXISTING PROGRAMS AT SUCH INSTITUTIONS (I) PROVIDE APPROPRIATE MOTIVATIONAL AND OTHER COUNSELING TO VETERANS (INFORMING THEM OF ALL AVAILABLE BENEFITS AND SERVICES, AS PROVIDED FOR UNDER SECTION 241 OF THIS TITLE) //38 USC 241.// AND (II) CARRY OUT OUTREACH ACTIVITIES UNDER THIS SUBCHAPTER; AND

"(H) CARRY OUT SUCH OTHER ACTIVITIES AS MAY BE ASSIGNED BY THE DIRECTOR OF THE VETERANS' ADMINISTRATION REGIONAL OFFICE, ESTABLISHED UNDER SECTION 230 OF THIS TITLE. //38 USC 230.//

"(4) BASED ON THE EXTENT TO WHICH THE FUNCTIONS SET FORTH IN PARAGRAPH (3) OF THIS SUBSECTION ARE BEING ADEQUATELY CARRIED OUT AT A PARTICULAR EDUCATIONAL INSTITUTION OR IN CONSIDERATION OF OTHER FACTORS INDICATING THE INAPPROPRIATENESS OF ASSIGNMENT OF VETERANS' REPRESENTATIVES TO A PARTICULAR EDUCATIONAL INSTITUTION, THE DIRECTOR OF THE APPROPRIATE VETERANS' ADMINISTRATION REGIONAL OFFICE SHALL, NOTWITHSTANDING THE FORMULA SET FORTH IN PARAGRAPH (1) OF THIS SUBSECTION, EITHER REALLOCATE SUCH VETERANS' REPRESENTATIVES TO OTHER EDUCATIONAL INSTITUTIONS IN SUCH REGION WHERE HE DETERMINES THAT SUCH ADDITIONAL VETERANS' REPRESENTATIVES ARE NECESSARY, OR, WITH THE APPROVAL OF THE CHIEF BENEFITS OFFICER OF THE VETERANS' ADMINISTRATION, ASSIGN SUCH VETERANS' REPRESENTATIVES TO CARRY OUT SUCH FUNCTIONS OR RELATED ACTIVITIES AT THE REGIONAL OFFICE IN QUESTION, WITH SPECIAL RESPONSIBILITY FOR ONE OR MORE THAN ONE PARTICULAR EDUCATIONAL INSTITUTION.

"(5) THE FUNCTIONS OF A VETERANS' REPRESENTATIVE ASSIGNED UNDER THIS SUBSECTION SHALL BE CARRIED OUT IN SUCH A WAY AS TO COMPLEMENT AND NOT INTERFERE WITH THE STATUTORY RESPONSIBILITIES AND DUTIES OF PERSONS CARRYING OUT VETERANS AFFAIRS' FUNCTIONS AT V.C.I. INSTITUTIONS.

"(B) THE ADMINISTRATOR SHALL ESTABLISH RULES AND PROCEDURES TO GUIDE VETERANS' REPRESENTATIVES IN CARRYING OUT THEIR FUNCTIONS UNDER THIS SECTION. SUCH RULES AND PROCEDURES SHALL CONTAIN PROVISIONS DIRECTED ESPECIALLY TO ASSURING THAT THE ACTIVITIES OF VETERANS' REPRESENTATIVES CARRIED OUT UNDER THIS SECTION COMPLEMENT, AND DO NOT INTERFERE WITH, THE ESTABLISHED RESPONSIBILITIES OF REPRESENTATIVES RECOGNIZED BY THE ADMINISTRATOR UNDER SECTION 3402 OF THIS TITLE.";

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                              Page 11
 **PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

//38 USC 3402.// AND

(5) AMENDING SECTION 244 //ANTE, P. 1587.// (AS REDESIGNATED BY CLAUSE (4) OF THIS SUBSECTION) OF SUCH TITLE BY--,

(A) STRIKING OUT "MAY" AND INSERTING IN LIEU THEREOF "SHALL"; AND

(B) INSERTING "AND PROVIDE FOR" AFTER "CONDUCT" IN PARAGRAPH (5).

(B) THE TABLE OF SECTIONS AT THE BEGINNING OF SUCH CHAPTER IS AMENDED BY STRIKING OUT

"243. UTILIZATION OF OTHER AGENCIES.
"244. REPORT TO CONGRESS." AND INSERTING IN LIEU THEREOF
"243. VETERANS' REPRESENTATIVES.
"244. UTILIZATION OF OTHER AGENCIES.
"245. REPORT TO CONGRESS.".
TITLE III--VETERANS AND DEPENDENTS EDUCATION LOAN PROGRAM

SEC. 301. (A) CHAPTER 36 OF TITLE 38, UNITED STATES CODE, //38 USC 1770.// IS AMENDED BY ADDING AT THE END THEREOF THE FOLLOWING NEW SUBCHAPTER:

"SUBCHAPTER III--EDUCATION LOANS TO ELIGIBLE VETERANS AND ELIGIBLE PERSONS

"1798. ELIGIBILITY FOR LOANS; AMOUNT AND CONDITIONS OF LOANS; INTEREST RATE ON LOANS

"(A) EACH ELIGIBLE VETERAN AND ELIGIBLE PERSON SHALL BE ENTITLED TO A LOAN UNDER THIS SUBCHAPTER IN AN AMOUNT DETERMINED UNDER, AND SUBJECT TO THE CONDITIONS SPECIFIED IN, SUBSECTION (B)(1) OF THIS SECTION IF THE VETERAN OR PERSON SATISFIES THE REQUIREMENTS SET FORTH IN SUBSECTION (C) OF THIS SECTION.

"(B)(1) SUBJECT TO PARAGRAPH (3) OF THIS SUBSECTION, THE AMOUNT OF THE LOAN TO WHICH AN ELIGIBLE VETERAN OR ELIGBLE PERSON SHALL BE ENTITLED UNDER THIS SUBCHAPTER FOR ANY ACADEMIC YEAR SHALL BE EQUAL TO THE AMOUNT NEEDED BY SUCH VETERAN OR PERSON TO PURSUE A PROGRAM OF EDUCATION AT THE INSTITUTION AT WHICH HE IS ENROLLED, AS DETERMINED UNDER PARAGRAPH (2) OF THIS SUBSECTION.

"(2)(A) THE AMOUNT NEEDED BY A VETERAN OR PERSON TO PURSUE A PROGRAM OF EDUCATION AT AN INSTITUTION FOR ANY ACADEMINC YEAR SHALL BE DETERMINED BY SUBSTRACTING (I) THE TOTAL AMOUNT OF FINANCIAL RESOURCES (AS DEFINED IN SUBPARAGRAPH (B) OF THIS PARAGRAPH) AVAILABLE TO THE VETERAN OR PERSON WHICH MAY BE REASONABLY EXPECTED TO BE EXPENDED BY SUCH VETERAN OR PERSON FOR EDUCATIONAL PURPOSES IN ANY YEAR FROM (II) THE ACTUAL COST OF ATTENDANCE (AS DEFINED IN SUBPARAGRAPH (C) OF THIS PARAGRAPH) AT THE INSTITUTION IN WHICH SUCH VETERAN OR PERSON IS ENROLLED.

"(B) THE TERM 'TOTAL AMOUNT OF FINANCIAL RESOURCES' OF ANY VETERAN OR PERSON FOR ANY YEAR MEANS THE TOTAL OF THE FOLLOWING:

"(I) THE ANNUAL ADJUSTED EFFECTIVE INCOME OF THE VETERAN OR PERSON LESS FEDERAL INCOME TAX PAID OR PAYABLE BY SUCH VETERAN OR PERSON WITH RESPECT TO SUCH INCOME.

"(II) THE AMOUNT OF CASH ASSETS OF THE VETERAN OR PERSON.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                          Page 12
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

"(III) THE AMOUNT OF FINANCIAL ASSISTANCE RECEIVED BY THE VETERAN OR PERSON UNDER THE PROVISIONS OF TITLE IV OF THE HIGHER EDUCATION ACT OF 1965, AS AMENDED. //20 USC 1061.//

"(IV) EDUCATIONAL ASSISTANCE RECEIVED BY THE VETERAN OR PERSON UNDER THIS TITLE OTHER THAN UNDER THIS SUBCHAPTER.

"(V) FINANCIAL ASSISTANCE RECEIVED BY THE VETERAN OR PERSON UNDER ANY SCHOLARSHIP OR GRANT PROGRAM OTHER THAN THOSE SPECIFIED IN CLAUSES (III) AND (IV).

"(C) THE TERM 'ACTUAL COST OF ATTENDANCE' MEANS, SUBJECT TO SUCH REGULATIONS AS THE ADMINISTRATOR MAY PROVIDE, THE ACTUAL PER-STUDENT CHARGES FOR TUITION, FEES ROOM AND BOARD (OR EXPENSES RELATED TO REASONABLE COMMUTING), BOOKS, AND AN ALLOWANCE FOR SUCH OTHER EXPENSES AS THE ADMINISTRATOR DETERMINES BY REGULATION TO BE REASONABLY RELATED TO ATTENDANCE AT THE INSTITUTION AT WHICH THE VETERAN OR PERSON IS ENROLLED.

"(3) THE AGGREGATE OF THE AMOUNTS ANY VETERAN OR PERSON MAY BORROW UNDER THIS SUBCHAPTER MAY NOT EXCEED $270 MULTIPLIED BY THE NUMBER OF MONTHS SUCH VETERAN OR PERSON IS ENTITLED TO RECEIVE EDUCATIONAL ASSISTANCE UNDER SECTION 1661 OR SUBCHAPTER II OF CHAPTER 35, RESPECTIVELY, OF THIS TITLE, //38 USC 1661, 1710.// BUT NOT IN EXCESS OF $600 IN ANY ONE REGULAR ACADEMIC YEAR.

"(C) AN ELIGIBLE VETERAN OR PERSON SHALL BE ENTITLED TO A LOAN UNDER THIS SUBCHAPTER IF SUCH VETERAN OR PERSON--,

"(1) IS IN ATTENDANCE AT AN EDUCATIONAL INSTITUTION ON AT LEAST A HALF-TIME BASIS AND (A) IS ENROLLED IN A COURSE LEADING TO A STANDARD COLLEGE DEGREE, OR (B) IS ENROLLED IN A COURSE, THE COMPLETION OF WHICH REQUIRES SIX MONTHS OR LONGER, LEADING TO AN IDENTIFIED AND PREDETERMINED PROFESSIONAL OR VOCATIONAL OBJECTIVE;

"(2) HAS SOUGHT AND IS UNABLE TO OBTAIN A LOAN, IN THE FULL AMOUNT NEEDED BY SUCH VETERAN OR PERSON, AS DETERMINED UNDER SUBSECTION (B) OF THIS SECTION, UNDER A STUDENT LOAN PROGRAM INSURED PURSUANT TO THE PROVISIONS OF PART B OF TITLE IV OF THE HIGHER EDUCATION ACT OF 1965, AS AMENDED, //20 USC 1071.// OR ANY SUCCESSOR AUTHORITY; AND

"(3) ENTERS INTO AN AGREEMENT WITH THE ADMINISTRATOR MEETING THE REQUIREMENTS OF SUBSECTION (D) OF THIS SECTION.

NO LOAN SHALL BE MADE UNDER THIS SUBCHAPTER TO AN ELIGIBLE VETERAN OR PERSON PURSUING A PROGRAM OF CORRESPONDENCE, FLIGHT, APPRENTICE OR OTHER ON-JOB, OR PREP TRAINING.

"(D) ANY AGREEMENT BETWEEN THE ADMINISTRATOR AND A VETERAN OR PERSON UNDER THIS SUBCHAPTER--,

"(1) SHALL INCLUDE A NOTE OR OTHER WRITTEN OBLIGATION WHICH PROVIDES FOR REPAYMENT TO THE ADMINISTRATOR OF THE PRINCIPAL AMOUNT OF, AND PAYMENT OF INTEREST ON, THE LOAN IN INSTALLMENTS OVER A PERIOD BEGINNING NINE MONTHS AFTER THE DATE ON WHICH THE BORROWER CEASES TO BE AT LEAST A HALF-TIME STUDENT AND ENDING TEN YEARS AND NINE MONTHS AFTER SUCH DATE;

"(2) SHALL INCLUDE PROVISION FOR ACCELERATION OF REPAYMENT OF ALL OR ANY PART OF

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                Page 13
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

THE LOAN, WITHOUT PENALTY, AT THE OPTION OF THE BORROWER;

"(3) SHALL PROVIDE THAT THE LOAN SHALL BEAR INTEREST, ON THE UNPAID BALANCE OF THE LOAN, AT A RATE PRESCRIBED BY THE ADMINISTRATOR, WITH THE CONCURRENCE OF THE SECRETARY OF THE TREASURY, BUT AT A RATE NOT LESS THAN A RATE DETERMINED BY THE SECRETARY, TAKING INTO CONSIDERATION THE CURRENT AVERAGE MARKET YIELD ON OUTSTANDING MARKETABLE OBLIGATIONS OF THE UNITED STATES WITH REMAINING PERIODS TO MATURITY COMPARABLE TO THE MATURITY OF LOANS MADE UNDER THIS SUBCHAPTER, EXCEPT THAT NO INTEREST SHALL ACCRUE PRIOR TO THE BEGINNING DATE OF REPAYMENT; AND

"(4) SHALL PROVIDE THAT THE LOAN SHALL BE MADE WITHOUT SECURITY AND WITHOUT ENDORSEMENT.

"(E)(1) EXCEPT AS PROVIDED IN PARAGRAPH (2) OF THIS SUBSECTION, WHENEVER THE ADMINISTRATOR DETERMINES THAT A DEFAULT HAS OCCURRED ON ANY LOAN MADE UNDER THIS SUBCHAPTER, HE SHALL DECLARE AN OVERPAYMENT, AND SUCH OVERPAYMENT SHALL BE RECOVERED FROM THE VETERAN OR PERSON CONCERNED IN THE SAME MANNER AS ANY OTHER DEBT DUE THE UNITED STATES.

"(2) IF A VETERAN OR PERSON WHO HAS RECEIVED A LOAN UNDER THIS SECTION DIES OR BECOMES PERMANENTLY AND TOTALLY DISABLED, THEN THE ADMINISTRATOR SHALL DISCHARGE THE VETERAN'S OR PERSON'S LIABILITY ON SUCH LOAN BY REPAYING THE AMOUNT OWED ON SUCH LOAN.

"(3) THE ADMINISTRATOR SHALL SUBMIT TO THE COMMITTEES ON VETERANS' AFFAIRS OF THE SENATE AND THE HOUSE OF REPRESENTATIVES, NOT LATER THAN ONE YEAR AFTER THE DATE OF ENACTMENT OF THE VIETNAM ERA VETERANS' READJUSTMENT ASSISTANCE ACT OF 1974 //ANTE, P. 1578.// AND ANNUALLY THEREAFTER, A SEPARATE REPORT SPECIFYING THE DEFAULT EXPERIENCE AND DEFAULT RATE AT EACH EDUCATIONAL INSTITUTION ALONG WITH A COMPARISON OF THE COLLECTIVE DEFAULT EXPERIENCE AND DEFAULT RATE AT ALL SUCH INSTITUTIONS.

## "1799. REVOLVING FUND; INSURANCE

"(A) THERE IS HEREBY ESTABLISHED IN THE TREASURY OF THE UNITED STATES A REVOLVING FUND TO BE KNOWN AS THE 'VETERANS' ADMINISTRATION EDUCATION LOAN FUND' (HEREINAFTER IN THIS SECTION REFERRED TO AS THE 'FUND').

"(B) THE FUND SHALL BE AVAILABLE TO THE ADMINISTRATOR, WITHOUT FISCAL YEAR LIMITATION, FOR THE MAKING OF LOANS UNDER THIS SUBCHAPTER.

"(C) THERE SHALL BE DEPOSITED IN THE FUND (1) BY TRANSFER FROM CURRENT AND FUTURE APPROPRIATIONS FOR READJUSTMENT BENEFITS SUCH AMOUNTS AS MAY BE NECESSARY TO ESTABLISH AND SUPPLEMENT THE FUND IN ORDER TO MEET THE REQUIREMENTS OF THE FUND, AND (2) ALL CLLECTIONS OF FEES AND PRINCIPAL AND INTEREST (INCLUDING OVERPAYMENTS DECLARED UNDER SECTION 1798(E) OF THIS TITLE) //ANTE, P. 1589.// ON LOANS MADE UNDER THIS SUBCHAPTER.

"(D) THE ADMINISTRATOR SHALL DETERMINE ANNUALLY WHETHER THERE HAS DEVELOPED IN THE FUND A SURPLUS WHICH, IN HIS JUDGMENT, IS MORE THAN NECESSARY TO MEET THE NEEDS OF THE FUND, AND SUCH SURPLUS, IF ANY, SHALL BE DEEMED TO HAVE BEEN APPROPRIATED FOR READJUSTMENT BENEFITS.

"(E) A FEE SHALL BE COLLECTED FROM EACH VETERAN OR PERSON OBTAINING A LOAN MADE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                                                    Page 14
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

UNDER THIS SUBCHAPTER FOR THE PURPOSE OF INSURING AGAINST DEFAULTS ON LOANS MADE UNDER THIS SUBCHAPTER; AND NO LOAN SHALL BE MADE UNDER THIS SUBCHAPTER UNITL THE FEE PAYABLE WITH RESPECT TO SUCH LOAN HAS BEEN COLLECTED AND REMITTED TO THE ADMINISTRATOR. THE AMOUNT OF THE FEE SHALL BE ESTABLISHED FROM TIME TO TIME BY THE ADMINISTRATOR, BUT SHALL IN NO EVENT EXCEED 3 PER CENTUM OF THE TOTAL LOAN AMOUNT. THE AMOUNT OF THE FEE MAY BED INCLUDED IN THE LOAN TO THE VETERAN OR PERSON AND PAID FROM THE PROCEEDS THEREOF.".

(B) THE TABLE OF SECTIONS AT THE BEGINNING OF SUCH CHAPTER IS AMENDED BY ADDING AT THE END THEREOF

"SUBCHAPTER III--EDUCATION LOANS TO ELIGIBLE VETERANS AND ELIGIBLE PERSONS
"1798. ELIGIBILITY FOR LOANS; AMOUNT AND CONDITIONS OF LOANS; INTEREST RATE ON LOANS.
"1799. REVOLVING FUND; INSURANCE.".

SEC. 302. (A) SUBCHAPTER IV OF CHAPTER 34 OF TITLE 38, UNITED STATES CODE, //38 USC 1681.// IS AMENDED BY ADDING AT THE END THEREOF THE FOLLOWING NEW SECTION:

"1686. EDUCATION LOANS

"ANY ELIGIBLE VETERANS SHALL BE ENTITLED TO AN EDUCATION LOAN (IF THE PROGRAM OF EDUCATION IS PURSUED IN A STATE) IN SUCH AMOUNT AND ON SUCH TERMS AND CONDITIONS AS PROVIDED IN SECTIONS 1798 AND 1799 OF THIS TITLE.". //ANTE, P. 1589;//

(B) THE TABLE OF SECTIONS AT THE BEGINNING OF SUCH CHAPTER IS AMENDED BY INSERTING

"1686. EDUCATION LOANS." BELOW
"1685. VETERAN-STUDENT SERVICES.".

SEC. 303. (A) SUBCHAPTER IV CHAPTER 35 OF TITLE 38, UNITED STATES CODE, //38 USC 1731.// IS AMENDED BY ADDING AT THE END THEREOF THE FOLLOWING NEW SECTION:

"1737. EDUCATION LOANS

"ANY ELIGIBLE PERSON SHALL BE ENTITLED TO AN EDUCATION LOAN (IF THE PROGRAM OF EDUCATION IS PURSUED IN A STATE) IN SUCH AMOUNT AND ON SUCH TERMS AND CONDITIONS AS PROVIDED IN SECTIONS 1798 AND 1799 OF THIS TITLE.". //ANTE, PP. 1589, 1591.//

(B) THE TABLE OF SECTIONS AT THE BEGINNING OF SUCH CHAPTER IS AMENDED BY INSERTING

"1737. EDUCATION LOANS." BELOW
"1736. SPECIALIZED VOCATIONAL TRAINING COURSES."
TITLE IV--VETERANS, WIVES, AND WIDOWS EMPLOYMENT ASSISTANCE AND PREFERENCE AND VETERANS' REEMPLOYMENT RIGHTS

SEC. 401. CHAPTER 41 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(A) SECTION 2001 IS AMENDED BY REDESIGNATING PARAGRAPH (2) AS PARAGRAPH (3) AND ADDING AFTER PARAGRAPH (1) A NEW PARAGRAPH (2) AS FOLLOWS:

"(2) THE TERM 'ELIGIBLE PERSON' MEANS--,

"(A) THE SPOUSE OF ANY PERSON WHO DIED OF A SERVICE-CONNECTED DISABILITY,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"(B) THE SPOUSE OF ANY MEMBER OF THE ARMED FORCES SERVING ON ACTIVE DUTY WHO, AT THE TIME OF APPLICATION FOR ASSISTANCE UNDER THIS CHAPTER, IS LISTED, PURSUANT TO SECTION 556 OF TITLE 37 AND REGULATIONS ISSUED THEREUNDER, BY THE SECRETARY CONCERNED IN ONE OR MORE OF THE FOLLOWING CATEGORIES AND HAS BEEN SO LISTED FOR A TOTAL OF MORE THAN NINETY DAYS: (I) MISSING IN ACTION, (II) CAPTURED IN LINE OF DUTY BY A HOSTILE FORCE, OR (III) FORCIBLY DETAINED OR INTERNED IN LINE OF DUTY BY A FOREIGN GOVERNMENT OR POWER, OR

"(C) THE SPOUSE OF ANY PERSON WHO HAS A TOTAL DISABILITY PERMANENT IN NATURE RESULTING FROM A SERVICE-CONNECTED DISABILITY OR THE SPOUSE OF A VETERAN WHO DIED WHILE A DISABILITY SO EVALUATED WAS IN EXISTENCE.".

(B) SECTION 2002 //38 USC 2002.// IS AMENDED BY (1) INSERTING "AND ELIGIBLE PERSONS" AFTER "ELIGIBLE VETERANS" AND (2) INSERTING "AND PERSONS" AFTER "SUCH VETERANS".

(C) SECTION 2003 //38 USC 2003.// IS AMENDED BY--,

(1) STRIKING OUT IN THE FIRST SENTENCE "250,000 VETERANS" AND INSERTING IN LIEU THEREOF "250,000 VETERANS AND ELIGIBLE PERSONS";

(2) STRIKING OUT IN THE FOURTH SENTENCE "VETERANS'" AND INSERTING IN LIEU THEREOF "VETERANS' AND ELIGIBLE PERSONS'";

(3) INSERTING IN CLAUSES (1), (2), (4), (5), AND (6) OF THE FIFTH SENTENCE "AND ELIGIBLE PERSON" AFTER "ELIGIBLE VETERANS" EACH TIME THE LATTER TERM APPEARS IN SUCH CLAUSES;

(4) INSERTING IN CLAUSE (3) OF THE FIFTH SENTENCE "OR AN ELIGIBLE PERSON'S" AFTER "ELIGIBLE VETERAN'S"; AND

(5) INSERTING IN CLAUSE (4) OF THE FIFTH SENTENCE "AND PERSONS" AFTER "SUCH VETERANS".

(D) SECTION 2005 //38 USC 2005.// IS AMENDED BY INSERTING "AND ELIGIBLE PERSONS" AFTER "ELIGIBLE VETERANS".

(E) THE LAST SENTENCE OF SECTION 2006(A) IS AMENDED BY STRIKING OUT "VETERANS" AND INSERTING IN LIEU THEREOF "ELIGIBLE VETERANS AND ELIGIBLE PERSONS".

(F) SECTION 2007 //38 USC 2007.// IS AMENDED BY--,

(1) INSERTING IN SUBSECTION (A)(1) "AND EACH ELIGIBLE PERSON" AFTER "ACTIVE DUTY,";

(2) REDESIGNATING SUBSECTION (B) AS SUBSECTION (C) AND INSERTING THE FOLLOWING NEW SUBSECTION (B):

"(B) THE SECRETARY OF LABOR SHALL ESTABLISH DEFINITIVE PERFORMANCE STANDARDS FOR DETERMINING COMPLIANCE BY THE STATE PUBLIC EMPLOYMENT SERVICE AGENCIES WITH THE PROVISIONS OF THIS CHAPTER AND CHAPTER 42 OF THIS TITLE //38 USC 2011.// A FULL REPORT AS TO THE EXTENT AND REASONS FOR ANY NONCOMPLIANCE BY ANY SUCH STATE AGENCY DURING ANY FISCAL YEAR, TOGETHER WITH THE AGENCY'S PLAN FOR CORRECTIVE ACTION DURING THE SUCCEEDING YEAR, SHALL BE INCLUDED IN THE ANNUAL REPORT OF THE SECRETARY OF LABOR REQUIRED BY SUBSECTION (C) OF THIS SECTION."; AND

(3) STRIKING OUT IN THE SECOND SENTENCE OF SUBSECTION (C) (AS REDESIGNATED BY

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CLAUSE (2) OF THIS SUBSECTION) "AND OTHER ELIGIBLE VETERANS" AND INSERTING IN LIEU THEREOF "OTHER ELIGIBLE VETERANS, AND ELIGIBLE PERSONS".

SEC. 402. CHAPTER 42 OF TITLE 38, UNITED STATES CODE, IS AMENDED AS FOLLOWS:

(1) BY INSERTING IN THE FIRST SENTENCE OF SECTION 2012(A) //38 USC 2012.// "IN THE AMOUNT OF $10,000 OR MORE" AFTER "CONTRACT" WHERE IT FIRST APPEARS, BY STRIKING OUT, "IN EMPLOYING PERSON TO CARRY OUT SUCH CONTRACT," IN SUCH SENTENCE, AND BY STRIKING OUT "GIVE SPECIAL EMPHASIS TO THE EMPLOYMENT OF" AND INSERTING IN LIEU THEREOF "TAKE AFFIRMATIVE ACTION TO EMPLOY AND ADVANCE IN EMPLOYMENT" IN SUCH SENTENCE;

(2) BY STRIKING OUT IN THE THIRD SENTENCE OF SECTION 2012(A) "THE" AND INSERTING IN LIEU THEREOF "IN ADDITION TO REQUIRING AFFIRMATIVE ACTION TO EMPLOY SUCH VETERANS UNDER SUCH CONTRACTS AND SUBCONTRACTS AND IN ORDER TO PROMOTE THE IMPLEMENTATION OF SUCH REQUIREMENT, THE"; AND

(3) BY STRIKING OUT IN THE FIRST SENTENCE OF SECTION 2012(B) "GIVING SPECIAL EMPHASIS IN EMPLOYMENT TO" AND INSERTING IN LIEU THEREOF "THE EMPLOYMENT OF".

SEC. 403. (A) CHAPTER 42 OF TITLE 38, UNITED STATES CODE, IS AMENDED BY ADDING AT THE END THEREOF THE FOLLOWING NEW SECTION:

### "2014. EMPLOYMENT WITHIN THE FEDERAL GOVERNMENT

"(A) IT IS THE POLICY OF THE UNITED STATES AND THE PURPOSE OF THIS SECTION TO PROMOTE THE MAXIMUM OF EMPLOYMENT AND JOB ADVANCEMENT OPPORTUNITIES WITHIN THE FEDERAL GOVERNMENT FOR QUALIFIED DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA.

"(B) TO FURTHER THIS POLICY, VETERANS OF THE VIETNAM ERA SHALL BE ELIGIBLE, IN ACCORDANCE WITH REGULATIONS WHICH THE CIVIL SERVICE COMMISSION SHALL PRESCRIBE, FOR VETERANS READJUSTMENT APPOINTMENTS UP TO AND INCLUDING THE LEVEL GS-5, AS SPECIFIED IN SUBCHAPTER II OF CHAPTER 51 OF TITLE 5, //5 USC 5332 AND NOTE.// AND SUBSEQUENT CAREER-CONDITIONAL APPOINTMENTS, UNDER THE TERMS AND CONDITIONS SPECIFIED IN EXECUTIVE ORDER NUMBERED 11521 (MARCH 26, 1970), //5 USC 3302 NOTE.// EXCEPT THAT IN APPLYING THE ONE-YEAR PERIOD OF ELIGIBILITY SPECIFIED IN SECTION 2(A) OF SUCH ORDER TO A VETERAN OR DISABLED VETERAN WHO ENROLLS, WITHIN ONE YEAR FOLLOWING SEPARATION FROM THE ARMED FORCES OR FOLLOWING RELEASE FROM HOSPITALIZATION OR TREATMENT IMMEDIATELY FOLLOWING SEPARATION FROM THE ARMED FORCES, IN A PROGRAM OF EDUCATION (AS DEFINED IN SECTION 1652 OF THIS TITLE) //38 USC 1662, ANTE, P 1581.// ON MORE THAN A HALF-TIME BASIS (AS DEFINED IN SECTION 1788 OF THIS TITLE), //38 USC 1788.// THE TIME SPENT IN SUCH PROGRAM OF EDUCATION (INCLUDING CUSTOMARY PERIODS OF VACATION AND PERMISSIBLE ABSENCES) SHALL NOT BE COUNTED. THE ELIGIBILITY OF SUCH A VETERAN FOR A READJUSTMENT APPOINTMENT SHALL CONTINUE FOR NOT LESS THAN SIX MONTHS AFTER SUCH VETERAN FIRST CEASES TO BE ENROLLED THEREIN ON MORE THAN A HALF-TIME BASIS. NO VETERANS READJUSTMENT APPOINTMENT MAY BE MADE UNDER AUTHORITY OF THIS SUBSECTION AFTER JUNE 30, 1978.

"(C) EACH DEPARTMENT, AGENCY, AND INSTRUMENTALITY IN THE EXECUTIVE BRANCH SHALL INCLUDE IN ITS AFFIRMATIVE ACTION PLAN FOR THE HIRING, PLACEMENT, AND ADVANCEMENT OF HANDICAPPED INDIVIDUALS IN SUCH DEPARTMENT, AGENCY, OR INSTRUMENTALITY AS REQUIRED BY SECTION 501(B) OF PUBLIC LAW 93--112 (87 STAT. 391), //29 USC 791.// A SEPARATE SPECIFICATION OF PLANS (IN ACCORDANCE WITH REGULATIONS WHICH THE CIVIL SERVICE COMMISSION SHALL PRESCRIBE IN CONSULTATION WITH THE ADMINISTRATOR, THE SECRETARY OF LABOR, AND THE SECRETARY OF HEALTH, EDUCATION, AND WELFARE,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CONSISTENT WITH THE PURPOSES, PROVISIONS, AND PRIORITIES OF SUCH ACT) TO PROMOTE AND CARRY OUT SUCH AFFIRMATIVE ACTION WITH RESPECT TO DISABLED VETERANS IN ORDER TO ACHIEVE THE PURPOSE OF THIS SECTION.

"(D) THE CIVIL SERVICE COMMISSION SHALL BE RESPONSIBLE FOR THE REVIEW AND EVALUATION OF THE IMPLEMENTATION OF THIS SECTION AND THE ACTIVITIES OF EACH SUCH DEPARTMENT, AGENCY, AND INSTRUMENTALITY TO CARRY OUT THE PURPOSE AND PROVISIONS OF THIS SECTION. THE COMMISSION SHALL PERIODICALLY OBTAIN AND PUBLISH (ON AT LEAST A SEMIANNUAL BASIS) REPORTS ON SUCH IMPLEMENTATION AND ACTIVITIES FROM EACH SUCH DEPARTMENT, AGENCY AND INSTRUMENTALITY, INCLUDING SPECIFICATION OF THE USE AND EXTENT OF APPOINTMENTS MADE UNDER SUBSECTION (B) OF THIS SECTION AND THE RESULTS OF THE PLANS REQUIRED UNDER SUBSECTION (C) THEREOF.

"(E) THE CIVIL SERVICE COMMISSION SHALL SUBMIT TO THE CONGRESS ANNUALLY A REPORT ON ACTIVITIES CARRIED OUT UNDER THIS SECTION, EXCEPT THAT, WITH RESPECT TO SUBSECTION (C) OF THIS SECTION, THE COMMISSION MAY INCLUDE A REPORT OF SUCH ACTIVITIES SEPARATELY IN THE REPORT REQUIRED TO BE SUBMITTED BY SECTION 501(D) OF SUCH PUBLIC LAW 93--112, REGARDING THE EMPLOYMENT OF HANDICAPPED INDIVIDUALS BY EACH DEPARTMENT, AGENCY, AND INSTRUMENTALITY.

"(F) NOTWITHSTANDING SECTION 2011 OF THIS TITLE, THE TERMS 'VETERAN' AND 'DISABLED VETERAN' AS USED IN THIS SECTION SHALL HAVE THE MEANING PROVIDED FOR UNDER GENERALLY APPLICABLE CIVIL SERVICE LAW AND REGULATIONS.".

(B) THE TABLE OF SECTIONS AT THE BEGINNING OF SUCH CHAPTER IS AMENDED BY ADDING AT THE END THEREOF

"2014. EMPLOYMENT WITHIN THE FEDERAL GOVERNMENT.".

SEC. 404. (A) PART III OF TITLE 38, UNITED STATES CODE, //38 USC 2011.// IS AMENDED BY ADDING AT THE END THEREOF A NEW CHAPTER AS FOLLOWS:

"CHAPTER 43--VETERANS' REEMPLOYMENT RIGHTS

"SEC.

"2021. RIGHT TO REEMPLOYMENT OF INDUCTED PERSONS; BENEFITS PROTECTED.
"2022. ENFORCEMENT PROCEDURES.
"2023. REEMPLOYMENT BY THE UNITED STATES, TERRITORY, POSSESSION, OR THE
DISTRICT OF COLUMBIA.
"2024. RIGHTS OF PERSONS WHO ENLIST OR ARE CALLED TO ACTIVE DUTY; RESERVES.
"2025. ASSISTANCE IN OBTAINING REEMPLOYMENT.
"2026. PRIOR RIGHTS FOR REEMPLOYMENT.

"2021. RIGHT TO REEMPLOYMENT OF INDUCTED PERSONS; BENEFITS PROTECTED

"(A) IN THE CASE OF ANY PERSON WHO IS INDUCTED INTO THE ARMED FORCES OF THE UNITED STATES UNDER THE MILITARY SELECTIVE SERVICE ACT //50 USC APP. 451.// (OR UNDER ANY PRIOR OR SUBSEQUENT CORRESPONDING LAW) FOR TRAINING AND SERVICE AND WHO LEAVES A POSITION (OTHER THAN A TEMPORARY POSITION) IN THE EMPLOY OF ANY EMPLOYER IN ORDER TO PERFORM SUCH TRAINING AND SERVICE, AND (1) RECEIVES A CERTIFICATE DESCRIBED IN SECTION 9(A) OF THE MILITARY SELECTIVE SERVICE ACT // 50 USC APP. 459.// (RELATING TO THE SATISFACTORY COMPLETION OF MILITARY SERVICE), AND (2) MAKES APPLICATION FOR REEMPLOYMENT WITHIN NINETY DAYS AFTER SUCH PERSON IS RELIEVED FROM SUCH TRAINING AND SERVICE OR FROM HOSPITALIZATION CONTINUING AFTER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

Page 18

DISCHARGE FOR A PERIOD OF NOT MORE THAN ONE YEAR--,

"(A) IF SUCH POSITION WAS IN THE EMPLOY OF THE UNITED STATES GOVERNMENT, ITS TERRITORIES, OR POSSESSIONS, OR POLITICAL SUBDIVISIONS THEREOF, OR THE DISTRICT OF COLUMBIA, SUCH PERSON SHALL--,

"(I) IF STILL QUALIFIED TO PERFORM THE DUTIES OF SUCH POSITION, BE RESTORED TO SUCH POSITION OR TO A POSITION OF LIKE SENIORITY, STATUS, AND PAY; OR

"(II) IS NOT QUALIFIED TO PERFORM THE DUTIES OF SUCH BUT QUALIFIED TO PERFORM THE DUTIES OF ANY OTHER POSITION IN THE EMPLOY OF THE EMPLOYER, BE OFFERED EMPLOYMENT AND, IF SUCH PERSON SO REQUESTS, BE EMPLOYED IN SUCH OTHER POSITION THE DUTIES OF WHICH SUCH PERSON LIKE SENIORITY, STATUS, AND PAY, OR THE NEAREST APPROXIMATION THEREOF CONSISTENT WITH THE CIRCUMSTANCES IN SUCH PERSON'S CASE;

"(I) IF STILL QUALIFIED TO PERFORM THE DUTIES OF SUCH POSITION, BE RESTORED BY SUCH EMPLOYER OR HIS SUCCESSOR IN INTEREST TO SUCH POSITION OR TO A POSITION OF LIKE SENIORITY STATUS AND PAY; OR

"(II) OF NOT QUALIFIED TO PERFORM THE DUTIES OF SUCH POSITION, BY REASON OF DISABILITY SUSTAINED DURING SUCH SERVICE, BUT QUALIFIED TO PERFORM THE DUTIES OF ANY OTHER POSITION IN THE EMPLOY OF SUCH EMPLOYER OR HIS SUCCESSOR IN TNTEREST IN SUCH OTHER POSITION THE DUTIES OF WHICH SUCH PERSON IS QUALIFIED TO PERFORM AS WILL PROVIDE SUCH PERSON LIKE SENIORITY, STATUS, AND PAY, OR THE NEAREST APPROXIMATION THEREOF CONSISTENT WITH THE CIRCUMSTANCES IN SUCH PERSON'S CASE, POSITION, BY REASON OF DISABILITY SUSTAINED DURING SUCH SERVICE, BUT QUALIFIED TO PERFORM THE DUTIES OF ANY OTHER POSITION IN THE EMPLOY OF SUCH EMPLOYER OR HIS SUCCESSOR IN INTEREST, BE OFFERED EMPLOYMENT AND, IF SUCH PERSON SO REQUESTS, BE EMPLOYED BY SUCH EMPLOYER OF HIS SUCCESSOR IN INTEREST IN SUCH OTHER POSITION THE DUTIES OF WHICH PERSON IS QUALIFIED TO PERFORM AS WILL PROVIDE SUCH PERSON LIKE SENIORITY, STATUS, AND PAY, OR THE NEAREST APPROXIMATION THEREOF CONSISTENT WITH THE CIRCUMSTANCES IN SUCH PERSON'S CASE IT IMPOSSIBLE OR UNREASONABLE TO DO SO. NOTHING IN THIS CHAPTER SHALL EXUSE NONCOMPLIANCE WITH ANY STATUTE OR ORDINANCE OF A STATE OR POLITICAL SUBDIVISION THEREOF ESTABLISHING GREATER OR ADDITIONAL RIGHTS OR PROTECTIONS THAN THE RIGHTS AND PROTECTIONS ESTABLISHED PURSUANT TO THIS CHAPTER.

"(B)(1) ANY PERSON WHO IS RESTORED TO OR EMPLOYED IN A POSITION IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE (A) OR (B) OF SUBSECTION (A) OF THIS SECTION SHALL BE CONSIDERED AS HAVING BEEN ON FURLOUGH OR LEAVE OF ABSENCE DURING SUCH PERSON'S PERIOD OF TRAINING AND SERVICE IN THE ARMED FORCES, SHALL BE SO RESTORED OR REEMPLOYED WITHOUT LOSS OF SENIORITY, SHALL BE ENTITLED TO PARTICIPATE IN INSURANCE OR OTHER BENEFITS OFFERED BY THE EMPLOYER PURSUANT TO ESTABLISHED RULES AND PRACTICES RELATING TO EMPLOYEES ON FURLOUGH OR LEAVE OF ABSENCE IN EFFECT WITH THE EMPLOYER AT THE TIME SUCH PERSON WAS INDUCTED INTO SUCH FORCES, AND SHALL NOT BE DISCHARGED FROM SUCH POSITION WITHOUT CAUSE WITHIN ONE YEAR AFTER SUCH RESTORATION OR REEMPLOYMENT.

"(2) IT IS HEREBY DECLARED TO BE THE SENSE OF THE CONGRESS THAT ANY PERSON WHO IS RESTORED TO OR EMPLOYED IN A POSITION IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE (A) OR (B) OF SUBSECTION (A) OF THIS SECTION SHOULD BE SO RESTORED OR REEMPLOYED IN SUCH MANNER AS TO GIVE SUCH PERSON SUCH STATUS IN HIS EMPLOYMENT AS HE WOULD HAVE ENJOYED IF SUCH PERSON HAD CONTINUED IN SUCH EMPLOYMENT CONTINUOUSLY FROM THE TIME OF SUCH PERSON'S ENTERING THE ARMED FORCES UNTIL THE TIME OF SUCH PERSON'S RESTORATION TO SUCH EMPLOYMENT, OR REEMPLOYMENT.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PL 93-508,** DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

"(3) ANY PERSON WHO HOLDS A POSITION DESCRIBED IN CLAUSE (A) OR (B) OF SUBSECTION (A) OF THIS SECTION SHALL NOT BE DENIED RETENTION IN EMPLOYMENT OR ANY PROMOTION OR OTHER INCIDENT OR ADVANTAGE OF EMPLOYMENT BECAUSE OF ANY OBLIGATION AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES.

"(C) THE RIGHTS GRANTED BY SUBSECTIONS (A) AND (B) OF THIS SECTION TO PERSONS WHO LEFT THE EMPLOY OF A STATE OR POLITICAL SUBDIVISION THEREOF AND WERE INDUCTED INTO THE ARMED FORCES SHALL NOT DIMINISH ANY RIGHTS SUCH PERSONS MAY HAVE PURSUANT TO ANY STATUTE OR ORDINANCE OF SUCH STATE OR POLITICAL SUBDIVISION ESTABLISHING GREATER OR ADDITIONAL RIGHTS OR PROTECTIONS.

## "2022. ENFORCEMENT PROCEDURES

"IF ANY EMPLOYER, WHO IS A PRIVATE EMPLOYER OR A STATE OR POLITICAL SUBDIVISION THEREOF, FAILS OR REFUSES TO COMPLY WITH THE PROVISIONS OF SECTION 2021(A), (B) (1), OR (B)(3), OR SECTION 2024, //POST, P. 1598.// THE DISTRICT COURT OF THE UNITED STATES FOR ANY DISTRICT IN WHICH SUCH PRIVATE EMPLOYER MAINTAINS A PLACE OF BUSINESS, OR IN WHICH SUCH STATE OR POLITICAL SUBDIVISION THEREOF EXERCISES AUTHORITY OR CARRIES OUT ITS FUNCTIONS, SHALL HAVE THE POWER, UPON THE FILING OF A MOTION, PETITION,M OR OTHER APPROPRIATE PLEADING BY THE PERSON ENTITLED TO THE BENEFITS OF SUCH PROVISIONS, SPECIFICALLY TO REQUIRE SUCH EMPLOYER TO COMPLY WITH SUCH PROVISIONS AND TO COMPENSATE SUCH PERSON FOR ANY LOSS OF WAGES OR BENEFITS SUFFERED BY REASON OF SUCH EMPLOYER'S UNLAWFUL ACTION. ANY SUCH COMPENSATION SHALL BE IN ADDTION TO AND SHALL NOT BE DEEMED TO DIMINSH ANY OF THE BENEFITS PROVIDED FOR IN SUCH PROVISIONS. THE COURT SHALL ORDER SPEEDY HEARING IN ANY SUCH CASE AND SHALL ADVANCE IT ON THE CALENDAR. UPON APPLICATION TO THE UNITED STATES ATTORNEY OR COMPARABLE OFFICIAL FOR ANY DISTRICT IN WHICH SUCH PRIVATE EMPLOYER MAINTAINS A PLACE OF BUSINESS, OR IN WHICH SUCH STATE OR POLITICAL SUBDIVISION THEREOF EXERCISES AUTHORITY OR CARRIES OUT ITS FUNCTIONS, BY ANY PERSON CLAIMING TO BE ENTITLED TO THE BENEFITS PROVIDED FOR IN SUCH PROVISIONS, SUCH UNITED STATES ATTORNEY OR OFFICIAL, IF REASONABLY SATISFIED THAT THE PERSON SO APPLYING IS ENTITLED TO SUCH BENEFITS, SHALL APPEAR AND ACT AS ATTORNEY FOR SUCH PERSON IN THE AMICABLE ADJUSTMENT OF THE CLAIM OR IN THE FILING OF ANY MOTION, PETITION, OR OTHER APPROPRIATE PLEADING AND THE PROSECUTION THEREOF SPECIFICALLY TO REQUIRE SUCH EMPLOYER TO COMPLY WITH SUCH PROVISIONS. NO FEES OR COURT COSTS SHALL BE TAXED AGAINST ANY PERSON WHO MAY APPLY FOR SUCH BENEFITS. IN ANY SUCH ACTION ONLY THE EMPLOYER SHALL BE DEEMED A NECESSARY PARTY RESPONDENT. NO STATE STATUTE OF LIMITATIONS SHALL APPLY TO ANY PROCEEDINGS UNDER THIS CHAPTER.

## "2023. REEMPLOYMENT BY THE UNTIED STATES, TERRITORY, POSSESSION, OR THE DISTRICT OF COLUMBIA

"(A) ANY PERSON WHO IS ENTITLED TO BE RESTORED TO OR EMPLOYED IN A POSITION IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE (A) OF SECTION 2021(A) //ANTE, P. 1594.// AND WHO WAS EMPLOYED, IMMEDIATELY BEFORE ENTERING THE ARMED FORCES, BY ANY AGENCY IN THE EXECUTIVE BRANCH OF THE GOVERNMENT OR BY ANY TERRITORY OR POSSESSION, OR POLITICAL SUBDIVISION THEREOF, OR BY THE DISTRICT OF COLUMBIA, SHALL BE SO RESTORED OR REEMPLOYED BY SUCH AGENCY OR THE SUCCESSOR TO ITS FUNCTIONS, OR BY SUCH TERRITORY, POSSESSION, POLITICAL SUBDIVISION, OR THE DISTRICT OF COLUMBIA. IN ANY CASE IN WHICH, UPON APPEAL OF ANY PERSON WHO WAS EMPLOYED, IMMEDIATELY BEFORE ENTERING THE ARMED FORCES, BY ANY AGENCY IN THE EXECUTIVE BRANCH OF THE GOVERNMENT OR BY THE DISTRICT OF COLUMBIA, THE UNITED STATES CIVIL SERVICE COMMISSION FINDS THAT--,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

"(1) SUCH AGENCY IS NO LONGER IN EXISTENCE AND ITS FUNCTIONS HAVE NOT BEEN TRANSFERRED TO ANY OTHER AGENCY; OR

"(2) FOR ANY REASON IT IS NOT FEASIBLE FOR SUCH PERSON TO BE RESTORED TO EMPLOYMENT BY SUCH AGENCY OR BY THE DISTRICT OF COLUMBIA

THE COMMISSION SHALL DETERMINE WHETHER OR NOT THERE IS A POSITION IN ANY OTHER AGENCY IN THE EXECUTIVE BRANCH OF THE GOVERNMENT OR IN THE GOVERNMENT OF THE DISTRICT OF COLUMBIA FOR WHICH SUCH PERSON IS QUALIFIED AND WHICH IS EITHER VACANT OR HELD BY A PERSON HAVING A TEMPORARY APPOINTMENT THERETO. IN ANY CASE IN WHICH THE COMMISSION DETERMINES THAT THERE IS SUCH A POSITION, SUCH PERSON SHALL BE OFFERED EMPLOYMENT AND, IF SUCH PERSON SO REQUESTS, BE EMPLOYED IN SUCH POSITION BY THE AGENCY IN WHICH SUCH POSITION EXISTS OR THE BY THE GOVERNMENT OF THE DISTRICT OF COLUMBIA, AS THE CASE MAY BE. THE COMMISSION IS AUTHORIZED AND DIRECTED TO ISSUE REGULATIONS GIVING FULL FORCE AND EFFECT TO THE PROVISIONS OF THIS SECTION INSOFAR AS THEY RELATE TO PERSONS ENTITLED TO BE RESTORED TO OR EMPLOYED IN POSITIONS IN THE EXECUTIVE BRANCH OF THE GOVERNMENT OR IN THE GOVERNMENT OF THE DISTRICT OF COLUMBIA, INCLUDING PERSONS ENTITLED TO BE REEMPLOYED UNDER THE LAST SENTENCE OF SUBSECTION (B) OF THIS SECTION. THE AGENCIES IN THE EXECUTIVE BRANCH OF THE GOVERNMENT AND THE GOVERNMENT OF THE DISTRICT OF COLUMBIA SHALL COMPLY WITH SUCH RULES, REGULATIONS, AND ORDERS ISSUED BY THE COMMISSION PURSUANT TO THIS SUBSECTION. THE COMMISSION IS AUTHORIZED AND DIRECTED WHENEVER IT FINDS, UPON APPEAL OF THE PERSON CONCERNED, THAT ANY AGENCY IN THE EXECUTIVE BRANCH OF THE GOVERNMENT OR THE GOVERNMENT OF THE DISTRICT OF COLUMBIA HAS FAILED OR REFUSES TO COMPLY WITH THE PROVISIONS OF THIS SECTION, TO ISSUE AN ORDER SPECIFICALLY REQUIRING SUCH AGENCY OR THE GOVERNMENT OF THE DISTRICT OF COLUMBIA TO COMPLY WITH SUCH PROVISIONS AND TO COMPENSATE SUCH PERSON FOR ANY LOSS OF SALARY OR WAGES SUFFERED BY REASON OF FAILURE TO COMPLY WITH SUCH PROVISIONS, LESS ANY AMOUNTS RECEIVED BY SUCH PERSON THROUGH OTHER EMPLOYMENT, UNEMPLOYMENT COMPENSATION, OR READJUSTMENT ALLOWANCES. ANY SUCH COMPENSATION ORDERED TO BE PAID BY THE COMMISSION SHALL BE IN ADDITION TO AND SHALL NOT BE DEEMED TO DIMINISH ANY OF THE BENEFITS PROVIDED FOR IN SUCH PROVISIONS, AND SHALL BE PAID BY THE HEAD OF THE AGENCY CONCERNED OR BY THE GOVERNMENT OF THE DISTRICT OF COLUMBIA OUT OF APPROPRIATIONS CURRENTLY AVAILABLE FOR SALARY AND EXPENSES OF SUCH AGENCY OR GOVERNMENT, AND SUCH APPROPRIATIONS SHALL BE AVAILABLE FOR SUCH PURPOSE. AS USED IN THIS CHAPTER, THE TERM 'AGENCY IN THE EXECUTIVE BRANCH OF THE GOVERNMENT' MEANS ANY DEPARTMENT, INDEPENDENT ESTABLISHMENT, AGENCY, OR CORPORATION IN THE EXECUTIVE BRANCH OF THE UNITED STATES GOVERNMENT (INCLUDING THE UNITED STATES POSTAL SERVICE AND THE POSTAL RATE COMMISSION).

"(B) ANY PERSON WHO IS ENTITLED TO BE RESTORED TO OR EMPLOYED IN A POSITION IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE (A) OF SECTION 2021(A), //ANTE. P. 1594.// AND WHO WAS EMPLOYED, IMMEDIATELY BEFORE ENTERING THE ARMED FORCES, IN THE LEGISLATIVE BRANCH OF THE GOVERNMENT, SHALL BE SO RESOTRED OR EMPLOYED BY THE OFFICER WHO APPOINTED SUCH PERSON TO THE POSITION WHICH SUCH PERSON HELD IMMEDIATELY BEFORE ENTERING THE ARMED FORCES. IN ANY CASE IN WHICH IT IS NOT POSSIBLE FOR ANY SUCH PERSON TO BE RESTORED TO OR EMPLOYED IN A POSITION IN THE LEGISLATIVE BRANCH OF THE GOVERNMENT AND SUCH PERSON IS OTHERWISE ELIGIBLE TO ACQUIRE A STATUS FOR TRANSFER TO A POSITION IN THE COMPETITIVE SERVICE IN ACCORDANCE WITH SECTION 3304(C) OF TITLE 5, THE UNITED STATES CIVIL SERVICE COMMISSION SHALL, UPON APPEAL OF SUCH PERSON, DETERMINE WHETHER OR NOT THERE IS A POSITION IN THE EXECUTIVE BRANCH OF THE GOVERNMENT FOR WHICH SUCH PERSON IS QUALIFIED AND WHICH IS EITHER VACANT OR HELD BY A PERSON HAVING A TEMPORARY APPOINTMENT THERETO. IN ANY CASE IN WHICH THE COMMISSION DETERMINES THAT THERE IS

**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

SUCH A POSITION, SUCH PERSON SHALL BE OFFERED EMPLOYMENT AND, IF SUCH PERSON SO REQUESTS, BE EMPLOYED IN SUCH POSITION BY THE AGENCY IN WHICH SUCH POSITION EXISTS.

"(C) ANY PERSON WHO IS ENTITLED TO BE RESTORED TO OR EMPLOYED IN A POSITION IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE (A) OF SECTION 2021(A) //ANTE. P. 1594.// AND WHO WAS EMPLOYED, IMMEDIATELY BEFORE ENTERING THE ARMED FORCES, IN THE JUDICIAL BRANCH OF THE GOVERNMENT, SHALL BE SO RESTORED OR REEMPLOYED BY THE OFFICER WHO APPOINTED SUCH PERSON TO THE POSITION WHICH SUCH PERSON HELD IMMEDIATELY BEFORE ENTERING THE ARMED FORCES.

"2024. RIGHTS OF PERSONS WHO ENLIST OR ARE CALLED TO ACTIVE DUTY; RESERVES

"(A) ANY PERSON WHO, AFTER ENTERING THE EMPLOYMENT ON THE BASIS OF WHICH SUCH PERSON CLAIMS RESTORATION OR REEMPLOYMENT, ENLISTS IN THE ARMED FORCES OF THE UNITED STATES (OTHER THAN IN A RESERVE COMPONENT) SHALL BE ENTITLED UPON RELEASE FROM SERVICE UNDER HONORABLE CONDITIONS TO ALL OF THE REEMPLOYMENT RIGHTS AND OTHER BENEFITS PROVIDED FOR BY THIS SECTION IN THE CASE OF PERSONS INDUCTED UNDER THE PROVISIONS OF THE MILITARY SELECTIVE SERVICE ACT //50 USC APP. 451.// (OR PRIOR OR SUBSEQUENT LEGISLATION PROVIDING FOR THE INVOLUNTARY INDUCTION OF PERSONS INTO THE ARMED FORCES), IF THE TOTAL OF SUCH PERSON'S SERVICE PERFORMED BETWEEN JUNE 24, 1948, AND AUGUST 1, 1961, DID NOT EXCEED FOUR YEARS, AND THE TOTAL OF ANY SERVICE, ADDITIONAL OR OTHERWISE, PERFORMED BY SUCH PERSON AFTER AUGUST 1, 1961, DID NOT EXCEED FIVE YEARS, AND IF THE SERVICE IN EXCESS OF FOUR YEARS AFTER AUGUST 1, 1961, IS AT THE REQUEST AND FOR THE CONVENIENCE OF THE FEDERAL GOVERNMENT (PLUS IN EACH CASE ANY PERIOD OF ADDITIONAL SERVICE IMPOSED PURSUANT TO LAW).

"(B)(1) ANY PERSON WHO, AFTER ENTERING THE EMPLOYMENT ON THE BASIS OF WHICH SUCH PERSON CLAIMS RESTORATION OR REEMPLOYMENT, ENTERS UPON ACTIVE DUTY (OTHER THAN FOR THE PURPOSE OF DETERMINING PHYSICAL FITNESS AND OTHER THAN FOR TRAINING), WHETHER OR NOT VOLUNTARILY, IN THE ARMED FORCES OF THE UNITED STATES OR THE PUBLIC HEALTH SERVICE IN RESPONSE TO AN ORDER OR CALL TO ACTIVE DUTY SHALL, UPON SUCH PERSON'S RELIEF FROM ACTIVE DUTY UNDER HONORABLE CONDITIONS, BE ENTITLED TO ALL OF THE REEMPLOYMENT RIGHTS AND BENEFITS PROVIDED FOR BY THIS CHAPTER IN THE CASE OF PERSONS INDUCTED UNDER THE PROVISIONS OF THE MILITARY SELECTIVE SERVICE ACT (OR PRIOR OR SUBSEQUENT LEGISLATION PROVIDING FOR THE INVOLUNTARY INDUCTION OF PERSONS INTO THE ARMED FORCES), IF THE TOTAL OF SUCH ACTIVE DUTY PERFORMED BETWEEN JUNE 24, 1948, AND AUGUST 1, 1961, DID NOT EXCEED FOUR YEARS, AND THE TOTAL OF ANY SUCH ACTIVE DUTY, ADDITIONAL OR OTHERWISE, PERFORMED AFTER AUGUST 1, 1961, DOES NOT EXCEED FOURS YEARS (PLUS IN EACH CASE ANY ADDITIONAL PERIOD IN WHICH SUCH PERSON WAS UNABLE TO OBTAIN ORDERS RELIEVING SUCH PERSON FROM ACTIVE DUTY).

"(2) ANY MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES WHO VOLUNTARILY OR INVOLUNTAREILY ENTERS UPON ACTIVE DUTY (OTHER THAN FOR THE PURPOSE OF DETERMINING PHYSICAL FITNESS AND OTHER THAN FOR TRAINING) OR WHOSE ACTIVE DUTY IS VOLUNTARILY OR INVOLUNTARILY EXTENDED DURING A PERIOD WHEN THE PRESIDENT IS AUTHORIZED TO ORDER UNITS OF THE READY RESERVE OR MEMBERS OF A RESERVE COMPONENT TO ACTIVE DUTY SHALL HAVE THE SERVICE LIMITATION GOVERNING ELIGIBILITY FOR REEMPLOYMENT RIGHTS UNDER SUBSECTION (B)(1) OF THIS SECTION EXTENDED BY SUCH MEMBER'S PERIOD OF SUCH ACTIVE DUTY, BUT NOT TO EXCEED THAT PERIOD OF ACTIVE DUTY TO WHICH THE PRESIDENT IS AUTHORIZED TO ORDER UNITS OF THE READY RESERVE OR MEMBERS OF A RESERVE COMPONENT. WITH RESPECT TO A MEMBER WHO VOLUNTARILY ENTERS UPON ACTIVE DUTY OR WHOSE ACTIVE DUTY IS VOLUNTARILY EXTENDED, THE PROVISIONS OF THIS SUBSECTION SHALL APPLY ONLY WHEN SUCH ADDITIONAL ACTIVE DUTY IS AT THE REQUEST AND FOR THE CONVENIENCE OF THE FEDERAL GOVERNMENT.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                        Page 22
**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

"(C) ANY MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES WHO IS ORDERED TO AN INITIAL PERIOD OF ACTIVE DUTY FOR TRAINING OF NOT LESS THAN THREE CONSECUTIVE MONTHS SHALL, UPON APPLICATION FOR REEMPLOYMENT WITHIN THIRTY-ONE DAYS AFTER (1) SUCH MEMBER'S RELEASE FROM SUCH ACTIVE DUTY FOR TRAINING AFTER SATISFACTORY SERVICE, OR (2) SUCH MEMBER'S DISCHARGE FROM HOSPITALIZATION INCIDENT TO SUCH ACTIVE DUTY FOR TRAINING, OR ONE YEAR AFTER SUCH MEMBER'S SCHEDULED RELEASE FROM SUCH TRAINING, WHICHEVER IS EARLIER, BE ENTITLED TO ALL REEMPLOYMENT RIGHTS AND BENEFITS PROVIDED BY THIS CHAPTER FOR PERSONS INDUCTED UNDER THE PROVISIONS OF THE MILITARY SELECTIVE SERVICE ACT // 50 USC APP. 451.// (OR PRIOR OR SUBSEQUENT LEGISLATION PROVIDING FOR THE INVOLUNTARY INDUCTION OF PERSONS INTO THE ARMED FORCES), EXCEPT THAT (A) ANY PERSON RESTORED TO OR EMPLOYED IN A POSITION IN ACCORDANCE WITH THE PROVISIONS OF THIS SUBSECTION SHALL NOT BE DISCHARGED FROM SUCH POSITION WITHOUT CAUSE WITHIN SIX MONTHS AFTER THAT RESTORATION, AND (B) NO REEMPLOYMENT RIGHTS GRANTED BY THIS SUBSECTION SHALL ENTITLE ANY PERSON TO RETENTION, PREFERENCE, OR DISPLACEMENT RIGHTS OVER ANY VETERAN WITH A SUPERIOR CLAIM UNDER THOSE PROVISIONS OF TITLE 5 //5 USC 101 ET SEQ.// RELATING TO VETERANS AND OTHER PREFERENCE ELIGIBLES.

"(D) ANY EMPLOYEE NOT COVERED BY SUBSECTION (C) OF THIS SECTION WHO HOLDS A POSITION DESCRIBED IN CLAUSE (A) OR (B) OF SECTION 2021(A) //ANTE. P. 1594.// SHALL UPON REQUEST BE GRANTED A LEAVE OF ABSENCE OF SUCH PERSON'S EMPLOYER FOR THE PERIOD REQUIRED TO PERFORM ACTIVE DUTY FOR TRAINING OR INACTIVE DUTY TRAINING IN THE ARMED FORCES OF THE UNITED STATES. UPON SUCH EMPPLOYEE'S RELEASE FROM A PERIOD OF SUCH ACTIVE DUTY FOR TRAINING OR INACTIVE DUTY TRAINING, OR UPON SUCH EMPLOYEE'S DISCHARGE FROM HOSPITALIZATION INCIDENT TO THAT TRAINING, SUCH EMPLOYEE SHALL BE PERMITTED TO RETURN TO SUCH EMPLOYEE'S POSITION WITH SUCH SENIORITY, STATUS, PAY, AND VACATION AS SUCH EMPLOYEE WOULD HAVE HAD IF SUCH EMPLOYEE HAD NOT BEEN ABSENT FOR SUCH PURPOSES. SUCH EMPLOYEE SHALL REPORT FOR WORK AT THE BEGINNING OF THE NEXT REGULARLY SCHEDULED WORKING PERIOD AFTER EXPIRATION OF THE LAST CALENDAR DAY NECESSARY TO TRAVEL FROM THE PLACE OF TRAINING TO THE PLACE OF EMPLOYMENT FOLLOWING SUCH EMPLOYEE'S RELEASE, OR WITHIN A REASONABLE TIME THEREAFTER IF DELAYED RETURN IS DUE TO FACTORS BEYOND THE EMPLOYEE'S CONTROL. FAILURE TO REPORT FOR WORK AT SUCH NEXT REGULARLY SCHEDULED WORKING PERIOD SHALL MAKE THE EMPLOYEE SUBJECT TO THE CONDUCT RULES OF THE EMPLOYER PERTAINING TO EXPLANATIONS AND DISCIPLINE WITH RESPECT TO ABSENCE FROM SCHEDULED WORK. IF SUCH AN EMPLOYEE IS HOSPITALIZED INCIDENT TO ACTIVE DUTY FOR TRAINING OR INACTIVE DUTY TRAINING, SUCH EMPLOYEE SHALL BE REQUIRED TO REPORT FOR WORK AT THE BEGINNING OF THE NEXT REGULARLY SCHEDULED WORK PERIOD AFTER EXPIRATION OF THE TIME NECESSARY TO TRAVEL FROM THE PLACE OF DISCHARGE FROM HOSPITALIZATION TO THE PLACE OF EMPLOYMENT, OR WITHIN A REASONABLE TIME THEREAFTER IF DELAYED RETURN IS DUE TO FACTORS BEYOND THE EMPLOYEE'S CONTROL, OR WITHIN ONE YEAR AFTER SUCH EMPLOYEE'S RELEASE FROM ACTIVE DUTY FOR TRAINING OR INACTIVE DUTY TRAINING, WHICHEVER IS EARLIER. IF AN EMPLOYEE COVERED BY THIS SUBSECTION IS NOT QUALIFIED TO PERFORM THE DUTIES OF SUCH EMPLOYEE'S POSITION BY REASON OF DISABILITY SUSTAINED DURING ACTIVE DUTY FOR TRAINING OR INACTIVE DUTY TRAINING, BUT IS QUALIFIED TO PERFORM THE DUTIES OF ANY OTHER POSITION IN THE EMPLOY OF THE EMPLOYER OR HIS SUCCESSOR IN INTEREST, SUCH EMPLOYEE SHALL BE OFFERED EMPLOYMENT AND, IF SUCH PERSON SO REQUESTS, BE EMPLOYED BY THAT EMPLOYER OR HIS SUCCESSOR IN INTEREST IN SUCH OTHER POSITION THE DUTIES OF WHICH SUCH EMPLOYEE IS QUALIFIED TO PERFORM AS WILL PROVIDE SUCH EMPLOYEE LIKE SENIORITY, STATUS, AND PAY, OR THE NEAREST APPROXIMATION THEREOF CONSISTENT WITH THE CIRCUMSTANCES IN SUCH EMPLOYEE'S CASE.

"(E) ANY EMPLOYEE NOT COVERED BY SUBSECTION (C) OF THIS SECTION WHO HOLDS A POSITION DESCRIBED IN CLAUSE (A) OR (B) OF SECTION 2021(A) //ANTE, P. 1594.// SHALL BE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CONSIDERED AS HAVING BEEN ON LEAVE OF ABSENCE DURING THE PERIOD REQUIRED TO REPORT FOR THE PURPOSE OF BEING INDUCTED INTO, ENTERING, OR DETERMINING, BY A PREINDUCTION OR OTHER EXAMINATION, PHYSICAL FITNESS TO ENTER THE ARMED FORCES. UPON SUCH EMPLOYEE'S REJECTION, UPON COMPLETION OF SUCH EMPLOYEE'S PREINDUCTION OR OTHER EXAMINATION, OR UPON SUCH EMPLOYEE'S DISCHARGE FROM HOSPITALIZATION INCIDENT TO SUCH REJECTION OR EXAMINATION, SUCH EMPLOYEE SHALL BE PERMITTED TO RETURN TO SUCH EMPLOYEE'S POSITION IN ACCORDANCE WITH THE PROVISIONS OF SUBSECTION (D) OF THIS SECTION.

"(F) FOR THE PURPOSES OF SUBSECTIONS (C) AND (D) OF THIS SECTION, FULL-TIME TRAINING OR OTHER FULL-TIME DUTY PERFORMED BY A MEMBER OF THE NATIONAL GUARD UNDER SECTION 316, 503, 504, OR 505 OF TITLE 32, IS CONSIDERED ACTIVE DUTY FOR TRAINING; AND FOR THE PURPOSE OF SUBSECTION (D) OF THIS SECTION, INACTIVE DUTY TRAINING PERFORMED BY THAT MEMBER UNDER SECTION 502 OF TITLE 32 OR SECTION 206, 301, 309, 402, OR 1002 OF TITLE 37, IS CONSIDERED INACTIVE DUTY TRAINING.

## "2025. ASSISTANCE IN OBTAINING REEMPLOYMENT

"THE SECRETARY OF LABOR, THROUGH THE OFFICE OF VETERANS' REEMPLOYMENT RIGHTS, SHALL RENDER AID IN THE REPLACEMENT IN THEIR FORMER POSITIONS OR REEMPLOYMENT OF PERSONS WHO HAVE SATISFACTORILY COMPLETED ANY PERIOD OF ACTIVE DUTY IN THE ARMED FORCES OR THE PUBLIC HEALTH SERVICE. IN RENDERING SUCH AID, THE SECRETARY SHALL USE EXISTING FEDERAL AND STATE AGENCIES ENGAGED IN SIMILAR OR RELATED ACTIVITIES AND SHALL UTILIZE THE ASSISTANCE OF VOLUNTEERS.

## "2026. PRIOR RIGHTS FOR REEMPLOYMENT

"IN ANY CASE IN WHICH TWO OR MORE PERSONS WHO ARE ENTITLED TO BE RESTORED TO OR EMPLOYED IN A POSITION UNDER THE PROVISIONS OF THIS CHAPTER OR OF ANY OTHER LAW RELATING TO SIMILAR REEMPLOYMENT BENEFITS LEFT THE SAME POSITION IN ORDER TO ENTER THE ARMED FORCES, THE PERSON WHO LEFT SUCH POSITION FIRST SHALL HAVE THE PRIOR RIGHT TO BE RESTORED THERETO OR REEMPLOYED ON THE BASIS THEREOF, WITHOUT PREJUDICE TO THE REEMPLOYMENT RIGHTS OF THE OTHER PERSON OR PERSONS TO BE RESTORED OR REEMPLOYED.".

(B) THE TABLE OF CHAPTERS AT THE BEGINNING OF TITLE 38, UNITED STATES CODE, AND THE TABLE OF CHAPTERS AT THE BEGINNING OF PART III OF SUCH TITLE ARE EACH AMENDED BY ADDING AT THE END THEREOF

## "43 VETERANS' REEMPLOYMENT RIGHTS 2021".

SEC. 405. SECTION 9 OF THE MILITARY SELECTIVE SERVICE ACT IS AMENDED BY--, //50 USC APP. 459.//

(1) REPEALING SUBSECTIONS (B) THROUGH (H); AND

(2) REDESIGNATING SUBSECTIONS (I) AND (J) AS SUBSECTIONS (B) AND (C), RESPECTIVELY.

## TITLE V--EFFECTIVE DATES

SEC. 501. TITLE I OF THIS ACT SHALL BECOME EFFECTIVE ON SEPTEMBER 1, 1974. //38 USC 1501 NOTE.//

SEC. 502. TITLE III OF THIS ACT SHALL BECOME EFFECTIVE ON JANUARY 1, 1975, EXCEPT THAT ELIGIBLE PERSONS SHALL, UPON APPLICATION, BE ENTITLED (AND ALL SUCH PERSONS SHALL BE NOTIFIED BY THE ADMINISTRATOR OF VETERANS' AFFAIRS OF SUCH ENTITLEMENT) TO A

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

LOAN UNDER THE NEW SUBCHAPTER III OF CHAPTER 36 OF TITLE 38, UNITED STATES CODE, AS ADDED BY SECTION 301 OF THIS ACT, //ANTE, P. 1589.// THE TERMS OF WHICH TAKE INTO ACCOUNT THE FULL AMOUNT OF THE ACTUAL COST OF ATTENDANCE (AS DEFINED IN SECTION 1798(B)(2)(C) OF SUCH TITLE) WHICH SUCH PERSONS INCURRED FOR THE ACADEMIC YEAR BEGINNING ON OR ABOUT SEPTEMBER 1, 1974. //38 USC 1798 NOTE.//

SEC. 503. TITLES II AND IV OF THIS ACT SHALL BECOME EFFECTIVE ON THE DATE OF THEIR ENACTMENT. //38 USC 1652 NOTE.//

CARL ALBERT SPEAKER OF THE HOUSE OF REPRESENTATIVES
JAMES D. EASTLAND PRESIDENT OF THE SENATE PRO TEMPORE
IN THE HOUSE OF REPRESENTATIVES, U.S., DECEMBER 3, 1974.
THE HOUSE OF REPRESENTATIVES HAVING PROCEEDED TO RECONSIDER THE BILL (H.R. 12628) ENTITLED "AN ACT TO AMEND TITLE 38, UNITED STATES CODE, TO INCREASE VOCATIONAL REHABILITATION SUBSISTENCE ALLOWANCES, EDUCATIONAL AND TRAINING ASSISTANCE ALLOWANCES, AND SPECIAL ALLOWANCES PAID TO ELIGIBLE VETERANS AND PERSONS UNDER CHAPTERS 31, 34, AND 35 OF SUCH TITLE; TO IMPROVE AND EXPAND THE SPECIAL PROGRAMS FOR EDUCATIONALLY DISADVANTAGED VETERANS AND SERVICEMEN UNDER
CHAPTER 34 OF SUCH TITLE; TO IMPROVE AND EXPAND THE VETERAN-STUDENT SERVICES PROGRAM; TO ESTABLISH AN EDUCATION LOAN PROGRAM FOR VETERANS AND PERSONS ELIGIBLE FOR BENEFITS UNDER CHAPTER 34 OR 35 OF SUCH TITLE; TO MAKE OTHER IMPROVEMENTS IN THE EDUCATIONAL ASSISTANCE PROGRAM AND IN THE ADMINISTRATION OF EDUCATIONAL BENEFITS; TO PROMOTE THE EMPLOYMENT OF VETERANS AND THE WIVES AND WIDOWS OF CERTAIN VETERANS BY IMPROVING AND EXPANDING THE PROVISIONS GOVERNING THE OPERATION OF THE VETERANS EMPLOYMENT SERVICE, BY INCREASING THE EMPLOYMENT OF VETERANS BY FEDERAL CONTRACTORS AND SUBCONTRACTORS, AND BY PROVIDING FOR AN ACTION PLAN FOR THE EMPLOYMENT OF DISABLED AND VIETNAM ERA VETERANS WITHIN THE FEDERAL GOVERNMENT; TO CODIFY AND EXPAND VETERANS REEMPLOYMENT RIGHTS; AND FOR
OTHER PURPOSES", RETURNED BY THE PRESIDENT OF THE UNITED STATES WITH HIS OBJECTIONS, TO THE HOUSE OF REPRESENTATIVES, IN WHICH IT ORGINATED, IT WAS RESOLVED, THAT THE SAID BILL PASS, TWO-THIRDS OF THE HOUSE OF REPRESENTATIVES AGREEING TO PASS THE SAME.
ATTEST:
W. PAT JENNINGS CLERK.
BY W. RAYMOND COLLEY
I CERTIFY THAT THIS ACT ORIGINATED IN THE HOUSE OF REPRESENTATIVES.
W. PAT JENNINGS CLERK.
BY W. RAYMOND COLLEY
IN THE SENATE OF THE UNITED STATES, DECEMBER 3, 1974.
THE SENATE HAVING PROCEEDED TO RECONSIDER THE BILL (H.R. 12628) ENTITLED "AN ACT TO AMEND TITLE 38, UNITED STATES CODE, TO INCREASE VOCATIONAL REHABILITATION SUBSISTENCE ALLOWANCES, EDUCATIONAL AND TRAINING ASSISTANCE ALLOWANCES, AND SPECIAL ALLOWANCES PAID TO ELIGIBLE VETERANS AND PERSONS UNDER CHAPTER 31, 34, AND 35 OF SUCH TITLEF TO IMPROVE AND EXPAND THE SPECIAL PROGRAMS FOR EDUCATIONALLY DISADVANTAGED VETERANS AND SERVICEMEN UNDER CHAPTER
34 OF SUCH TITLE; TO IMPROVE AND EXPAND THE VETERAN-STUDENT SERVICES PROGRAM; TO ESTABLISH AN EDUCATION LOAN PROGRAM FOR VETERANS AND PERSONS ELIGIBLE FOR BENEFITS UNDER CHAPTER 34 OR 35 OF SUCH TITLE; TO MAKE OTHER IMPROVEMENTS IN THE EDUCATIONAL ASSISTANCE PROGRAM AND IN THE ADMINISTRATION OF EDUCATIONAL BENEFITS; TO PROMOTE THE EMPLOYMENT OF VETERANS AND THE WIVES AND WIDOWS OF CERTAIN VETERANS BY IMPROVING AND EXPANDING THE PROVISIONS GOVERNING THE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 93-508, 1974 HR 12628                                                      Page 25
 **PL 93-508**, DECEMBER 3, 1974, 88 Stat 1578
**(Publication page references are not available for this document.)**

OPERATION OF THE VETERANS EMPLOYMENT SERVICE, BY INCREASING THE EMPLOYMENT OF
VETERANS BY FEDERAL CONTRACTORS AND SUBCONTRACTORS, AND BY PROVIDING FOR AN
ACTION PLAN FOR THE EMPLOYMENT OF DISABLED AND VIETNAM ERA VETERANS WITHIN THE
FEDERAL GOVERNMENT; TO CODIFY AND EXPAND VETERANS REEMPLOYMENT RIGHTS; AND
FOR
OTHER PURPOSES", RETURNED BY THE PRESIDENT OF THE UNITED STATES WITH HIS
OBJECTIONS TO THE HOUSE OF REPRESENTATIVES, IN WHICH IT ORIGINATED, IT WAS
RESOLVED, THAT THE SAID BILL PASSED, TWO-THIRDS OF THE SENATORS PRESENT HAVING
VOTED IN THE AFFIRMATIVE.
ATTEST: FRANCIS R. VALEO SECRETARY. BY DARRELL ST. CLAIRE ASSISTANCE SECRETARY

LEGISLATIVE HISTORY:
HOUSE REPORTS: NO. 93--792 (COMM. ON VETERANS' AFFAIRS) AND NOS. 93--1303 AND
93--1435 (COMM. OF CONFERENCE).
SENATE REPORTS: NO. 93--907 ACCOMPANYING S. 2784 (COMM. ON VETERANS' AFFAIRS)
AND NOS. 93--1107 AND 93--1240 (COMM. OF CONFERENCE)
CONGRESSIONAL RECORD, VOL. 120 (1974):
FEB. 19, CONSIDERED AND PASSED HOUSE.
JUNE 19, CONSIDERED AND PASSED SENATE, AMENDED, IN LIEU OF S. 2784.
AUG. 21, SENATE AGREED TO CONFERENCE REPORT.
AUG. 22, HOUSE CONCURRED IN SENATE AMENDMENTS WITH
AMENDMENTS.
OCT. 10, HOUSE AND SENATE AGREED TO CONFERENCE REPORT.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, VOL. 10, MO. 48:
NOV. 26, VETOED PRESIDENTIAL MESSAGE.
CONGRESSIONAL RECORD, VOL. 120 (1974):

DEC. 3, HOUSE AND SENATE OVERRODE VETO.

**PL 93-508**, 1974 HR 12628

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

PL 103-353, 1994 HR 995                                                        Page 1
PL 103-353, October 13, 1994, 108 Stat 3149
(Publication page references are not available for this document.)

### UNITED STATES PUBLIC LAWS
### 103rd Congress - Second Session
### Convening January 25, 1994

COPR. © WEST 1994 No Claim to Orig. U.S. Govt. Works

Additions and Deletions are not identified in this document.
For Legislative History of Act, see LH database or Report for
this Public Law in U.S.C.C. & A.N. Legislative History section.

PL 103-353 (HR 995)
October 13, 1994
UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994

AN ACT to amend title 38, United States Code, to improve reemployment rights and benefits of veterans and other benefits of employment of certain members of the uniformed services, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

<< 38 USCA § 101 NOTE >>

SECTION 1. SHORT TITLE.

This Act may be cited as the "Uniformed Services Employment and Reemployment Rights Act of 1994".

SEC. 2. REVISION OF CHAPTER 43 OF TITLE 38.

(a) RESTATEMENT AND IMPROVEMENT OF EMPLOYMENT AND REEMPLOYMENT RIGHTS.-- Chapter 43 of title 38, United States Code, is amended to read as follows:

<< 38 USCA Ch. 43 >>

"CHAPTER 43--EMPLOYMENT AND REEMPLOYMENT RIGHTS OF MEMBERS OF THE UNIFORMED SERVICES
"SUBCHAPTER I--GENERAL

"4301. Purposes; sense of Congress.

"4302. Relation to other law and plans or agreements.

"4303. Definitions.

"4304. Character of service.

"SUBCHAPTER II--EMPLOYMENT AND REEMPLOYMENT RIGHTS AND LIMITATIONS; PROHIBITIONS

"4311. Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited.

"4312. Reemployment rights of persons who serve in the uniformed services.

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                              Page 2
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"4313. Reemployment positions.

"4314. Reemployment by the Federal Government.

"4315. Reemployment by certain Federal agencies.

"4316. Rights, benefits, and obligations of persons absent from employment for service in a uniformed service.

"4317. Health plans.

"4318. Employee pension benefit plans.

"SUBCHAPTER III--PROCEDURES FOR ASSISTANCE, ENFORCEMENT, AND INVESTIGATION
"4321. Assistance in obtaining reemployment or other employment rights or benefits.

"4322. Enforcement of employment or reemployment rights.

"4323. Enforcement of rights with respect to a State or private employer.

"4324. Enforcement of rights with respect to Federal executive agencies.

"4325. Enforcement of rights with respect to certain Federal agencies.

"4326. Conduct of investigation; subpoenas.

"SUBCHAPTER IV--MISCELLANEOUS PROVISIONS
"4331. Regulations.

"4332. Reports.

"4333. Outreach.

"SUBCHAPTER I--GENERAL

<< 38 USCA § 4301 >>

"§ 4301. Purposes; sense of Congress

"(a) The purposes of this chapter are--

"(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

"(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service under honorable conditions; and

"(3) to prohibit discrimination against persons because of their service in the uniformed services.

"(b) It is the sense of Congress that the Federal Government should be a model employer in carrying out the provisions of this chapter.

<< 38 USCA § 4302 >>

"§ 4302. Relation to other law and plans or agreements

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

Page 3

"(a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.

"(b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

<< 38 USCA § 4303 >>

"§ 4303. Definitions

"For the purposes of this chapter--

"(1) The term 'Attorney General' means the Attorney General of the United States or any person designated by the Attorney General to carry out a responsibility of the Attorney General under this chapter.

"(2) The term 'benefit', 'benefit of employment', or 'rights and benefits' means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

"(3) The term 'employee' means any person employed by an employer.

"(4)(A) Except as provided in subparagraphs (B) and (C), the term 'employer' means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including--

"(i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities;

"(ii) the Federal Government;

"(iii) a State;

"(iv) any successor in interest to a person, institution, organization, or other entity referred to in this subparagraph; and

"(v) a person, institution, organization, or other entity that has denied initial employment in violation of section 4311.

"(B) In the case of a National Guard technician employed under section 709 of title 32, the term 'employer' means the adjutant general of the State in which the technician is employed.

"(C) Except as an actual employer of employees, an employee pension benefit plan described in section 3(2) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(2)) shall be deemed to be an employer only with respect to the obligation to provide benefits described in section 4318.

"(5) The term 'Federal executive agency' includes the United States Postal Service, the Postal Rate Commission, any nonappropriated fund instrumentality of the United States, any Executive agency (as that term is defined in section 105 of title 5) other than an agency referred to in section 2302(a)(2)(C)(ii) of title 5, and any military

Copr. © 2004 West Group. All rights reserved.

department (as that term is defined in section 102 of title 5) with respect to the civilian employees of that department.

"(6) The term 'Federal Government' includes any Federal executive agency, the legislative branch of the United States, and the judicial branch of the United States.

"(7) The term 'health plan' means an insurance policy or contract, medical or hospital service agreement, membership or subscription contract, or other arrangement under which health services for individuals are provided or the expenses of such services are paid.

"(8) The term 'notice' means (with respect to subchapter II) any written or verbal notification of an obligation or intention to perform service in the uniformed services provided to an employer by the employee who will perform such service or by the uniformed service in which such service is to be performed.

"(9) The term 'qualified', with respect to an employment position, means having the ability to perform the essential tasks of the position.

"(10) The term 'reasonable efforts', in the case of actions required of an employer under this chapter, means actions, including training provided by an employer, that do not place an undue hardship on the employer.

"(11) Notwithstanding section 101, the term 'Secretary' means the Secretary of Labor or any person designated by such Secretary to carry out an activity under this chapter.

"(12) The term 'seniority' means longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment.

"(13) The term 'service in the uniformed services' means the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, and a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty.

"(14) The term 'State' means each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and other territories of the United States (including the agencies and political subdivisions thereof).

"(15) The term 'undue hardship', in the case of actions taken by an employer, means actions requiring significant difficulty or expense, when considered in light of--

"(A) the nature and cost of the action needed under this chapter;

"(B) the overall financial resources of the facility or facilities involved in the provision of the action;  the number of persons employed at such facility;  the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

"(C) the overall financial resources of the employer;  the overall size of the business of an employer with respect to the number of its employees;  the number, type, and location of its facilities;  and

"(D) the type of operation or operations of the employer, including the composition, structure, and functions of the work force of such employer;  the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the employer.

"(16) The term 'uniformed services' means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

time of war or emergency.

<< 38 USCA § 4304 >>

"§ 4304. Character of service

"A person's entitlement to the benefits of this chapter by reason of the service of such person in one of the uniformed services terminates upon the occurrence of any of the following events:

"(1) A separation of such person from such uniformed service with a dishonorable or bad conduct discharge.

"(2) A separation of such person from such uniformed service under other than honorable conditions, as characterized pursuant to regulations prescribed by the Secretary concerned.

"(3) A dismissal of such person permitted under section 1161(a) of title 10.

"(4) A dropping of such person from the rolls pursuant to section 1161(b) of title 10.

<< 38 USCA Ch. 43 >>

"SUBCHAPTER II--EMPLOYMENT AND REEMPLOYMENT RIGHTS AND LIMITATIONS;
PROHIBITIONS

<< 38 USCA § 4311 >>

"§ 4311. Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited

"(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

"(b) An employer shall be considered to have denied a person initial employment, reemployment, retention in employment, promotion, or a benefit of employment in violation of this section if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, performance of service, application for service, or obligation.

"(c)(1) An employer may not discriminate in employment against or take any adverse employment action against any person because such person has taken an action to enforce a protection afforded any person under this chapter, has testified or otherwise made a statement in or in connection with any proceeding under this chapter, has assisted or otherwise participated in an investigation under this chapter, or has exercised a right provided for in this chapter.

"(2) The prohibition in paragraph (1) shall apply with respect to a person regardless of whether that person has performed service in the uniformed services and shall apply to any position of employment, including a position that is described in section 4312(d)(1)(C).

<< 38 USCA § 4312 >>

"§ 4312. Reemployment rights of persons who serve in the uniformed services

"(a) Subject to subsections (b), (c), and (d) and to section 4304, any person who is absent from a position of employment by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if--

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

"(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

"(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

"(b) No notice is required under subsection (a)(1) if the giving of such notice is precluded by military necessity or, under all of the relevant circumstances, the giving of such notice is otherwise impossible or unreasonable. A determination of military necessity for the purposes of this subsection shall be made pursuant to regulations prescribed by the Secretary of Defense and shall not be subject to judicial review.

"(c) Subsection (a) shall apply to a person who is absent from a position of employment by reason of service in the uniformed services if such person's cumulative period of service in the uniformed services, with respect to the employer relationship for which a person seeks reemployment, does not exceed five years, except that any such period of service shall not include any service--

"(1) that is required, beyond five years, to complete an initial period of obligated service;

"(2) during which such person was unable to obtain orders releasing such person from a period of service in the uniformed services before the expiration of such five-year period and such inability was through no fault of such person;

"(3) performed as required pursuant to section 270 of title 10, under section 502(a) or 503 of title 32, or to fulfill additional training requirements determined and certified in writing by the Secretary concerned, to be necessary for professional development, or for completion of skill training or retraining; or

"(4) performed by a member of a uniformed service who is--

"(A) ordered to or retained on active duty under section 672(a), 672(g), 673, 673b, 673c, or 688 of title 10 or under section 331, 332, 359, 360, 367, or 712 of title 14;

"(B) ordered to or retained on active duty (other than for training) under any provision of law during a war or during a national emergency declared by the President or the Congress;

"(C) ordered to active duty (other than for training) in support, as determined by the Secretary concerned, of an operational mission for which personnel have been ordered to active duty under section 673b of title 10;

"(D) ordered to active duty in support, as determined by the Secretary concerned, of a critical mission or requirement of the uniformed services; or

"(E) called into Federal service as a member of the National Guard under chapter 15 of title 10 or under section 3500 or 8500 of title 10.

"(d)(1) An employer is not required to reemploy a person under this chapter if--

"(A) the employer's circumstances have so changed as to make such reemployment impossible or unreasonable;

"(B) in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313, such employment would impose an undue hardship on the employer; or

"(C) the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995
 PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

Page 7

period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period.

"(2) In any proceeding involving an issue of whether--

"(A) any reemployment referred to in paragraph (1) is impossible or unreasonable because of a change in an employer's circumstances,

"(B) any accommodation, training, or effort referred to in subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313 would impose an undue hardship on the employer, or

"(C) the employment referred to in paragraph (1)(C) is brief or for a nonrecurrent period and without a reasonable expectation that such employment will continue indefinitely or for a significant period,

the employer shall have the burden of proving the impossibility or unreasonableness, undue hardship, or the brief or nonrecurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period.

"(e)(1) Subject to paragraph (2), a person referred to in subsection (a) shall, upon the completion of a period of service in the uniformed services, notify the employer referred to in such subsection of the person's intent to return to a position of employment with such employer as follows:

"(A) In the case of a person whose period of service in the uniformed services was less than 31 days, by reporting to the employer--

"(i) not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of service and the expiration of eight hours after a period allowing for the safe transportation of the person from the place of that service to the person's residence; or

"(ii) as soon as possible after the expiration of the eight-hour period referred to in clause (i), if reporting within the period referred to in such clause is impossible or unreasonable through no fault of the person.

"(B) In the case of a person who is absent from a position of employment for a period of any length for the purposes of an examination to determine the person's fitness to perform service in the uniformed services, by reporting in the manner and time referred to in subparagraph (A).

"(C) In the case of a person whose period of service in the uniformed services was for more than 30 days but less than 181 days, by submitting an application for reemployment with the employer not later than 14 days after the completion of the period of service or if submitting such application within such period is impossible or unreasonable through no fault of the person, the next first full calendar day when submission of such application becomes possible.

"(D) In the case of a person whose period of service in the uniformed services was for more than 180 days, by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service.

"(2)(A) A person who is hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer (in the case of a person described in subparagraph (A) or (B) of paragraph (1)) or submit an application for reemployment with such employer (in the case of a person described in subparagraph (C) or (D) of such paragraph). Except as provided in subparagraph (B), such period of recovery may not exceed two years.

"(B) Such two-year period shall be extended by the minimum time required to accommodate the circumstances beyond such person's control which make reporting within the period specified in subparagraph (A) impossible or

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

Page 8

unreasonable.

"(3) A person who fails to report or apply for employment or reemployment within the appropriate period specified in this subsection shall not automatically forfeit such person's entitlement to the rights and benefits referred to in subsection (a) but shall be subject to the conduct rules, established policy, and general practices of the employer pertaining to explanations and discipline with respect to absence from scheduled work.

"(f)(1) A person who submits an application for reemployment in accordance with subparagraph (C) or (D) of subsection (e)(1) or subsection (e)(2) shall provide to the person's employer (upon the request of such employer) documentation to establish that--

"(A) the person's application is timely;

"(B) the person has not exceeded the service limitations set forth in subsection (a)(2) (except as permitted under subsection (c)); and

"(C) the person's entitlement to the benefits under this chapter has not been terminated pursuant to section 4304.

"(2) Documentation of any matter referred to in paragraph (1) that satisfies regulations prescribed by the Secretary shall satisfy the documentation requirements in such paragraph.

"(3)(A) Except as provided in subparagraph (B), the failure of a person to provide documentation that satisfies regulations prescribed pursuant to paragraph (2) shall not be a basis for denying reemployment in accordance with the provisions of this chapter if the failure occurs because such documentation does not exist or is not readily available at the time of the request of the employer. If, after such reemployment, documentation becomes available that establishes that such person does not meet one or more of the requirements referred to in subparagraphs (A), (B), and (C) of paragraph (1), the employer of such person may terminate the employment of the person and the provision of any rights or benefits afforded the person under this chapter.

"(B) An employer who reemploys a person absent from a position of employment for more than 90 days may require that the person provide the employer with the documentation referred to in subparagraph (A) before beginning to treat the person as not having incurred a break in service for pension purposes under section 4318(a)(2)(A).

"(4) An employer may not delay or attempt to defeat a reemployment obligation by demanding documentation that does not then exist or is not then readily available.

"(g) The right of a person to reemployment under this section shall not entitle such person to retention, preference, or displacement rights over any person with a superior claim under the provisions of title 5, United States Code, relating to veterans and other preference eligibles.

"(h) In any determination of a person's entitlement to protection under this chapter, the timing, frequency, and duration of the person's training or service, or the nature of such training or service (including voluntary service) in the uniformed services, shall not be a basis for denying protection of this chapter if the service does not exceed the limitations set forth in subsection (c) and the notice requirements established in subsection (a)(1) and the notification requirements established in subsection (e) are met.

<< 38 USCA § 4313 >>

"§ 4313. Reemployment positions

"(a) Subject to subsection (b) (in the case of any employee) and sections 4314 and 4315 (in the case of an employee of the Federal Government), a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment in accordance with the following order of priority:

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(1) Except as provided in paragraphs (3) and (4), in the case of a person whose period of service in the uniformed services was for less than 91 days--

"(A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform; or

"(B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, only if the person is not qualified to perform the duties of the position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

"(2) Except as provided in paragraphs (3) and (4), in the case of a person whose period of service in the uniformed services was for more than 90 days--

"(A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform; or

"(B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform, only if the person is not qualified to perform the duties of a position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

"(3) In the case of a person who has a disability incurred in, or aggravated during, such service, and who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability to be employed in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service--

"(A) in any other position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer; or

"(B) if not employed under subparagraph (A), in a position which is the nearest approximation to a position referred to in subparagraph (A) in terms of seniority, status, and pay consistent with circumstances of such person's case.

"(4) In the case of a person who (A) is not qualified to be employed in (i) the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or (ii) in the position of employment in which such person was employed on the date of the commencement of the service in the uniform services for any reason (other than disability incurred in, or aggravated during, service in the uniformed services), and (B) cannot become qualified with reasonable efforts by the employer, in any other position of lesser status and pay which such person is qualified to perform, with full seniority.

"(b)(1) If two or more persons are entitled to reemployment under section 4312 in the same position of employment and more than one of them has reported for such reemployment, the person who left the position first shall have the prior right to reemployment in that position.

"(2) Any person entitled to reemployment under section 4312 who is not reemployed in a position of employment by reason of paragraph (1) shall be entitled to be reemployed as follows:

"(A) Except as provided in subparagraph (B), in any other position of employment referred to in subsection (a)(1) or (a)(2), as the case may be (in the order of priority set out in the applicable subsection), that provides a similar status and pay to a position of employment referred to in paragraph (1) of this subsection, consistent with the circumstances of such person's case, with full seniority.

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 10
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(B) In the case of a person who has a disability incurred in, or aggravated during, a period of service in the uniformed services that requires reasonable efforts by the employer for the person to be able to perform the duties of the position of employment, in any other position referred to in subsection (a)(3) (in the order of priority set out in that subsection) that provides a similar status and pay to a position referred to in paragraph (1) of this subsection, consistent with circumstances of such person's case, with full seniority.

<< 38 USCA § 4314 >>

"§ 4314. Reemployment by the Federal Government

"(a) Except as provided in subsections (b), (c), and (d), if a person is entitled to reemployment by the Federal Government under section 4312, such person shall be reemployed in a position of employment as described in section 4313.

"(b)(1) If the Director of the Office of Personnel Management makes a determination described in paragraph (2) with respect to a person who was employed by a Federal executive agency at the time the person entered the service from which the person seeks reemployment under this section, the Director shall--

"(A) identify a position of like seniority, status, and pay at another Federal executive agency that satisfies the requirements of section 4313 and for which the person is qualified;  and

"(B) ensure that the person is offered such position.

"(2) The Director shall carry out the duties referred to in subparagraphs (A) and (B) of paragraph (1) if the Director determines that--

"(A) the Federal executive agency that employed the person referred to in such paragraph no longer exists and the functions of such agency have not been transferred to another Federal executive agency;  or

"(B) it is impossible or unreasonable for the agency to reemploy the person.

"(c) If the employer of a person described in subsection (a) was, at the time such person entered the service from which such person seeks reemployment under this section, a part of the judicial branch or the legislative branch of the Federal Government, and such employer determines that it is impossible or unreasonable for such employer to reemploy such person, such person shall, upon application to the Director of the Office of Personnel Management, be ensured an offer of employment in an alternative position in a Federal executive agency on the basis described in subsection (b).

"(d) If the adjutant general of a State determines that it is impossible or unreasonable to reemploy a person who was a National Guard technician employed under section 709 of title 32, such person shall, upon application to the Director of the Office of Personnel Management, be ensured an offer of employment in an alternative position in a Federal executive agency on the basis described in subsection (b).

<< 38 USCA § 4315 >>

"§ 4315. Reemployment by certain Federal agencies

"(a) The head of each agency referred to in section 2302(a)(2)(C)(ii) of title 5 shall prescribe procedures for ensuring that the rights under this chapter apply to the employees of such agency.

"(b) In prescribing procedures under subsection (a), the head of an agency referred to in that subsection shall ensure, to the maximum extent practicable, that the procedures of the agency for reemploying persons who serve in the uniformed services provide for the reemployment of such persons in the agency in a manner similar to the manner of reemployment described in section 4313.

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 11
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(c)(1) The procedures prescribed under subsection (a) shall designate an official at the agency who shall determine whether or not the reemployment of a person referred to in subsection (b) by the agency is impossible or unreasonable.

"(2) Upon making a determination that the reemployment by the agency of a person referred to in subsection (b) is impossible or unreasonable, the official referred to in paragraph (1) shall notify the person and the Director of the Office of Personnel Management of such determination.

"(3) A determination pursuant to this subsection shall not be subject to judicial review.

"(4) The head of each agency referred to in subsection (a) shall submit to the Select Committee on Intelligence and the Committee on Veterans' Affairs of the Senate and the Permanent Select Committee on Intelligence and the Committee on Veterans' Affairs of the House of Representatives on an annual basis a report on the number of persons whose reemployment with the agency was determined under this subsection to be impossible or unreasonable during the year preceding the report, including the reason for each such determination.

"(d)(1) Except as provided in this section, nothing in this section, section 4313, or section 4325 shall be construed to exempt any agency referred to in subsection (a) from compliance with any other substantive provision of this chapter.

"(2) This section may not be construed--

"(A) as prohibiting an employee of an agency referred to in subsection (a) from seeking information from the Secretary regarding assistance in seeking reemployment from the agency under this chapter, alternative employment in the Federal Government under this chapter, or information relating to the rights and obligations of employee and Federal agencies under this chapter; or

"(B) as prohibiting such an agency from voluntarily cooperating with or seeking assistance in or of clarification from the Secretary or the Director of the Office of Personnel Management of any matter arising under this chapter.

"(e) The Director of the Office of Personnel Management shall ensure the offer of employment to a person in a position in a Federal executive agency on the basis described in subsection (b) if--

"(1) the person was an employee of an agency referred to in section 2302(a)(2)(C)(ii) of title 5 at the time the person entered the service from which the person seeks reemployment under this section;

"(2) the appropriate officer of the agency determines under subsection (c) that reemployment of the person by the agency is impossible or unreasonable; and

"(3) the person submits an application to the Director for an offer of employment under this subsection.

<< 38 USCA § 4316 >>

"§ 4316. Rights, benefits, and obligations of persons absent from employment for service in a uniformed service

"(a) A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

"(b)(1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be--

"(A) deemed to be on furlough or leave of absence while performing such service; and

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                    Page 12
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

"(2)(A) Subject to subparagraph (B), a person who--

"(i) is absent from a position of employment by reason of service in the uniformed services, and

"(ii) knowingly provides written notice of intent not to return to a position of employment after service in the uniformed service,

is not entitled to rights and benefits under paragraph (1)(B).

"(B) For the purposes of subparagraph (A), the employer shall have the burden of proving that a person knowingly provided clear written notice of intent not to return to a position of employment after service in the uniformed service and, in doing so, was aware of the specific rights and benefits to be lost under subparagraph (A).

"(3) A person deemed to be on furlough or leave of absence under this subsection while serving in the uniformed services shall not be entitled under this subsection to any benefits to which the person would not otherwise be entitled if the person had remained continuously employed.

"(4) Such person may be required to pay the employee cost, if any, of any funded benefit continued pursuant to paragraph (1) to the extent other employees on furlough or leave of absence are so required.

"(5) The entitlement of a person to coverage under a health plan is provided for under section 4317.

"(6) The entitlement of a person to a right or benefit under an employee pension benefit plan is provided for under section 4318.

"(c) A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause--

"(1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days;  or

"(2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.

"(d) Any person whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted, upon request of that person, to use during such period of service any vacation, annual, or similar leave with pay accrued by the person before the commencement of such service.

<< 38 USCA § 4317 >>

"§ 4317. Health plans

"(a)(1)(A) Subject to paragraphs (2) and (3), in any case in which a person  (or the person's dependents) has coverage under a health plan in connection with the person's position of employment, including a group health plan (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974), and such person is absent from such position of employment by reason of service in the uniformed services, the plan shall provide that the person may elect to continue such coverage as provided in this subsection.  The maximum period of coverage of a person and the person's dependents under such an election shall be the lesser of--

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 13
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(i) the 18-month period beginning on the date on which the person's absence begins;  or

"(ii) the day after the date on which the person fails to apply for or return to a position of employment, as determined under section 4312(e).

"(B) A person who elects to continue health-plan coverage under this paragraph may be required to pay not more than 102 percent of the full premium under the plan (determined in the same manner as the applicable premium under section 4980B(f)(4) of the Internal Revenue Code of 1986) associated with such coverage for the employer's other employees, except that in the case of a person who performs service in the uniformed services for less than 31 days, such person may not be required to pay more than the employee share, if any, for such coverage.

"(C) In the case of a health plan that is a multiemployer plan, as defined in section 3(37) of the Employee Retirement Income Security Act of 1974, any liability under the plan for employer contributions and benefits arising under this paragraph shall be allocated--

"(i) by the plan in such manner as the plan sponsor shall provide;  or

"(ii) if the sponsor does not provide--

"(I) to the last employer employing the person before the period served by the person in the uniformed services, or

"(II) if such last employer is no longer functional, to the plan.

"(b)(1) Except as provided in paragraph (2), in the case of a person whose coverage under a health plan was terminated by reason of service in the uniformed services, an exclusion or waiting period may not be imposed in connection with the reinstatement of such coverage upon reemployment under this chapter if an exclusion or waiting period would not have been imposed under a health plan had coverage of such person by such plan not been terminated as a result of such service. This paragraph applies to the person who is reemployed and to any individual who is covered by such plan by reason of the reinstatement of the coverage of such person.

"(2) Paragraph (1) shall not apply to the coverage of any illness or injury determined by the Secretary of Veterans Affairs to have been incurred in, or aggravated during, performance of service in the uniformed services.

<< 38 USCA § 4318 >>

"§ 4318. Employee pension benefit plans

"(a)(1)(A) Except as provided in subparagraph (B), in the case of a right provided pursuant to an employee pension benefit plan (including those described in sections 3(2) and 3(33) of the Employee Retirement Income Security Act of 1974) or a right provided under any Federal or State law governing pension benefits for governmental employees, the right to pension benefits of a person reemployed under this chapter shall be determined under this section.

"(B) In the case of benefits under the Thrift Savings Plan, the rights of a person reemployed under this chapter shall be those rights provided in section 8432b of title 5. The first sentence of this subparagraph shall not be construed to affect any other right or benefit under this chapter.

"(2)(A) A person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services.

"(B) Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                              Page 14
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(b)(1) An employer reemploying a person under this chapter shall, with respect to a period of service described in subsection (a)(2)(B), be liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2) and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service. For purposes of determining the amount of such liability and any obligation of the plan, earnings and forfeitures shall not be included. For purposes of determining the amount of such liability and for purposes of section 515 of the Employee Retirement Income Security Act of 1974 or any similar Federal or State law governing pension benefits for governmental employees, service in the uniformed services that is deemed under subsection (a) to be service with the employer shall be deemed to be service with the employer under the terms of the plan or any applicable collective bargaining agreement. In the case of a multiemployer plan, as defined in section 3(37) of the Employee Retirement Income Security Act of 1974, any liability of the plan described in this paragraph shall be allocated--

"(A) by the plan in such manner as the sponsor maintaining the plan shall provide; or

"(B) if the sponsor does not provide--

"(i) to the last employer employing the person before the period served by the person in the uniformed services, or

"(ii) if such last employer is no longer functional, to the plan.

"(2) A person reemployed under this chapter shall be entitled to accrued benefits pursuant to subsection (a) that are contingent on the making of, or derived from, employee contributions or elective deferrals (as defined in section 402(g)(3) of the Internal Revenue Code of 1986) only to the extent the person makes payment to the plan with respect to such contributions or deferrals. No such payment may exceed the amount the person would have been permitted or required to contribute had the person remained continuously employed by the employer throughout the period of service described in subsection (a)(2)(B). Any payment to the plan described in this paragraph shall be made during the period beginning with the date of reemployment and whose duration is three times the period of the person's service in the uniformed services, not to exceed five years.

"(3) For purposes of computing an employer's liability under paragraph (1) or the employee's contributions under paragraph (2), the employee's compensation during the period of service described in subsection (a)(2)(B) shall be computed--

"(A) at the rate the employee would have received but for the period of service described in subsection (a)(2)(B), or

"(B) in the case that the determination of such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period).

"(c) Any employer who reemploys a person under this chapter and who is an employer contributing to a multiemployer plan, as defined in section 3(37) of the Employee Retirement Income Security Act of 1974, under which benefits are or may be payable to such person by reason of the obligations set forth in this chapter, shall, within 30 days after the date of such reemployment, provide information, in writing, of such reemployment to the administrator of such plan.

<< 38 USCA Ch. 43 >>

"SUBCHAPTER III--PROCEDURES FOR ASSISTANCE, ENFORCEMENT, AND
INVESTIGATION

<< 38 USCA § 4321 >>

"§ 4321. Assistance in obtaining reemployment or other employment rights or benefits

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 15
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"The Secretary (through the Veterans' Employment and Training Service) shall provide assistance to any person with respect to the employment and reemployment rights and benefits to which such person is entitled under this chapter. In providing such assistance, the Secretary may request the assistance of existing Federal and State agencies engaged in similar or related activities and utilize the assistance of volunteers.

<< 38 USCA § 4322 >>

"§ 4322. Enforcement of employment or reemployment rights

"(a) A person who claims that--

"(1) such person is entitled under this chapter to employment or reemployment rights or benefits with respect to employment by an employer; and

"(2)(A) such employer has failed or refused, or is about to fail or refuse, to comply with the provisions of this chapter; or

"(B) in the case that the employer is a Federal executive agency, such employer or the Office of Personnel Management has failed or refused, or is about to fail or refuse, to comply with the provisions of this chapter,

may file a complaint with the Secretary in accordance with subsection (b), and the Secretary shall investigate such complaint.

"(b) Such complaint shall be in writing, be in such form as the Secretary may prescribe, include the name and address of the employer against whom the complaint is filed, and contain a summary of the allegations that form the basis for the complaint.

"(c) The Secretary shall, upon request, provide technical assistance to a potential claimant with respect to a complaint under this subsection, and when appropriate, to such claimant's employer.

"(d) The Secretary shall investigate each complaint submitted pursuant to subsection (a). If the Secretary determines as a result of the investigation that the action alleged in such complaint occurred, the Secretary shall resolve the complaint by making reasonable efforts to ensure that the person or entity named in the complaint complies with the provisions of this chapter.

"(e) If the efforts of the Secretary with respect to a complaint under subsection (d) are unsuccessful, the Secretary shall notify the person who submitted the complaint of--

"(1) the results of the Secretary's investigation; and

"(2) the complainant's entitlement to proceed under the enforcement of rights provisions provided under section 4323 (in the case of a person submitting a complaint against a State or private employer) or section 4324 (in the case of a person submitting a complaint against a Federal executive agency).

"(f) This subchapter does not apply to any action relating to benefits to be provided under the Thrift Savings Plan under title 5.

<< 38 USCA § 4323 >>

"§ 4323. Enforcement of rights with respect to a State or private employer

"(a)(1) A person who receives from the Secretary a notification pursuant to section 4322(e) of an unsuccessful effort to resolve a complaint relating to a State (as an employer) or a private employer may request that the Secretary refer the complaint to the Attorney General. If the Attorney General is reasonably satisfied that the person on whose behalf the complaint is referred is entitled to the rights or benefits sought, the Attorney General may appear on

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 16
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

behalf of, and act as attorney for, the person on whose behalf the complaint is submitted and commence an action for appropriate relief for such person in an appropriate United States district court.

"(2) A person may commence an action for relief with respect to a complaint if that person--

"(A) has chosen not to apply to the Secretary for assistance regarding the complaint under section 4322(c);

"(B) has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1); or

"(C) has been refused representation by the Attorney General with respect to the complaint under such paragraph.

"(b) In the case of an action against a State as an employer, the appropriate district court is the court for any district in which the State exercises any authority or carries out any function.  In the case of a private employer the appropriate district court is the district court for any district in which the private employer of the person maintains a place of business.

"(c)(1)(A) The district courts of the United States shall have jurisdiction, upon the filing of a complaint, motion, petition, or other appropriate pleading by or on behalf of the person claiming a right or benefit under this chapter--

"(i) to require the employer to comply with the provisions of this chapter;

"(ii) to require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter;  and

"(iii) to require the employer to pay the person an amount equal to the amount referred to in clause (ii) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

"(B) Any compensation under clauses (ii) and (iii) of subparagraph (A) shall be in addition to, and shall not diminish, any of the other rights and benefits provided for in this chapter.

"(2)(A) No fees or court costs shall be charged or taxed against any person claiming rights under this chapter.

"(B) In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses.

"(3) The court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter.

"(4) An action under this chapter may be initiated only by a person claiming rights or benefits under this chapter, not by an employer, prospective employer, or other entity with obligations under this chapter.

"(5) In any such action, only an employer or a potential employer, as the case may be, shall be a necessary party respondent.

"(6) No State statute of limitations shall apply to any proceeding under this chapter.

"(7) A State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section.

<< 38 USCA § 4324 >>

"§ 4324. Enforcement of rights with respect to Federal executive agencies

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                                                   Page 17
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(a)(1) A person who receives from the Secretary a notification pursuant to section 4322(e) of an unsuccessful effort to resolve a complaint relating to a Federal executive agency may request that the Secretary refer the complaint for litigation before the Merit Systems Protection Board. The Secretary shall refer the complaint to the Office of Special Counsel established by section 1211 of title 5.

"(2)(A) If the Special Counsel is reasonably satisfied that the person on whose behalf a complaint is referred under paragraph (1) is entitled to the rights or benefits sought, the Special Counsel (upon the request of the person submitting the complaint) may appear on behalf of, and act as attorney for, the person and initiate an action regarding such complaint before the Merit Systems Protection Board.

"(B) If the Special Counsel declines to initiate an action and represent a person before the Merit Systems Protection Board under subparagraph (A), the Special Counsel shall notify such person of that decision.

"(b) A person may submit a complaint against a Federal executive agency under this subchapter directly to the Merit Systems Protection Board if that person--

"(1) has chosen not to apply to the Secretary for assistance regarding a complaint under section 4322(c);

"(2) has received a notification from the Secretary under section 4322(e);

"(3) has chosen not to be represented before the Board by the Special Counsel pursuant to subsection (a)(2)(A); or

"(4) has received a notification of a decision from the Special Counsel under subsection (a)(2)(B).

"(c)(1) The Merit Systems Protection Board shall adjudicate any complaint brought before the Board pursuant to subsection (a)(2)(A) or (b). A person who seeks a hearing or adjudication by submitting such a complaint under this paragraph may be represented at such hearing or adjudication in accordance with the rules of the Board.

"(2) If the Board determines that a Federal executive agency has not complied with the provisions of this chapter relating to the employment or reemployment of a person by the agency, the Board shall enter an order requiring the agency or employee to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by such person by reason of such lack of compliance.

"(3) Any compensation received by a person pursuant to an order under paragraph (2) shall be in addition to any other right or benefit provided for by this chapter and shall not diminish any such right or benefit.

"(4) If the Board determines as a result of a hearing or adjudication conducted pursuant to a complaint submitted by a person directly to the Board pursuant to subsection (b) that such person is entitled to an order referred to in paragraph (2), the Board may, in its discretion, award such person reasonable attorney fees, expert witness fees, and other litigation expenses.

"(d)(1) A person adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board under subsection (c) may petition the United States Court of Appeals for the Federal Circuit to review the final order or decision. Such petition and review shall be in accordance with the procedures set forth in section 7703 of title 5.

"(2) Such person may be represented in the Federal Circuit proceeding by the Special Counsel unless the person was not represented by the Special Counsel before the Merit Systems Protection Board regarding such order or decision.

<< 38 USCA § 4325 >>

"§ 4325. Enforcement of rights with respect to certain Federal agencies

"(a) This section applies to any person who alleges that--

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 18
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(1) the reemployment of such person by an agency referred to in subsection  (a) of section 4315 was not in accordance with procedures for the reemployment of such person under subsection (b) of such section;  or

"(2) the failure of such agency to reemploy the person under such section was otherwise wrongful.

"(b) Any person referred to in subsection (a) may submit a claim relating to an allegation referred to in that subsection to the inspector general of the agency which is the subject of the allegation.  The inspector general shall investigate and resolve the allegation pursuant to procedures prescribed by the head of the agency.

"(c) In prescribing procedures for the investigation and resolution of allegations under subsection (b), the head of an agency shall ensure, to the maximum extent practicable, that the procedures are similar to the procedures for investigating and resolving complaints utilized by the Secretary under section 4322(d).

"(d) This section may not be construed--

"(1) as prohibiting an employee of an agency referred to in subsection (a) from seeking information from the Secretary regarding assistance in seeking reemployment from the agency under this chapter, alternative employment in the Federal Government under this chapter, or information relating to the rights and obligations of employee and Federal agencies under this chapter;  or

"(2) as prohibiting such an agency from voluntarily cooperating with or seeking assistance in or of clarification from the Secretary or the Director of the Office of Personnel Management of any matter arising under this chapter.

<< 38 USCA § 4326 >>

"§ 4326. Conduct of investigation;  subpoenas

"(a) In carrying out any investigation under this chapter, the Secretary's duly authorized representatives shall, at all reasonable times, have reasonable access to, for purposes of examination, and the right to copy and receive, any documents of any person or employer that the Secretary considers relevant to the investigation.

"(b) In carrying out any investigation under this chapter, the Secretary may require by subpoena the attendance and testimony of witnesses and the production of documents relating to any matter under investigation.  In case of disobedience of the subpoena or contumacy and on request of the Secretary, the Attorney General may apply to any district court of the United States in whose jurisdiction such disobedience or contumacy occurs for an order enforcing the subpoena.

"(c) Upon application, the district courts of the United States shall have jurisdiction to issue writs commanding any person or employer to comply with the subpoena of the Secretary or to comply with any order of the Secretary made pursuant to a lawful investigation under this chapter and the district courts shall have jurisdiction to punish failure to obey a subpoena or other lawful order of the Secretary as a contempt of court.

"(d) Subsections (b) and (c) shall not apply to the legislative branch or the judicial branch of the United States.

<< 38 USCA Ch. 43 >>

"SUBCHAPTER IV--MISCELLANEOUS PROVISIONS

<< 38 USCA § 4331 >>

"§ 4331. Regulations

"(a) The Secretary (in consultation with the Secretary of Defense) may prescribe regulations implementing the provisions of this chapter with regard to the application of this chapter to States, local governments, and private

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                                                     Page 19
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

employers.

"(b)(1) The Director of the Office of Personnel Management (in consultation with the Secretary and the Secretary of Defense) may prescribe regulations implementing the provisions of this chapter with regard to the application of this chapter to Federal executive agencies (other than the agencies referred to in paragraph (2)) as employers.  Such regulations shall be consistent with the regulations pertaining to the States as employers and private employers, except that employees of the Federal Government may be given greater or additional rights.

"(2) The following entities may prescribe regulations to carry out the activities of such entities under this chapter:

"(A) The Merit Systems Protection Board.

"(B) The Office of Special Counsel.

"(C) The agencies referred to in section 2303(a)(2)(C)(ii) of title 5.

<< 38 USCA § 4332 >>

"§ 4332. Reports

"The Secretary shall, after consultation with the Attorney General and the Special Counsel referred to in section 4324(a)(1) and no later than February 1, 1996, and annually thereafter through 2000, transmit to the Congress, a report containing the following matters for the fiscal year ending before such February 1:

"(1) The number of cases reviewed by the Department of Labor under this chapter during the fiscal year for which the report is made.

"(2) The number of cases referred to the Attorney General or the Special Counsel pursuant to section 4323 or 4324, respectively, during such fiscal year.

"(3) The number of complaints filed by the Attorney General pursuant to section 4323 during such fiscal year.

"(4) The nature and status of each case reported on pursuant to paragraph  (1), (2), or (3).

"(5) An indication of whether there are any apparent patterns of violation of the provisions of this chapter, together with an explanation thereof.

"(6) Recommendations for administrative or legislative action that the Secretary, the Attorney General, or the Special Counsel considers necessary for the effective implementation of this chapter, including any action that could be taken to encourage mediation, before claims are filed under this chapter, between employers and persons seeking employment or reemployment.

<< 38 USCA § 4333 >>

"§ 4333. Outreach

"The Secretary, the Secretary of Defense, and the Secretary of Veterans Affairs shall take such actions as such Secretaries determine are appropriate to inform persons entitled to rights and benefits under this chapter and employers of the rights, benefits, and obligations of such persons and such employers under this chapter.".

(b) CONFORMING AMENDMENTS.--

<< 38 USCA Chs. 1, 30 >>

(1) AMENDMENTS TO TITLE 38.--The tables of chapters at the beginning of title 38, United States Code, and

Copr. © 2004 West Group.  All rights reserved.

**(Publication page references are not available for this document.)**

the beginning of part III of such title are each amended by striking out the item relating to chapter 43 and inserting in lieu thereof the following:

<< 5 USCA § 1204 >>

(2) AMENDMENT TO TITLE 5.--(A) Section 1204(a)(1) of title 5, United States Code, is amended by striking out "section 4323" and inserting in lieu thereof "chapter 43".

<< 5 USCA § 3551 >>

<< 5 USCA Ch. 35 >>

(B) Subchapter II of chapter 35 of such title is repealed.

<< 5 USCA Ch. 35 >>

(C) The table of sections for chapter 35 of such title is amended by striking out the heading relating to subchapter II of such chapter and the item relating to section 3551 of such chapter.

<< 10 USCA § 706 >>

(3) AMENDMENT TO TITLE 10.--Section 706(c)(1) of title 10, United States Code, is amended by striking out "section 4321" and inserting in lieu thereof "chapter 43".

<< 28 USCA § 631 >>

(c) AMENDMENTS TO TITLE 28.--Section 631 of title 28, United States Code, is amended--

(1) by striking out subsection (j);

(2) by redesignating subsections (k) and (l) as subsections (j) and (k), respectively;  and

(3) in subsection (j), as redesignated by paragraph (2), by striking out  "under the terms of" and all that follows through "section," the first place it appears and inserting in lieu thereof "under chapter 43 of title 38,".

<< 38 USCA § 5303A >>

SEC. 3. EXEMPTION FROM MINIMUM SERVICE REQUIREMENTS.

Section 5303A(b)(3) of title 38, United States Code, is amended--

(1) by striking out "or" at the end of subparagraph (E);

(2) by striking out the period at the end of subparagraph (F) and inserting in lieu thereof "; or";  and

(3) by adding at the end thereof the following new subparagraph:

"(G) to benefits under chapter 43 of this title.".

SEC. 4. THRIFT SAVINGS PLAN.

(a) IN GENERAL.--(1) Title 5, United States Code, is amended by inserting after section 8432a the following:

<< 5 USCA § 8432b >>

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                                                           Page 21
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"§ 8432b. Contributions of persons who perform military service

"(a) This section applies to any employee who--

"(1) separates or enters leave-without-pay status in order to perform military service; and

"(2) is subsequently restored to or reemployed in a position which is subject to this chapter, pursuant to chapter 43 of title 38.

"(b)(1) Each employee to whom this section applies may contribute to the Thrift Savings Fund, in accordance with this subsection, an amount not to exceed the amount described in paragraph (2).

"(2) The maximum amount which an employee may contribute under this subsection is equal to--

"(A) the contributions under section 8432(a) which would have been made, over the period beginning on date of separation or commencement of leave-without-pay status (as applicable) and ending on the day before the date of restoration or reemployment (as applicable); reduced by

"(B) any contributions under section 8432(a) actually made by such employee over the period described in subparagraph (A).

"(3) Contributions under this subsection--

"(A) shall be made at the same time and in the same manner as would any contributions under section 8432(a);

"(B) shall be made over the period of time specified by the employee under paragraph (4)(B); and

"(C) shall be in addition to any contributions then actually being made under section 8432(a).

"(4) The Executive Director shall prescribe the time, form, and manner in which an employee may specify--

"(A) the total amount such employee wishes to contribute under this subsection with respect to any particular period referred to in paragraph (2)(B); and

"(B) the period of time over which the employee wishes to make contributions under this subsection.

The employing agency may place a maximum limit on the period of time referred to in subparagraph (B), which cannot be shorter than two times the period referred to in paragraph (2)(B) and not longer than four times such period.

"(c) If an employee makes contributions under subsection (b), the employing agency shall make contributions to the Thrift Savings Fund on such employee's behalf--

"(1) in the same manner as would be required under section 8432(c)(2) if the employee contributions were being made under section 8432(a); and

"(2) disregarding any contributions then actually being made under section 8432(a) and any agency contributions relating thereto.

"(d) An employee to whom this section applies is entitled to have contributed to the Thrift Savings Fund on such employee's behalf an amount equal to--

"(1) 1 percent of such employee's basic pay (as determined under subsection (e)) for the period referred to in subsection (b)(2)(B); reduced by

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                                    Page 22
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

"(2) any contributions actually made on such employee's behalf under section 8432(c)(1) with respect to the period referred to in subsection (b)(2)(B).

"(e) For purposes of any computation under this section, an employee shall, with respect to the period referred to in subsection (b)(2)(B), be considered to have been paid at the rate which would have been payable over such period had such employee remained continuously employed in the position which such employee last held before separating or entering leave-without-pay status to perform military service.

"(f)(1) The employing agency may be required to pay lost earnings on contributions made pursuant to subsections (c) and (d). Such earnings, if required, shall be calculated retroactively to the date the contribution would have been made had the employee not separated or entered leave without pay status to perform military service.

"(2) Procedures for calculating and crediting the earnings payable pursuant to paragraph (1) shall be prescribed by the Executive Director.

"(g) Amounts paid under subsection (c), (d), or (f) shall be paid--

"(1) by the agency to which the employee is restored or in which such employee is reemployed;

"(2) from the same source as would be the case under section 8432(e) with respect to sums required under section 8432(c); and

"(3) within the time prescribed by the Executive Director.

"(h)(1) For purposes of section 8432(g), in the case of an employee to whom this section applies--

"(A) a separation from civilian service in order to perform the military service on which the employee's restoration or reemployment rights are based shall be disregarded; and

"(B) such employee shall be credited with a period of civilian service equal to the period referred to in subsection (b)(2)(B).

"(2)(A) An employee to whom this section applies may elect, for purposes of section 8433(d), or paragraph (1) or (2) of section 8433(h), as the case may be, to have such employee's separation (described in subsection (a)(1)) treated as if it had never occurred.

"(B) An election under this paragraph shall be made within such period of time after restoration or reemployment (as the case may be) and otherwise in such manner as the Executive Director prescribes.

"(i) The Executive Director shall prescribe regulations to carry out this section.".

<< 5 USCA Ch. 84 >>

(2) The table of sections for chapter 84 of title 5, United States Code, is amended by inserting after the item relating to section 8432a the following:

"8432b. Contributions of persons who perform military service.".

<< 5 USCA § 8433 >>

(b) PRESERVATION OF CERTAIN RIGHTS.--(1) Section 8433(d) of title 5, United States Code, is amended by striking "subsection (e)." and inserting "subsection (e), unless an election under section 8432b(h)(2) is made to treat such separation for purposes of this subsection as if it had never occurred.".

(2) Paragraphs (1) and (2) of section 8433(h) are each amended by striking the period at the end and inserting ", or

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                Page 23
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

unless an election under section 8432b(h)(2) is made to treat such separation for purposes of this paragraph as if it had never occurred.".

<< 5 USCA § 8432 >>

(c) ELECTION TO RESUME REGULAR CONTRIBUTIONS UPON RESTORATION OR REEMPLOYMENT.--Section 8432 of title 5, United States Code, is amended by adding at the end the following:

"(i)(1) This subsection applies to any employee--

"(A) to whom section 8432b applies;  and

"(B) who, during the period of such employee's absence from civilian service  (as referred to in section 8432b(b)(2)(B))--

"(i) is eligible to make an election described in subsection (b)(1);  or

"(ii) would be so eligible but for having either elected to terminate individual contributions to the Thrift Savings Fund within 2 months before commencing military service or separated in order to perform military service.

"(2) The Executive Director shall prescribe regulations to ensure that any employee to whom this subsection applies shall, within a reasonable time after being restored or reemployed (in the manner described in section 8432b(a)(2)), be afforded the opportunity to make, for purposes of this section, any election which would be allowable during a period described in subsection (b)(1)(A).".

<< 5 USCA § 8351 >>

(d) APPLICABILITY TO EMPLOYEES UNDER CSRS.--Section 8351(b) of title 5, United States Code, is amended by adding at the end the following:

"(11) In applying section 8432b to an employee contributing to the Thrift Savings Fund after being restored to or reemployed in a position subject to this subchapter, pursuant to chapter 43 of title 38--

"(A) any reference in such section to contributions under section 8432(a) shall be considered a reference to employee contributions under this section;

"(B) the contribution rate under section 8432b(b)(2)(A) shall be the maximum percentage allowable under subsection (b)(2) of this section;  and

"(C) subsections (c) and (d) of section 8432b shall be disregarded.".

<< 5 USCA § 8432b NOTE >>

<< 5 USCA § § 8351 nt, 8433 nt >>

(e) EFFECTIVE DATE;  APPLICABILITY.--This section and the amendments made by this section--

(1) shall take effect on the date of enactment of this Act;  and

(2) shall apply to any employee whose release from military service, discharge from hospitalization, or other similar event making the individual eligible to seek restoration or reemployment under chapter 43 of title 38, United States Code, occurs on or after August 2, 1990.

<< 5 USCA § 8432b NOTE >>

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                                                     Page 24
 PL 103-353, October 13, 1994, 108 Stat 3149
 **(Publication page references are not available for this document.)**

 (f) RULES FOR APPLYING AMENDMENTS TO EMPLOYEES RESTORED OR REEMPLOYED BEFORE
EFFECTIVE DATE.--In the case of any employee (described in subsection (e)(2)) who is reemployed or restored
(in the circumstances described in section 8432b(a) of title 5, United States Code, as amended by this section) before
the date of enactment of this Act, the amendments made by this section shall apply to such employee, in accordance
with their terms, subject to the following:

 (1) The employee shall be deemed not to have been reemployed or restored until--

 (A) the date of enactment of this Act, or

 (B) the first day following such employee's reemployment or restoration on which such employee is or was
eligible to make an election relating to contributions to the Thrift Savings Fund,

 whichever occurs or occurred first.

 (2) If the employee changed agencies during the period between the date of actual reemployment or restoration and
the date of enactment of this Act, the employing agency as of such date of enactment shall be considered the
reemploying or restoring agency.

 (3)(A) For purposes of any computation under section 8432b of such title, pay shall be determined in accordance
with subsection (e) of such section, except that, with respect to the period described in subparagraph (B), actual pay
attributable to such period shall be used.

 (B) The period described in this subparagraph is the period beginning on the first day of the first applicable pay
period beginning on or after the date of the employee's actual reemployment or restoration and ending on the day
before the date determined under paragraph (1).

 (4) Deem section 8432b(b)(2)(A) of such title to be amended by striking "ending on the day before the date of
restoration or reemployment (as applicable)" and inserting "ending on the date determined under section 4(f)(1) of
the Uniformed Services Employment and Reemployment Rights Act of 1994".

SEC. 5. REVISION OF FEDERAL CIVIL SERVICE RETIREMENT BENEFIT PROGRAM FOR RESERVISTS.

<< 5 USCA § 8331 >>

 (a) CREDITABLE MILITARY SERVICE UNDER CSRS.--Section 8331(13) of title 5, United States Code, is
amended in the flush matter by inserting "or full-time National Guard duty (as such term is defined in section 101(d)
of title 10) if such service interrupts creditable civilian service under this subchapter and is followed by
reemployment in accordance with chapter 43 of title 38 that occurs on or after August 1, 1990" before the
semicolon.

<< 5 USCA § 8334 >>

 (b) PAY DEDUCTIONS FOR MILITARY SERVICE UNDER CSRS.--Section 8334(j) of such title is amended--

 (1) in paragraph (1)--

 (A) by striking "Each employee" and inserting "(A) Except as provided in subparagraph (B), each employee"; and

 (B) by adding at the end the following:

 "(B) In any case where military service interrupts creditable civilian service under this subchapter and
reemployment pursuant to chapter 43 of title 38 occurs on or after August 1, 1990, the deposit payable under this
paragraph may not exceed the amount that would have been deducted and withheld under subsection (a)(1) from
basic pay during civilian service if the employee had not performed the period of military service."; and

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995
 PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

(2) in paragraph (2), immediately before the comma at the end of subparagraph (B), by inserting "following the period of military service for which such deposit is due".

<< 5 USCA § 8401 >>

 (c) CREDITABLE MILITARY SERVICE UNDER FERS.--Section 8401(31) of such title is amended in the flush matter by inserting "or full-time National Guard duty (as such term is defined in section 101(d) of title 10) if such service interrupts creditable civilian service under this subchapter and is followed by reemployment in accordance with chapter 43 of title 38 that occurs on or after August 1, 1990" before the semicolon.

<< 5 USCA § 8422 >>

 (d) PAY DEDUCTIONS FOR MILITARY SERVICE UNDER FERS.--Section 8422(e) of such title is amended--

 (1) in paragraph (1)--

 (A) by striking "Each employee" and inserting "(A) Except as provided in subparagraph (B), each employee";  and

 (B) by adding at the end the following:

 "(B) In any case where military service interrupts creditable civilian service under this subchapter and reemployment pursuant to chapter 43 of title 38 occurs on or after August 1, 1990, the deposit payable under this paragraph may not exceed the amount that would have been deducted and withheld under subsection (a)(1) from basic pay during civilian service if the employee had not performed the period of military service.";  and

 (2) in paragraph (2), immediately before the comma at the end of subparagraph (B), by inserting "following the period of military service for which such deposit is due".

 (e) TECHNICAL AMENDMENTS.--Title 5, United States Code, is amended as follows:

<< 5 USCA § 8401 >>

 (1) In section 8401(11), by striking out "1954" in the flush matter above clause (i) and inserting in lieu thereof "1986".

<< 5 USCA § 8422 >>

 (2) In section 8422(a)(2)(A)(ii), by striking out "1954" and inserting in lieu thereof "1986".

<< 5 USCA § 8432 >>

 (3) In section 8432(d), by striking out "1954" in the first sentence and inserting in lieu thereof "1986".

<< 5 USCA § 8433 >>

 (4) In section 8433(i)(4), by striking out "1954" and inserting in lieu thereof "1986".

<< 5 USCA § 8440 >>

 (5) In section 8440--

 (A) by striking out "1954" in subsection (a) and inserting in lieu thereof "1986";  and

 (B) by striking out "1954" in subsection (c) and inserting in lieu thereof "1986".

Copr. © 2004 West Group.  All rights reserved.

PL 103-353, 1994 HR 995                                                    Page 26
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

<< 38 USCA § 4214 NOTE >>

SEC. 6. TECHNICAL AMENDMENT.

(a) TECHNICAL AMENDMENT.--Section 9(d) of Public Law 102-16 (105 Stat. 55) is amended by striking out "Act" the first place it appears and inserting in lieu thereof "section".

<< 38 USCA § 4214 NOTE >>

(b) EFFECTIVE DATE.--The amendment made by subsection (a) shall take effect as if included in Public Law 102-16 to which such amendment relates.

<< 38 USCA § 3703 >>

SEC. 7. INCREASE IN AMOUNT OF LOAN GUARANTY FOR LOANS FOR THE PURCHASE OR CONSTRUCTION OF HOMES.

Subparagraphs (A)(i)(IV) and (B) of section 3703(a)(1) of title 38, United States Code, are each amended by striking out "$46,000" and inserting in lieu thereof "$50,750".

SEC. 8. TRANSITION RULES AND EFFECTIVE DATES.

<< 5 USCA § § 1204 nt, 3551 nt, 8331 nt, 8334 nt, 8401 nt, 8422 nt, 8432 nt, 8433 nt, 8440 nt >>

<< 10 USCA § 706 nt >>

<< 28 USCA § 631 nt >>

<< 38 USCA § § 3703 nt, 4301 NOTE, 4302 nt, 4303 nt, 4304 nt, 4311 nt, 4312 nt, 4313 nt, 4314 nt, 4315 nt, 4316 nt, 4317 nt, 4318 nt, 4321 nt, 4322 nt, 4323 nt, 4324 nt, 4325 nt, 4331 nt, 4332 nt, 4333 nt, 5303A nt >>

<< 38 USCA § 4326 nt >>

(a) REEMPLOYMENT.--(1) Except as otherwise provided in this Act, the amendments made by this Act shall be effective with respect to reemployments initiated on or after the first day after the 60-day period beginning on the date of enactment of this Act.

(2) The provisions of chapter 43 of title 38, United States Code, in effect on the day before such date of enactment, shall continue to apply to reemployments initiated before the end of such 60-day period.

(3) In determining the number of years of service that may not be exceeded in an employee-employer relationship with respect to which a person seeks reemployment under chapter 43 of title 38, United States Code, as in effect before or after the date of enactment of this Act, there shall be included all years of service without regard to whether the periods of service occurred before or after such date of enactment unless the period of service is exempted by the chapter 43 that is applicable, as provided in paragraphs (1) and (2), to the reemployment concerned.

(4) A person who initiates reemployment under chapter 43 of title 38, United States Code, during or after the 60-day period beginning on the date of enactment of this Act and whose reemployment is made in connection with a period of service in the uniformed services that was initiated before the end of such period shall be deemed to have satisfied the notification requirement of section 4312(a)(1) of title 38, United States Code, as provided in the amendments made by this Act, if the person complied with any applicable notice requirement under chapter 43, United States Code, as in effect on the day before the date of enactment of this Act.

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995                                                                                                Page 27
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

(b) DISCRIMINATION.--The provisions of section 4311 of title 38, United States Code, as provided in the amendments made by this Act, and the provisions of subchapter III of chapter 43 of such title, as provided in the amendments made by this Act, that are necessary for the implementation of such section 4311 shall become effective on the date of enactment of this Act.

(c) INSURANCE.--(1) The provisions of section 4316 of title 38, United States Code, as provided in the amendments made by this Act, concerning insurance coverage (other than health) shall become effective with respect to furloughs or leaves of absence initiated on or after the date of enactment of this Act.

(2) With respect to the provisions of section 4317 of title 38, United States Code, as provided in the amendments made by this Act, a person on active duty on the date of enactment of this Act, or a family member or personal representative of such person, may, after the date of enactment of this Act, elect to reinstate or continue a health plan as provided in such section 4317. If such an election is made, the health plan shall remain in effect for the remaining portion of the 18-month period that began on the date of such person's separation from civilian employment or the period of the person's service in the uniformed service, whichever is the period of lesser duration.

(d) DISABILITY.--(1) Section 4313(a)(3) of chapter 43 of title 38, United States Code, as provided in the amendments made by this Act, shall apply to reemployments initiated on or after August 1, 1990.

<< 5 USCA § § 1204 nt, 3551 nt, 8331 nt, 8334 nt, 8401 nt, 8422 nt, 8432 nt, 8433 nt, 8440 nt >>

<< 10 USCA § 706 nt >>

<< 28 USCA § 631 nt >>

<< 38 USCA § § 3703 nt, 4301 NOTE, 4302 nt, 4303 nt, 4304 nt, 4311 nt, 4312 nt, 4313 nt, 4314 nt, 4315 nt, 4316 nt, 4317 nt, 4318 nt, 4321 nt, 4322 nt, 4323 nt, 4324 nt, 4325 nt, 4331 nt, 4332 nt, 4333 nt, 5303A nt >>

<< 38 USCA § 4326 nt >>

<< 38 USCA § 4307 >>

<< 38 USCA Ch. 43 >>

(2) Effective as of August 1, 1990, section 4307 of title 38, United States Code (as in effect on the date of enactment of this Act), is repealed, and the table of sections at the beginning of chapter 43 of such title (as in effect on the date of enactment of this Act) is amended by striking out the item relating to section 4307.

<< 5 USCA § § 1204 nt, 3551 nt, 8331 nt, 8334 nt, 8401 nt, 8422 nt, 8432 nt, 8433 nt, 8440 nt >>

<< 10 USCA § 706 nt >>

<< 28 USCA § 631 nt >>

<< 38 USCA § § 3703 nt, 4301 NOTE, 4302 nt, 4303 nt, 4304 nt, 4311 nt, 4312 nt, 4313 nt, 4314 nt, 4315 nt, 4316 nt, 4317 nt, 4318 nt, 4321 nt, 4322 nt, 4323 nt, 4324 nt, 4325 nt, 4331 nt, 4332 nt, 4333 nt, 5303A nt >>

<< 38 USCA § 4326 nt >>

(e) INVESTIGATIONS AND SUBPOENAS.--The provisions of section 4326 of title 38, United States Code, as

Copr. © 2004 West Group. All rights reserved.

PL 103-353, 1994 HR 995
PL 103-353, October 13, 1994, 108 Stat 3149
**(Publication page references are not available for this document.)**

Page 28

provided in the amendments made by this Act, shall become effective on the date of the enactment of this Act and apply to any matter pending with the Secretary of Labor under section 4305 of title 38, United States Code, as of that date.

(f) PREVIOUS ACTIONS.--Except as otherwise provided, the amendments made by this Act do not affect reemployments that were initiated, rights, benefits, and duties that matured, penalties that were incurred, and proceedings that begin before the end of the 60-day period referred to in subsection (a).

(g) RIGHTS AND BENEFITS RELATIVE TO NOTICE OF INTENT NOT TO RETURN.--Section 4316(b)(2) of title 38, United States Code, as added by the amendments made by this Act, applies only to the rights and benefits provided in section 4316(b)(1)(B) and does not apply to any other right or benefit of a person under chapter 43 of title 38, United States Code. Such section shall apply only to persons who leave a position of employment for service in the uniformed services more than 60 days after the date of enactment of this Act.

(h) EMPLOYER PENSION BENEFIT PLANS.--(1) Nothing in this Act shall be construed to relieve an employer of an obligation to provide contributions to a pension plan (or provide pension benefits), or to relieve the obligation of a pension plan to provide pension benefits, which is required by the provisions of chapter 43 of title 38, United States Code, in effect on the day before this Act takes effect.

(2) If any employee pension benefit plan is not in compliance with section 4318 of such title or paragraph (1) of this subsection on the date of enactment of this Act, such plan shall have two years to come into compliance with such section and paragraph.

(i) DEFINITION.--For the purposes of this section, the term "service in the uniformed services" shall have the meaning given such term in section 4303(13) of title 38, United States Code, as provided in the amendments made by this Act.

Approved October 13, 1994.

PL 103-353, 1994 HR 995

END OF DOCUMENT

Copr. © 2004 West Group. All rights reserved.

**EXHIBIT C**

Case 1:05-cv-10469-PBS    Document 8-4    Filed 05/24/2005    Page 2 of 2



**Location:** NASD > Manual > Rules of the Association > Membership and Registration Rules (1000) > 1000. Membership, Registration and Qualification Requirements > 1030. Registration of Representatives > 1031. Registration Requirements

‹‹ **Previous**                                                                                                                    **Next** ››

## 1031. Registration Requirements

### (a) All Representatives Must Be Registered

All persons engaged or to be engaged in the investment banking or securities business of a member who are to function as representatives shall be registered as such with NASD in the category of registration appropriate to the function to be performed as specified in Rule 1032. Before their registration can become effective, they shall pass a Qualification Examination for Representatives appropriate to the category of registration as specified by the Board of Governors. A member shall not maintain a representative registration with NASD for any person (1) who is no longer active in the member's investment banking or securities business, (2) who is no longer functioning as a representative, or (3) where the sole purpose is to avoid the examination requirement prescribed in paragraph (c). A member shall not make application for the registration of any person as representative where there is no intent to employ such person in the member's investment banking or securities business. A member may, however, maintain or make application for the registration as a representative of a person who performs legal, compliance, internal audit, back-office operations, or similar responsibilities for the member, or a person who performs administrative support functions for registered personnel, or a person engaged in the investment banking or securities business of a foreign securities affiliate or subsidiary of the member.

### (b) Definition of Representative

Persons associated with a member, including assistant officers other than principals, who are engaged in the investment banking or securities business for the member including the functions of supervision, solicitation or conduct of business in securities or who are engaged in the training of persons associated with a member for any of these functions are designated as representatives.

### (c) Requirement for Examination on Lapse of Registration

Any person whose registration has been revoked pursuant to Rule 8310 or whose most recent registration as a representative or principal has been terminated for a period of two (2) or more years immediately preceding the date of receipt by the Association of a new application shall be required to pass a Qualification Examination for Representatives appropriate to the category of registration as specified in Rule 1032.

*Cross Reference–*

*IM-8310-1, Effect of Suspension, Revocation, or Bar*

Amended by SR-NASD-2003-24 eff. March 3, 2003.
Amended by SR-NASD-89-53 eff. Aug. 28, 1990.
Amended by SR-NASD-89-15 eff. June 8, 1989.
Amended by SR-NASD-80-01 eff. June 26, 1980.

‹‹ **Previous**                                                                                                                    **Next** ››

© 2005 NASD. All rights reserved.

# EXHIBIT D

Case 1:05-cv-10469-PBS    Document 8-5    Filed 05/24/2005    Page 2 of 2



**Location:** NASD > Manual > Rules of the Association > Membership and Registration Rules (1000) > 1000. Membership, Registration and Qualification Requirements > IM-1000-3. Failure to Register Personnel

<< **Previous**                                                                                                          **Next** >>

### IM-1000-3. Failure to Register Personnel

The failure of any member to register an employee, who should be so registered, as a Registered Representative may be deemed to be conduct inconsistent with just and equitable principles of trade and when discovered may be sufficient cause for appropriate disciplinary action.

<< **Previous**                                                                                                          **Next** >>

© 2005 NASD. All rights reserved.

# EXHIBIT E

## Obligations to Your Firm



As a qualified securities professional, you have an obligation to your firm to supply accurate information on the proper registration forms. You are also obliged to continue your education throughout your career under the Securities Industry Continuing Education Program.

### Registration

Your firm registers you by filing a Uniform Application for Securities Industry Registration or Transfer, Form U-4, with NASD. This Form also lists other SROs, such as the securities and options exchanges, and the states with which you are to be registered. It is important that all of the information you supply to your member firm in the preparation of the Form U-4 is complete and accurate. If, during its routine review of Form U-4 filings, NASD discovers that any portion of the Form U-4 information you submit, especially relating to your personal history and past disciplinary or law enforcement encounters, is misleading or omits material information, disciplinary action may be taken and you could be barred from the securities industry. Now is a good time for you to review that filing with your supervisor and supply your firm with any missing information. You have a continuing obligation to update your Form U-4 promptly if any of the information changes or becomes inaccurate. This includes your home address or any of the questions involving customer complaints, criminal disclosure, regulatory disciplinary actions, civil judicial actions, terminations, or financial judgments. You promise to do this when you sign the Form U-4.

If you leave your firm for any reason, the firm has up to 30 days to supply you with a copy of the Uniform Termination Notice for Securities Industry Registration, Form U-5, which it files with NASD. The Form U-5 indicates the date you left the firm and a brief reason why you left. You should review this Form for accuracy. If the information supplied on the Form U-5 is inaccurate or incomplete, you should notify your prior employer promptly. Also, your next NASD member employer must obtain and review a copy of your most recent Form U-5. If your prior employer does not respond satisfactorily to a written request for a copy of your Form U-5, please notify NASD.

Your firm is required to report on the Form U-5 any customer complaint, criminal action, regulatory action, investigation, internal review alleging rule violations, any investigation it may currently be conducting, and the reason for any involuntary termination.

It is important for you to understand that as a registered representative, you are an agent of your member firm. Whether you are an employee or a so-called "independent contractor" (for regulatory purposes there is no distinction between the two terms), you are obligated to follow all applicable securities laws and regulations. For example, you must get clearance from your member firm for certain personal financial activities. Accordingly, you should discuss with your supervisor any financial accounts that you or members of your immediate family have with other securities firms, relationships with other businesses, and any forms of compensation you receive from any source other than your firm.

As a registered representative, your work-related documents, such as correspondence with customers, new account forms, and copies of customer statements, must be reviewed and retained by your firm in special ways according to rules applicable to securities industry participants. Regardless of the name on the incoming envelope, these documents are also the property of the firm.

If you leave your firm, you may not take these documents without the permission of the firm. In addition, you need to discuss with your supervisor the conditions under which you may communicate with customers-especially during your training period.

Industry rules require that a registered principal supervise you and that you meet with this supervisor at least annually to formally discuss regulatory and compliance matters. If you do not know who your supervisor is, find out now. Your supervisor should familiarize you with your firm's written compliance procedures and guidelines, which every firm must maintain. You are expected to know and understand them.

After your registration is effective, you may conduct a securities business as an agent only while under the direct supervision of your firm. You cannot conduct any securities transactions other than with your member firm unless you get prior written approval to do so. Before accepting an offer to work part-time or off-hours with

any other business concern, discuss this relationship with your supervisor.
Even if you are registered to sell only insurance-related securities products, you must be aware of NASD rules and comply with them. Further, as an insurance agent you must familiarize yourself with, and obey, any restrictions that your firm may have concerning selling other companies' insurance products.

## Continuing Education

As a registered representative, you are also required to adhere to certain continuing education requirements during the course of your career. On July 1, 1995, NASD and other SROs adopted the Securities Industry Continuing Education Program (Program). The program includes periodic computer-based training in regulatory matters (the Regulatory Element) and annual training programs provided by your firm to keep you informed on job- and product-related subjects (the Firm Element)..

The Regulatory Element requires you to complete one of the Regulatory Element computer-based training programs on the second anniversary of your initial securities registration and then every third year thereafter. Note, this schedule changes if you become the subject of a significant disciplinary action, which is a suspension, fine of $5,000 or more, or a statutory disqualification. If you become the subject of a significant disciplinary action or are otherwise ordered by a securities regulator, you will be required to complete a Regulatory Element computer-based training session immediately and your subsequent requirement anniversaries will be determined by the date of the significant disciplinary action and not your initial securities registration date.

All Regulatory Element programs focus on compliance, regulatory, ethical and sales practice standards. Their content is derived from rules and regulations applicable to all, as well as standards and practices widely accepted within the industry.

There are currently three different Regulatory Element programs: the S201 Supervisor Program for registered principals and supervisors; the S106 Series 6 Program for Investment Company Products/Variable Contracts Representatives; and the S101 General Program for all other registrations. If you have more than one securities registration, you take only one Regulatory Element program. Your firm will advise you which Regulatory Element Program to take and when you must take it.

The S101 General Program and the S106 Series 6 Program each comprise seven subject areas or modules. The content in each module relates to the respective registration category covered by each program.

The General and the Series 6 Programs have a similar design, while the Supervisor Program is different. The General and Series 6 programs feature scenarios depicting situations faced by registered persons in the course of their business. Scenarios in the General Program(S101) are text-based, while the Series 6 Program (S106) also features audio segments. After reading a scenario, you must demonstrate understanding of the issues by choosing the most appropriate response(s) to questions concerning the facts in the scenario. If you do not answer a sufficient number of questions correctly, you will view a tutorial about the topics in the module and you must try again with another scenario from that module. You must successfully complete one scenario in the module before you can advance to the next module.

Neither the S101 General Program nor the S106 Series 6 Program requires advance preparation, however it may be beneficial for you to familiarize yourself with the Regulatory Element Content Outline. You can view the content outlines by logging on to the Securities Industry Continuing Education Program Web site.

The Supervisor/Principal Program (S201) is specifically designed to enhance a supervisor's problem-detection and resolution skills. The program incorporates multimedia features that allow you to observe live situations, and view various documents such as account statements, portfolios and industry forms, in order to solve the problems presented in the exercise. Specific preparation for the S201 is not necessary and there is no content outline for this program.

If you fail to satisfy a Regulatory Element requirement within 120 days beginning with your anniversary date, your securities registration(s) becomes inactive until the requirement is satisfied. If your registration is inactive you will not be permitted to perform, or be compensated for, any activities that require a securities registration. If your registration remains inactive for two years it will be administratively terminated and you will be required to requalify for your registration by examination.

Firm Element continuing education has a different but complementary focus to the Regulatory Element training. Every year, your firm will evaluate and prioritize its training needs and prepare a written training plan designed to enhance your securities knowledge, skill, and professionalism. The training programs in your firm's Firm Element plan will generally cover the general investment features and associated risk factors, suitability and sales practice considerations, and applicable regulatory requirements of the securities products, services, and strategies you offer to the public.

Failure on your part to participate in the training programs stipulated by your firm will result in sanctions imposed on you by your firm, including possible termination.

**For more information on the Securities Industry Continuing Education Program, please view the information on www.securitiescep.com or contact:**

    NASD
    Continuing Education
    9509 Key West Avenue
    Rockville, MD 20850
    Phone: (240) 386-4685

©2005 NASD. All rights reserved. | Legal Notices and Privacy Policy.